Howard A. Belodoff, ISB # 2290
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
Boise, ID 83702
(208) 336-8980 ⎪ Phone
(208) 342-2561 ⎪ Fax

Tulin Ozdeger, # 476548 (DC)
Catherine Bendor, # 442437 (DC)
The National Law Center on Homelessness & Poverty
1411 K Street, Suite 1400
Washington, DC 20005
(202) 638-2535 ⎪ Phone
(202) 628-2737 ⎪ Fax

Marguerite M. Sullivan, # 497894 (DC)
Kristi N. O'Malley, # 498584 (DC)
Heather Maria Johnson, # 986281 (DC)
Latham & Watkins LLP
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
(202) 637-2200 ⎪ Phone
(202) 637-2201 ⎪ Fax

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

_____

|  |  |
|---|---|
| JANET F. BELL, BRIAN S. CARSON, CRAIG FOX, ROBERT MARTIN, LAWRENCE LEE SMITH, ROBERT ANDERSON, and PAMELA S. HAWKES, | ) Case No. ) ) **) COMPLAINT FOR INJUNCTIVE** ) **AND DECLARATORY RELIEF**, ) **AND MONETARY DAMAGES** |
| Plaintiffs, | ) ) **) Eighth and Fourteenth Amendments;** |
| v. | ) **42 U.S.C. § 1983; Idaho Constitution,** ) **Art. 1 §§ 2, 6, 13** |
| CITY OF BOISE; BOISE POLICE DEPARTMENT; and MICHAEL MASTERSON, in his official capacity as Chief of Police, | ) ) ) ) |
| Defendants. | ) ) |

_____ )

COMPLAINT – Page 1

COME NOW the Plaintiffs Janet F. Bell, Brian S. Carson, Craig Fox, Robert Martin, Lawrence Lee Smith, Robert Anderson, and Pamela S. Hawkes, (hereinafter "Plaintiffs"), and for a cause of action against the City of Boise, the Boise Police Department, and Chief of Police Michael Masterson (hereinafter "Defendants"), state and allege as follows:

**PRELIMINARY STATEMENT**

1.      In Boise, Idaho, anywhere from 2,000 to 4,500 people are homeless on any given night, while area shelters only have beds for approximately 300 and overflow or cold-weather space for approximately 400 more to sleep on mats on the floor.  With the recent economic downturn, the homeless population includes an increasing number of people who have become homeless for the first time, yet shelters are already over capacity.  Shelters in Boise place people on mats in every available floor space when they run out of beds and still do not have enough room to meet the growing need.

2.      Those individuals who are not fortunate enough to find a spot in the shelters have no choice but to sleep in the public places of Boise where they face the constant threat of violating laws that prohibit "camping" or sleeping in public.  Boise police officers routinely issue camping citations to homeless residents for sleeping, sitting, or talking with friends in public places – activities non-homeless residents have the freedom to engage in without fear of police interference.  Recently, Boise police officers have begun issuing disorderly conduct citations to homeless residents merely for sleeping in public.  Camping and disorderly conduct citations lead to convictions and jail time, which make it more difficult for Boise's homeless residents to obtain and keep employment and long-term housing.  Thus, they continue to sleep in public places despite the constant fear of citation.

COMPLAINT – Page 2

3.      This is an action brought by homeless Boise residents who received convictions, citations, or threats of citations for violations of Boise Municipal Code § 9-10-02, which prohibits camping on streets, in parks, or in public places at any time, and/or § 6-01-05(A), which prohibits sleeping in public as "disorderly conduct."  The Defendants have used these laws to cite and arrest individuals who cannot avoid violating these laws because they are homeless.  In effect, Defendants have "criminalized" homelessness.  As applied to Plaintiffs, this law violates the requirements of the United States and Idaho constitutions.

4.      Plaintiffs bring this action for declaratory and injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983.  Defendants, under color of state law, have on an ongoing basis violated Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution and analogous provisions of the Idaho Constitution.  Plaintiffs seek this relief to enjoin Defendants from enforcing Boise Municipal Code §§ 9-10-02 and 6-01-05(A) for sleeping or lying down in public.  Plaintiffs also seek damages for violations of the Eighth and Fourteenth Amendments as a result of the enforcement of the ordinances.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.  Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate rights established by the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Plaintiffs' state constitutional law claims arise from the same occurrences as their federal constitutional claims and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue in this action is proper in the District of Idaho under 28 U.S.C. § 1391(b), as the Defendants are located in the District of Idaho and all the events and/or omissions giving rise to the claims complained of herein have occurred or will occur in the District.

**PARTIES**

**A.      Plaintiffs**

7.      Plaintiff JANET F. BELL has resided in Boise since April 13, 2007, and for most of that time was without shelter.  Bell suffers from debilitating mental and physical conditions that limit her ability to consistently and reliably perform work, including Bipolar Disorder, Post-Traumatic Stress Disorder, an anti-social disorder, a learning disability, deterioration of the spine, hepatitis B and C, cardiac problems, anemia, and chronic and recurring pneumonia. Because she has difficulty maintaining a traditional job, Bell has spent most of her life traveling and working short-term jobs to earn an income.  Although space was occasionally available at the Boise Rescue Mission's City Lights Home for Women and Children, Bell could not stay there because the Boise Rescue Mission's religious philosophy and activities requirements conflict with her own religious beliefs and because the Boise Rescue Mission limits the length of stay for persons who do not enroll in their religious programming.  Moreover, the Boise Rescue Mission would not allow Bell to stay with her fiancé, now her husband, because it prohibits couples from staying together in the same shelter facilities.  Bell received two citations under § 9-10-02 for sleeping in parks and other public locations.  On the morning of April 28, 2007, a Boise police officer approached Bell and another individual while they were sitting on a riverbank.  Bell did not have a tent or bedroll at the time, only a backpack with some personal belongings, yet she still received a citation.  On the second occasion, on May 22, 2007, Bell had just arrived in a secluded location where other homeless individuals slept and put down a bedroll

when an officer arrived, wrote citations, and threatened to arrest the individuals if they did not leave immediately.  Bell has been convicted twice under the statute and received a thirty-day suspended sentence.  In addition to these two instances, there were several other occasions on which Boise police officers approached Bell and threatened to arrest her for napping or sitting with friends in secluded areas.  She ultimately was forced to sleep in the bed of a pickup truck, outside the Boise city limits, because she feared that she would be cited and/or arrested by Boise police officers if she fell asleep in public places in Boise.  She knew that another citation would result in the revocation of her suspended sentence and that she would be incarcerated.

8.      Plaintiff BRIAN S. CARSON is a lifelong resident of Boise who is now homeless.  He became homeless three years ago when he was unable to afford to pay the rent for his apartment.  He is actively seeking employment, but has not found any employers who are hiring full-time employees.  Even if he were able to secure a full-time position, he estimates that it would take several months to save enough money to rent an apartment (which would require an upfront payment of the first and last month's rent and a security deposit).  Over the past three years, Carson has been turned away from area shelters numerous times because they were full.  In addition, he has not been able to stay at the Boise Rescue Mission River of Life shelter because of that shelter's religious requirements.  On or about the morning of May 6, 2009, Carson received a disorderly conduct citation for sleeping in public.  He had unsuccessfully attempted to find shelter the previous evening and eventually became so tired that he fell asleep next to a building in downtown Boise.  He was awoken early the next morning by a kick from a Boise police officer.  The officer issued Carson a disorderly conduct citation and told Carson that if he allowed him to sleep outside, others would do the same, which would be a "mess."  Carson did not engage in any conduct that was disorderly, he was merely sleeping in a public place.  The

officer arrested Carson because of a warrant associated with a previous citation, and Carson spent two days in jail. He was billed $50 for this period of incarceration, which he cannot afford to pay. He also has additional outstanding fines from previous citations that he cannot pay. Carson was recently convicted of the disorderly conduct charge and served four days incarceration. Carson fears that he will receive additional citations for sleeping in public places that will interfere with his ability to find employment and housing. He does not have the money to pay additional criminal fines.

9.      Plaintiff CRAIG FOX is a homeless Boise resident. He moved to the Boise area three years ago to help his elderly mother who lived in Meridian. He became homeless several months ago after he lost his job at a convenience store. He has had difficulty obtaining employment because of the economy and because he has severe arthritis in his hip, which limits his mobility. He has explored the possibility of housing assistance, but Boise currently has a six-month waitlist for any form of housing assistance. In May 2009, Fox received a disorderly conduct citation for sleeping in Ann Morrison Park in Boise. During the afternoon, while he was waiting for the Sanctuary shelter to open, he laid down on a bench in the park. A Boise police officer woke him up and issued a disorderly conduct citation. The officer explained to Fox that it is illegal to sleep on a bench within the Boise city limits and that he could only lie on the grass. Fox was convicted of disorderly conduct and served two days incarceration. Fox worries that having this conviction on his record will make it more difficult for him to find employment, housing, and benefits. He also fears that he will receive additional citations and fines that he cannot afford to pay. Fox tries to keep moving, to the extent that his arthritis allows him to, in an effort to avoid being noticed by Boise police officers. When he stops in any one place, he tries to remain hidden.

COMPLAINT – Page 6

10.     Plaintiff ROBERT WILLIAM MARTIN is a homeless Boise resident.  He has been homeless on and off for the past eleven years, since he was eighteen years old.  Martin suffers from a mental illness and a physical disability, which prevent him from maintaining employment.   He has been prescribed anti-psychotic, anti-depression, and anti-anxiety medications, however he has not been able to get these prescriptions filled for the past ten months.  He is currently awaiting a determination of his eligibility for Social Security disability benefits and is attempting to receive medical treatment from the Terry Reilly Health Services Clinic.  He used to stay at the Sanctuary shelter with his wife and small child, but the family was asked to leave because, he was told, his wife had too many belongings.  His wife and child now stay with family members, but Martin cannot stay with them.  He tried to stay at the River of Life shelter but has been told not to return because his disabilities make it difficult for him to wake up at the required time.  Martin received a camping citation on March 21, 2009.  He was sleeping in the bushes not far from the Corpus Christi House day shelter and a soup kitchen.  Because of his disabilities, it is difficult for him to walk, and he must stay close to the day shelter and soup kitchen so that he can eat, take showers and clean his clothes.  He told the Boise police officer who cited him that he was unable to stay at a shelter, but the officer issued a citation anyway.  Martin pled guilty because he did not have the funds to hire an attorney and was afraid that challenging the citation would result in additional court costs and incarceration.  Since he received his camping citation, officers have threatened Martin with more camping citations and cited him under other statutes for sleeping in public places.  On April 24, 2009, Martin received a citation for disorderly conduct merely for sleeping in the alley behind the Sanctuary shelter.  At the present time, Martin does not know where he will sleep from night to night and fears that he will receive additional citations and fines that he cannot afford to pay.  He hopes to get his

bicycle fixed so that he can go to the foothills outside the City limits to sleep without police interference or the threat of citation.

11.     Plaintiff LAWRENCE LEE SMITH was a homeless Boise resident.  He suffers from degenerative joint disease of his left hip and knee that prevents him from engaging in his former employment in construction and sprinkler installation.   He receives Social Security benefits, but these funds are not sufficient to cover the cost of living and renting an apartment in Boise.  For many years, he lived in a camper van, but his van was stolen.  Now he often sleeps along the Boise River and in other out-of-the-way areas in Boise.  He does not stay at the Boise Rescue Mission shelter because the Boise Rescue Mission's religious philosophy and activities requirements conflict with his religious beliefs and because the Boise Rescue Mission places a seventeen-day maximum on the length of stay for men who do not enroll in their religious programming.  Smith received two camping citations from the same Boise police officer on April 28, 2007 and May 12, 2007 for setting up a tent in secluded areas near the river.  Because he was sleeping deep in the woods and could not be observed from any public path, he believes that the officer sought him out to issue a camping citation.  He was convicted and served ninety days incarceration for the first citation and ten days incarceration for the second citation.  In addition, he missed one of his court appearances and was convicted of failing to appear.  After he was arrested, he lost his tent, his stove, and his fishing equipment, which had helped him sustain himself in the absence of shelter.  Smith fears that he will face additional citations and/or arrest by Boise police officers on the nights when he has no choice but to sleep in public places of Boise.  He does not have money to pay any additional criminal fines.  He left Boise because of the real threat that he will face citation, arrest, and incarceration for sleeping outdoors.

12.    Plaintiff ROBERT ANDERSON is a homeless Boise resident.  He became homeless after losing his job as a restaurant cook and has been unable to find permanent employment.  He received a camping citation on September 1, 2007.  He had been staying at the Boise Rescue Mission, but was forced to leave because of the shelter's policy of allowing men to stay for only seventeen days unless they enroll in the shelter's religious programming.  He and some other men slept in the foothills, in an area they believed was outside of the Boise city limits.  At approximately 8:00 a.m. the next morning, a Boise police officer found them and issued camping citations.  Anderson believes that the officer specifically sought out homeless individuals to whom he could issue citations.  Anderson was convicted and served one day incarceration and received a $25.00 fine which he could not afford to pay.  Anderson fears receiving additional citations and more fines that he will not be able to pay.

13.    Plaintiff PAMELA S. HAWKES was a homeless Boise resident.  She received ten different camping citations from Boise police officers between May and August 2007 that resulted in periods of two to fours days incarceration per citation and fines.  She often had no choice but to sleep in public places because she could not find space in Boise shelters.  She left Boise because she feared that Boise police officers would continue to cite and arrest her pursuant to § 9-10-02, and she did not have the ability to pay more criminal fines.

**B.    Defendants**

14.    Defendant CITY OF BOISE (hereinafter "City") is a municipal corporation, organized under the laws of the State of Idaho, with the capacity to sue and be sued.  The City is the legal and political governmental entity responsible for the actions of the Boise Police Department, its officials, agents, and employees.  The City is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees.

15.     Defendant BOISE POLICE DEPARTMENT (hereinafter "Department") is the municipal agency responsible for policing the City and for enforcement of Boise Municipal Code §§ 9-10-02 and 6-01-05(A).  The Department is sued in its own right and on the basis of the acts and omissions of its officials, agents, and employees.

16.     Defendant MICHAEL MASTERSON has been the Chief of Police since January 2005.  As such, he is responsible for the administration and operation of the Department, and ultimately, for the enforcement of Boise Municipal Code §§ 9-10-02 and 6-01-05(A).  Under his direction, Boise police officers have issued numerous camping citations to Plaintiffs for allegedly violating Boise Municipal Code §§ 9-10-02 and 6-01-05(A) and have threatened Plaintiffs with citations and/or arrest.  Chief Masterson is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.     Provisions at Issue

17.     Boise Municipal Code § 9-10-02 makes it a crime for any person "to use any of the streets, sidewalks, parks or public places as a camping place at any time."  The terms of this ordinance are broad, such that it covers sleeping or resting in <u>any public place</u> in Boise at <u>any time</u> of the day or night.  The statute does not define "camping place," and police officers have cited individuals for sitting and sleeping in public places throughout the City.  The <u>only</u> exception in the statute to this complete ban is for the "operation of a sidewalk café."

18.     The Boise Police Department does not maintain written guidance or training materials regarding the enforcement of § 9-10-02.  In response to a request under the Idaho Public Records Act, the Department stated that it had no such materials.  In contrast, the Department maintains training materials and written guidance pertaining to other municipal ordinances.  The Boise Community Ombudsman's December 20, 2006 *Special Report on Interactions Between the Boise Police Department and the Homeless* ("*Ombudsman's Report*")

recommended that the Boise Police Department create a written, binding protocol governing its officers' interactions with homeless individuals.  *Ombudsman's Report* at 44.  On information and belief, the Police Department never created such a protocol.

19.     Because there is no written guidance on the statute's enforcement, Defendants have a policy and custom of enforcing the statute broadly; the statute's prohibition on camping amounts to a ban on sleeping, lying down, or sitting – basic necessities in life.

20.     Boise Municipal Code § 6-01-05(A) criminalizes "occupying, lodging or sleeping in any building, structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof" as "disorderly conduct."  This ordinance is also very broad in that it explicitly prohibits sleeping in <u>any public place</u> in Boise at any time of the day or night and, thus, explicitly bans a necessary function of life.

21.     On information and belief, the City, through the Boise Police Department, Chief of Police, and police officers, aggressively and selectively enforces the anti-camping ordinance and the disorderly conduct ordinance's prohibition on sleeping in public against homeless individuals in Boise in order to force these individuals to make the untenable choice between criminal convictions and leaving the City.  On information and belief, the enforcement of these ordinances is part of a policy promoted by the City, the Boise Police Department, and Chief Masterson to "solve" the homelessness problem in Boise.

**B.     Homelessness in Boise**

22.     Federal law defines a "homeless individual" to include one who lacks a fixed, regular and adequate night-time residence, or one who resides in a shelter, transitional housing or a place not ordinarily used for sleeping accommodations, such as streets, automobiles,

abandoned buildings, parks or other public spaces.  Stewart B. McKinney Homeless Assistance Act of 1987 § 103(a), 42 U.S.C. § 11302(a) (2000).

23.     According to the *Ombudsman's Report*, estimates of the size of Boise's homeless population have varied widely.  While a supervisor in the Boise Police Department estimates that the total size of the homeless population is between 1,500-2,000 persons, the Boise Mayor's Ten Year Plan to Address Homelessness Committee estimates that the number is approximately 4,500.  *Ombudsman's Report*  at 11, 13.  According to the Idaho Food Bank, on any given night there are approximately 2,000 homeless individuals in Boise.  *Id.*  Anecdotal estimates from other service providers suggest that there are more than 3,000 homeless individuals in Boise.  *Id.*

24.     Boise's homeless population consists of single men and women, couples, and single and two-parent families with children.  An increasing number of Boise's homeless individuals are military veterans.  Until the recent economic downturn, many of Boise's homeless individuals were employed, either in regular jobs or more sporadically as day laborers, but did not earn enough money to afford housing in Boise.  Many have difficulty maintaining employment because jobs are not available in the current economic climate, they lack sufficient skills and education, and/or they have physical or mental disabilities.

25.     Approximately 350-500 people are chronically homeless in Boise.  "Chronically homeless" individuals are those who have been homeless for more than a year or who have had at least four episodes of homelessness in the last four years.  *See* 24 C.F.R. 91.5.

26.     Between forty and seventy percent of homeless individuals in Boise suffer from alcohol or drug dependence and are either mentally ill or chronically homeless.  These individuals have the most difficulty accessing and benefiting from the social service resources that are available.

COMPLAINT – Page 12

27.     These individuals also interact the most with the Boise Police Department.  As the *Ombudsman's Report* explained, "Police officers are not trained to perform social work functions; yet, persons experiencing homelessness often become the responsibility of law enforcement agencies because of the minor misdemeanors they commit." *Ombudsman's Report* at 2.  This report indicated that members of the Boise Police Department were inadequately trained and prepared to deal with the problems of Boise's homeless population, including mental illness, alcohol or dependence, and lack of shelter and other resources.  *Id.* at 2, 22, 24-25, 44.

**C.     Effect of Enforcement of §§ 9-10-02 and 6-01-05(A)**

28.     Repeat citations or convictions under §§ 9-10-02 and/or 6-01-05(A) for camping or sleeping in public can have a detrimental effect on an individual's health and his or her ability to find and continue employment, procure and maintain housing, and receive government assistance or benefits.

29.     Defendants' actions pose a health risk to the homeless population of Boise because the constant need to keep moving to avoid citations under §§ 9-10-02 and 6-01-05(A) prevents these individuals from sleeping.  Sleep is a physical and mental necessity for people to properly function.  Lack of sleep causes disruptions in cognitive function and exacerbates a myriad of physical and mental health problems.

30.     Homeless individuals like Plaintiffs typically cannot afford to pay the fines associated with violations of §§ 9-10-02 and 6-01-05(A).  These individuals often do not have a permanent address or telephone, which makes it difficult for them to receive communications from the court, such as Notices to Appear.  They also often lack reliable transportation.  If they fail to appear in court, they receive additional citations and fines for failing to appear.  If these fines are not paid, the homeless individual may be subject to a civil contempt order, which only worsens the situation.  Incarceration is also disruptive and expensive.  Periods of incarceration

interrupt employment and social security disability benefits.  Moreover, a homeless individual can be charged the costs for his or her incarceration.

31.     Homeless individuals must disclose criminal convictions, even for minor infractions, on applications for public housing.  These convictions become a matter of public record.  As a result, the convictions may cause them to lose the opportunity to obtain permanent public and private housing.  Additionally, an individual may lose a housing placement if he or she is incarcerated.  Conviction and incarceration for camping can also interfere with the ability to obtain and maintain Social Security disability benefits.  Recipients may not receive benefits for any period in which they are incarcerated.  In addition, those applying for benefits may miss crucial hearings or deadlines while incarcerated, delaying their receipt of much needed income.

32.     Likewise, individuals must disclose criminal convictions when they apply for employment, and even minor infractions may make a potential employer less likely to hire an applicant.  Missing work due to required court appearances or because of periods of incarceration may lead to the loss of employment and income.

33.     Defendants' policy, custom and practice of issuing citations to, arresting, and harassing homeless individuals like Plaintiffs under §§ 9-10-02 and 6-01-05(A), under the circumstances alleged herein, has the effect of "criminalizing" homelessness.  These measures do not accomplish any significant or legitimate public policy goal.  Instead, they perpetuate the cycle of homelessness by decreasing opportunities for homeless individuals to find housing and gainful employment and take care of their health needs.  "[T]he criminalization of homelessness does nothing to address the underlying causes of homelessness and often serves to exacerbate them. . . . It serves only to move people away from services and causes them to acquire a criminal record, thus making it even more difficult for them to obtain employment and housing."

COMPLAINT – Page 14

*Ombudsman's Report* at 5 (summarizing problems described in *A Dream Denied: The Criminalization of Homelessness in U.S. Cities*).

**D.     Availability of Shelter**

34.     In Boise, the need for shelter space far exceeds the availability of shelter space. On any given night there are between 2,000 and 4,500 homeless individuals in Boise, yet there are only 310 year-round emergency shelter beds and overflow or cold-weather space for approximately 400 more to sleep on mats on the floor. *Ada County's 2007 Continuum of Care application* (indicating that Boise has 310 year-round emergency shelter beds, "overflow" space for an additional 291 individuals, and room for 80 more individuals in the colder months). This means that, <u>on any given night in Boise, there are at least 1,300 people who will not be able to find safe and legal shelter</u>.

35.     An October 30, 2008 Idaho Statesman article entitled "Homeless crowding Valley shelters already" described how local shelters were dramatically above capacity in the fall of 2008:

> Guest overflow areas—such as couches and dining room floors— already are in use at places like City Lights Home for Women and Children in Boise, weeks before the cold-weather rush. The shelter, which has 38 beds, is averaging 58 nightly guests this month. Guests who don't get beds sleep on mats in the dining room.

As recently as October of 2009, shelters have reported operating at or above capacity. The Interfaith Sanctuary reported that its shelter space has been full for some time because there are fewer options available to people and it is taking longer for individuals and families to move out of the shelter. Its shelter space reserved for women and families is often completely full and it has a waiting list for men on most nights.

36.     Every night, hundreds of homeless individuals sleep outside because the need for bed space at local shelters far outstrips the number of beds.  A 2007 point-in-time study cited in Ada County's Continuum of Care Application counted members of Boise's homeless population in certain locations in one night.  It found 564 sheltered individuals—that is, those in emergency or transitional shelters—and 303 unsheltered individuals—those "sleeping in places not meant for human habitation."  This study counted individuals at shelters and outdoor locations where homeless persons were known to sleep.  The study did not include the many individuals who find temporary shelter with friends or family members on certain nights.  The study also did not account for homeless persons who sleep outdoors in more secluded areas.

37.     With the budget cuts and heavy job losses spurred by the global economic crisis, the number of homeless individuals and families in the Boise area will likely increase.

38.     Shelter spaces in Boise are frequently unavailable to certain subsets of the homeless population or have restrictions that prevent certain homeless individuals from staying in them.  For instance, minutes from the October 2008 meeting of the Homeless Coalition indicated that at that time the Salvation Army had a two- to three-month waiting list for single women who need shelter.  Minutes from the Homeless Coalition's February 2009 meeting indicated that the Sanctuary Shelter had no space for women and that the Salvation Army had a one-and-a–half-month wait for families.  Minutes from the Homeless Coalition's April 2009 meeting reported that the Salvation Army still had a one-and-a-half to two-month waiting list. The Interfaith Sanctuary routinely has a waiting list for single men.  Some shelters do not allow couples to stay together, limit the length of time any one person can stay to a maximum of seventeen or thirty days after which they may not return for a period of thirty days, emphasize

religious beliefs that may conflict with the beliefs and religious faith of individuals who need shelter, or have schedules that hamper individuals' employment opportunities.

39.     Finally, some individuals who are eligible for assistance to secure permanent housing have to wait for long periods of time for such assistance or housing to become available. The October 2008 meeting minutes of the Homeless Coalition indicated that there was a two- to three-year waiting list for Section 8 housing in the Boise area.  Recent funding cuts have further limited the number of families and individuals in Boise that can be housed through the federal Section 8 Voucher Program.  As a result, this waiting list will likely grow longer.

40.     Because of the lack of shelter space and the inability to obtain permanent housing, a large number of individuals who are homeless in Boise will remain so for the foreseeable future.

**E.      Pattern of Enforcement**

41.     At all relevant times, Defendants and their agents acted under color of state law and within the scope of their employment.

42.     The City of Boise, through its Police Department, and the Chief of Police maintain a policy, custom and practice of unlawfully enforcing § 9-10-02 against homeless individuals.  The *Ombudsman's Report* credits the "consistent effort and pressure" by the Boise Police Department for the elimination of permanent homeless camps:  "Through solid effort and real pressure by the Boise Police Department, no established camps exist today along the Greenbelt. . . .  At present, it might be possible to find one or two people in the parks at night; but there will be no established camps."  *Ombudsman's Report* at 18-19.

43.     The majority of camping citations are issued by officers in the Bike Patrol Unit who patrol the Greenbelt and Boise's parks.  The *Boise Police Bike Patrol 2007 Annual Report* ("*Bike Patrol Report*") states that by changing the hours of deployment, officers in the Bike

Patrol issued substantially more camping citations in 2007 than prior years and were "very successful in curbing the number of campers." *Bike Patrol Report* at 17.  In fact, in 2006 Bike Patrol Unit officers issued only 30 camping citations; in 2007, enforcement of the anti-camping ordinance increased significantly with these officers issuing 162 citations for camping.  *Id.*

44.     Defendants enforce Boise Municipal Code § 9-10-02 most between the months of April and September.  Additionally, Defendants have given most citations between the hours of 5:30 and 8:00 a.m. when homeless individuals who have slept outside the night before wake up and prepare to leave the area.  Boise police officers target outdoor areas where homeless individuals sleep.  For instance on June 16, 2007, one officer issued at least five camping citations between 5:30 and 6:15 a.m.  The next day, he issued at least three camping citations before 8:00 a.m.

45.     The harassment of Boise's homeless population is not limited to citation or arrest under § 9-10-02.  Recently, Boise police officers have begun issuing disorderly conduct citations pursuant to § 6-01-05(A) to homeless individuals sleeping in public places.  Upon information and belief, the City of Boise, through its Police Department, and the Chief of Police, has expanded its enforcement tools as part of its policy, custom and practice of unlawfully arresting, citing, threatening to cite, or otherwise harassing homeless individuals who engage in sleeping, and other necessary activities of life, in public places.

46.     Plaintiffs have each received citations and/or convictions, or threats of citations, for violations of Boise Municipal Code §§ 9-10-02 and/or 6-01-05(A) for sleeping or lying down in public.  On information and belief, with knowledge that Plaintiffs were homeless and had no lawful place to sleep or rest within the City of Boise because of a chronic shortage of shelter beds, Boise police officers issued citations, arrested, and/or threatened Plaintiffs in an effort to

drive them and other homeless individuals out of the City of Boise.  As a result, Plaintiffs often had to move constantly all night long, or sleep outside of the Boise city limits to avoid further harassment from police officers.

47.     On information and belief, Chief of Police Masterson was aware that officers in the Boise Police Department unlawfully targeted Boise's homeless population and cited, arrested, or threatened to cite or arrest Plaintiffs and other homeless individuals for sleeping in public and either directed or condoned the behavior of his officers.  The City's *Ombudsman's Report* and Police Department publications, such as the *Bike Patrol Report*, document the City's policy, custom and practice of criminalizing homelessness and publicized the dramatic increase in camping citations in 2007 and the "success" of their enforcement efforts.

48.     Local newspaper articles, the *Ombudsman's Report* and Police Department publications publicized the Boise Police Department's practice of issuing camping citations to homeless individuals who have no legal place to sleep or rest in Boise.  Thus, City policymakers and other relevant individuals in positions of authority were aware of this practice and, at a minimum, knowingly permitted these actions by Boise police officers.

49.     In addition, the City, its Police Department, and Chief Masterson, failed to exercise the proper supervision over Boise police officers' interactions with homeless individuals and failed to train these officers in how to appropriately and lawfully enforce §§ 9-10-02 and 6-01-05(A).  This policy of inadequate training and supervision constitutes deliberate indifference on the part of Defendants towards the rights of homeless individuals with whom the police come into contact.

50.     Defendants' polices and practices have caused Plaintiffs to suffer – and unless enjoined will continue to cause Plaintiffs to suffer – humiliation; psychological, physical, and

emotional suffering; degradation, pain, and injury; financial loss; and loss of privacy and basic constitutional and human rights.

**FIRST CLAIM FOR RELIEF**

**Violation of Prohibition Against Cruel and Unusual Punishment**
**(Eighth Amendment; 42 U.S.C. § 1983; Idaho Constitution, Article I, § 6)**

51.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

52.     Poverty, unemployment, untreated mental and physical illness, drug and alcohol dependence, and the City's failure to provide adequate shelter space often forces Plaintiffs and other homeless individuals to sleep in public places in Boise.

53.     Although Plaintiffs are homeless and have no way to comply with Boise Municipal Code §§ 9-10-02 and 6-01-05(A) because they must sleep outdoors, Defendants have cited, arrested, or threatened Plaintiffs for sitting, lying, or sleeping in public places in Boise. Defendants are punishing Plaintiffs and other homeless individuals based on their status as homeless persons.

54.     Defendants' actions that penalize Plaintiffs for their homeless status constitute cruel and unusual punishment in violation of Plaintiffs' well established rights under the Eighth Amendment of the United States Constitution as incorporated in, and applied to the states through, the Fourteenth Amendment.  Such actions also violate Article I, § 6 of the Idaho Constitution.  Plaintiffs seek redress for Defendants' violation of their right to be free from cruel and unusual punishment.

**SECOND CLAIM FOR RELIEF**

**Violation of Equal Protection—Fundamental Right to Travel**
**(Fourteenth Amendment; 42 U.S.C. § 1983; Idaho Constitution, Article I, §§ 2, 13)**

55.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

56.     Defendants' policy and custom of citing and arresting homeless individuals under Boise Municipal Code §§ 9-10-02 and 6-01-05(A) make it impossible for homeless individuals to travel to or reside in Boise.  Plaintiffs and other homeless individuals cannot live in Boise without violating the anti-camping ordinance or the disorderly conduct statute's prohibition on sleeping in public because every individual has a physical and mental need to sleep at some point while in the City, and these individuals have no place to sleep but outdoor public areas. Enforcement of these ordinances therefore serves the purpose and has the effect of driving homeless people out of the City or deterring them from entering City.

57.     The City's implementation of the ordinances is not supported by a permissible and compelling state interest.

58.     The Defendants have impermissibly burdened the fundamental right of homeless individuals to interstate and intrastate travel in violation of the substantive Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and in violation of Article I, §§ 2 and 13 of the Idaho Constitution.  Plaintiffs seek redress for Defendants' violation of their right to travel.

**THIRD CLAIM FOR RELIEF**
**Violation of Due Process—Vagueness**
**(Fourteenth Amendment; 42 U.S.C. § 1983; Idaho Constitution, Article I, § 13)**

59.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

60.     Boise Municipal Code § 9-10-02 fails to define the camping offense clearly, so that ordinary people can understand the prohibited conduct.  Boise police officers have issued citations for a wide range of activity including that which falls outside of a "commonsense" understanding of camping, such as for sitting by a riverbank or for sleeping outside with only a bedroll.  Boise police officers have also threatened individuals with citation for simple actions

like removing one's shoes in a park.  Ordinary people would not expect to be subject to a camping citation for such conduct.

61.     In addition, Boise Municipal Code § 9-10-02 fails to provide guidance to law enforcement personnel to prevent the possibility of arbitrary and discriminatory enforcement. The lack of statutory guidance is particularly problematic because the Boise Police Department does not provide written materials regulating how officers should enforce the ordinance.

62.     Boise Municipal Code § 9-10-02 is unconstitutionally vague in violation of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution.  Plaintiffs seek redress for Defendants' violation of their due process rights.

**FOURTH CLAIM FOR RELIEF**

**Violation of Due Process—Overbreadth**
**(Fourteenth Amendment; 42 U.S.C. § 1983; Idaho Constitution, Article I, § 13)**

63.     Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

64.     As applied to Plaintiffs, §§ 9-10-02 and 6-01-05(A) penalize involuntary, harmless, and inoffensive conduct in public places in Boise.  Defendants' citation and arrest of Plaintiffs for sleeping or resting in parks or on public streets when those individuals have nowhere to seek lawful shelter interferes with Plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment and to travel.

65.     As such, Boise Municipal Code §§ 9-10-02 and 6-01-05(A) are unconstitutionally overbroad in violation of the Fourteenth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution.  Plaintiffs seek redress for Defendants' violation of their due process rights.

**PRAYER FOR RELIEF**

WHEREFORE, based on the allegations asserted herein, Plaintiffs respectfully request relief as follows:

1.  A temporary restraining order and/or preliminary and permanent injunction, enjoining Defendants, their officers, employees, assignees, successors, and agents from enforcing Boise Municipal Code §§ 9-10-02 and 6-01-05(A), with respect to persons sleeping or lying down in public;

2.  An order compelling the City of Boise authorities to seek expungement of the records of any homeless individuals unlawfully cited or arrested and charged under §§ 9-10-02 or 6-01-05(A).

3.  An order requiring the reimbursement of any criminal fines paid by those homeless individuals as a result of these unlawful citations and arrests, as well as the payment of any costs of incarceration billed to individuals and the reimbursement of costs paid by these individuals.

4.  A declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from cruel and unusual punishment under the United States and Idaho Constitutions;

5.  A declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to due process of law under the United States and Idaho Constitutions;

6.  Award of damages according to proof;

7.  Plaintiffs' costs incurred in this lawsuit pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, as well as provisions of Idaho law;

8.  Plaintiffs' reasonable attorney's fees, with respect to work performed by the National Law Center on Homelessness & Poverty and Latham & Watkins, LLP, pursuant to 42 U.S.C. § 1988 and analogous provisions in Idaho law;

9.  All such other relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a jury trial.

Respectfully submitted this 22nd day of October, 2009.


_/s/  Howard A. Belodoff_

Howard A. Belodoff, ISB # 2290
Zoe Ann Olson, ISB # 5856
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID 83701
(208) 336-8980 | Phone
(208) 342-2561 | Fax

Tulin Ozdeger, # 476548 (DC)
Catherine Bendor, # 442437 (DC)
The National Law Center on Homelessness & Poverty
1411 K Street, Suite 1400
Washington, DC 20005
(202) 638-2535 | Phone
(202) 628-2737 | Fax

Marguerite M. Sullivan, # 497894 (DC)
Kristi N. O'Malley, # 498584 (DC)
Heather Maria Johnson, # 986281 (DC)
Latham & Watkins LLP
555 Eleventh Street
Suite 1000
Washington, DC 2004-1304
(202) 637-2200 | Phone
(202) 637-2201 | Fax

Attorneys for Plaintiffs