# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| JANET F. BELL, BRIAN S. CARSON, CRAIG FOX, ROBERT MARTIN, LAWRENCE LEE SMITH, ROBERT ANDERSON, PAMELA S. HAWKES, JONATHON LEIGH MILLER, JAMES M. GODFREY, BASIL E. HUMPHREY, and KIRK ROSS,<br><br>     Plaintiffs,<br><br>     vs.<br><br>CITY OF BOISE; BOISE POLICE DEPARTMENT; and MICHAEL MASTERSON, in his official capacity as Chief of Police,<br><br>     Defendants. | Case No.:  CV 09-540-S-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court are: (1) Defendants' Motion for Summary Judgment (Dkt. 77); (2) Defendants' Motion to Dismiss Plaintiff Smith (Dkt. 80); and (3) Defendants' Motion to Strike (Dkt. 96).  All parties have consented to the jurisdiction of a United States Magistrate Judge.  Dkt. 16.  The Court has carefully reviewed the record; considered the oral argument of counsel at the hearing on this matter; and now enters the following Memorandum Decision and Order granting Defendants' Motion for Summary Judgment (Dkt. 77) and dismissing Plaintiffs' Amended Complaint (Dkt. 53).

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Plaintiffs, all currently or formerly homeless individuals residing in Boise, contend that Defendants, including the City of Boise, Boise Police Department, and Chief of Police Michael Masterson, enforce Boise City ordinances against camping and sleeping in public to force the homeless out of Boise.

## A.     Ordinances

The ordinances at issue are Boise City Code §§ 9-10-02 and 6-01-05(A) (collectively "Ordinances").  Boise City Code § 9-10-02 (the "Camping Ordinance") makes it a crime for any person "to use any of the streets, sidewalks, parks or public places as a camping place at any time."  The terms "camp" and "camping" are defined as follows:

> [T]he use of public property as a temporary or permanent place of dwelling, lodging, or residence, or as a living accommodation at any time between sunset and sunrise, or as a sojourn. Indicia of camping may include, but are not limited to, storage of personal belongings, using tents or other temporary structures for sleeping or storage of personal belongings, carrying on cooking activities or making any fire in an unauthorized area, or any of these activities in combination with one another or in combination with either sleeping or making preparations to sleep (including the laying down of bedding for the purpose of sleeping).

B.C.C. § 9-10-02.

Boise City Code § 6-01-05(A) (the "Sleeping Ordinance") criminalizes "disorderly conduct," defined to include sleeping in any location without permission of the owner. Specifically, the ordinance prohibits "[o]ccupying, lodging or sleeping in any building,

**MEMORANDUM DECISION AND ORDER - 2**

structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof."  B.C.C. § 6-01-05(A).

**B.    Allegations**

Plaintiffs are individuals who either are or have been homeless and living in Boise. *See Amended Complaint,* ¶ 3 (Dkt. 53).  All have been cited and convicted under either the Camping Ordinance, the Sleeping Ordinance, or both.  *Id.*  Plaintiffs claim that Defendants' policy, custom, and practice of issuing citations to, arresting, and harassing homeless individuals, including Plaintiffs, under Boise City Ordinance §§ 9-10-02 and 6-01-05(A) has the effect of criminalizing homelessness.  *Id.* at ¶ 35.

Plaintiffs contend that Defendants enforce the Ordinances aggressively and selectively against the homeless in order to drive them from the City.  *Id.* at ¶ 23.  The premise behind Plaintiffs' claims is that the homeless in Boise have no choice but to be present on the streets during the day and night.  Thus, to penalize them for harmless conduct, like sleeping, lying down, or sitting, is essentially penalizing them for nothing more than "being" without a home.

In addition, Plaintiffs contend that the Boise Police Department does not maintain written guidance or training regarding the enforcement of the Camping Ordinance and, as a result, Defendants have a policy and custom of enforcing the ordinance broadly and issue citations for sleeping, lying down, or sitting - basic necessities of life.  *Id.* at ¶ 23.

Plaintiffs further contend that Defendants enforce the Sleeping Ordinance against anyone sleeping in any public place in Boise at any time of the day and night.  *Id.* at ¶ 24.

**C.  Claims and Relief Requested**

Plaintiffs allege four constitutional claims: (1) Defendants' enforcement of the Camping and Sleeping Ordinances against homeless people violates the Eighth Amendment's prohibition against cruel and unusual punishment; (2) Defendants' enforcement of the Camping and Sleeping Ordinances against homeless people violates the equal protection clause by impeding the homeless individuals' fundamental right to travel; (3) the Camping Ordinance violates the due process clause because it is unconstitutionally vague; and (4) the Camping and Sleeping Ordinances violate the due process clause because they are unconstitutionally over-broad as applied to Plaintiffs, who are being punished for what is essentially innocent conduct.  *Amended Complaint* (Dkt. No. 53).  Plaintiffs seek declaratory and injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983.  More specifically, Plaintiffs' requested relief includes *inter alia*: (1) an order enjoining Defendants from enforcing the Camping and Sleeping Ordinances against homeless people sleeping or lying down in public; (2) an order compelling the City of Boise to expunge the records of any homeless individuals cited or arrested and charged under the Camping or Sleeping Ordinances; (3) an order requiring reimbursement of any fines paid by or incarceration costs billed to homeless individuals for violation of the Camping and Sleeping Ordinances; and (4) declaratory relief.

**D.     Status Offense Case Law**

The United States Supreme Court has held that applying criminal laws to punish the involuntary status of an individual is unconstitutional.  *See Robinson v. California*, 370 U.S. 660 (1962).  In *Robinson*, the Supreme Court examined the constitutionality of a California statute that criminalized the status of being addicted to drugs.  *Id.* at 666. Treating addiction like a disease, the Supreme Court held that punishing addiction is akin to punishing mental illness, leprosy, or venereal disease, and the Eighth Amendment prohibits the state from criminalizing the status of having such diseases.  *Id.* at 666-67; *see also Ingraham v. Wright*, 430 U.S. 651, 666-68 (1977) (holding Eighth Amendment "imposes substantive limits on what can be made criminal and punished").

The Supreme Court draws a distinction between laws that criminalize status, which are unconstitutional, and laws that criminalize conduct, which may be constitutional.  For example, six years after deciding *Robinson*, the Supreme Court upheld a Texas statute that criminalized public drunkenness.  *See Powell v. State of Tex.*, 392 U.S. 514 (1968). In *Powell*, the Supreme Court rejected the trial court's finding that the criminal defendant was compelled to appear drunk in public due to his chronic alcoholism, a disease that destroyed his will power to resist the excessive consumption of alcohol.  *Id.* at 521. Distinguishing the case from *Robinson*, the *Powell* opinion states:

> [A]ppellant was convicted, not for being a chronic alcoholic, but for being in public while drunk on a particular occasion. The State of Texas thus has not sought to punish a mere status, as California did in Robinson; nor has it attempted to regulate appellant's behavior in the privacy of his own home.

**MEMORANDUM DECISION AND ORDER - 5**

> Rather, it has imposed upon appellant a criminal sanction for
> public behavior which may create substantial health and
> safety hazards, both for appellant and for members of the
> general public, and which offends the moral and esthetic
> sensibilities of a large segment of the community. This seems
> a far cry from convicting one for being an addict, being a
> chronic alcoholic, being 'mentally ill, or a leper . . . .'

*Id.* at 532 (quoting *Robinson*, 370 U.S. at 666). Thus, the Supreme Court in *Powell* found

the criminal defendant was not penalized for being an alcoholic; he was punished for the

conduct of being drunk in public, a behavior the State of Texas could criminalize without

violating the Constitution.

Applying this Supreme Court precedent, the Ninth Circuit held a Los Angeles

ordinance that criminalized sitting, lying, or sleeping in a public way at any time of day

was unconstitutional as applied to the homeless. *Jones v. City of Los Angeles*, 444 F.3d

1118 (9th Cir. 2006) *vacated by* 505 F.3d 1006 (9th Cir. 2007).[1] Because the record

established the number of homeless people in the City's Skid Row neighborhood vastly

outnumbered the amount of shelter beds and low income housing available there, the

Court determined that the homeless had no choice but to be present on the

neighborhood's streets and sidewalks. Accordingly, the City's complete bar on sitting,

lying, or sleeping in public at any time of day in effect criminalized the homeless who had

no choice but to be present on the street. *Id.*

---

[1] The *Jones* decision was later vacated as a result of a settlement agreement; therefore
the opinion is not binding. Nonetheless, it does shed light on the issue and how the Ninth Circuit
might approach such challenges in the future.

In so ruling, the Ninth Circuit panel made a distinction between the Los Angeles ordinance which operated as a complete ban on innocent acts, such as sitting, lying, or sleeping in a public way at any time of day, and other ordinances that are directed toward conduct beyond merely being present in public places.

> Other cities' ordinances similarly directed at the homeless provide ways to avoid criminalizing the status of homelessness by making an element of the crime some conduct in combination with sitting, lying, or sleeping in a state of homelessness. For example, Las Vegas prohibits standing or lying in a public way only when it obstructs pedestrian or vehicular traffic. *See, e.g.,* Las Vegas, Nev., Mun.Code § 10.47.020 (2005) ("It is unlawful to intentionally obstruct pedestrian or vehicular traffic...."). Others, such as Portland, prohibit 'camping' in or upon any public property or public right of way. *See, e.g.,* Portland, Or., Mun.Code §§ 14A.50.020, .030 (2006) (prohibiting obstruction of public sidewalks in a designated area or camping on public property). Still others contain safe harbor provisions such as limiting the hours of enforcement. *See, e.g.,* Seattle, Wash., Mun.Code § 15.48.040 (2005) ("No person shall sit or lie down upon a public sidewalk ... during the hours between seven (7:00) a.m. and nine (9:00) p.m. in the following zones...."); Tucson, Ariz., Mun.Code § 11-36.2(a) (2005) (same, except prohibition extended to 10:00 p.m.); Houston, Tex., Mun.Code § 40-352(a) (2006) (same, except prohibition extended to 11:00 p.m.). Other cities include as a required element sitting, lying, or sleeping in clearly defined and limited zones. *See, e.g.*, Philadelphia, Pa., Mun.Code § 10-611(1)(b)-(c), (2)(g)-(h) (2005) (prohibiting sitting or lying in certain designated zones only); Reno, Nev., Mun.Code § 8.12.015(b) (2005) (similar); Seattle, Wash., Mun.Code § 15.48.040 (similar).

*Id.* at 1123-24.  In *Jones*, the Ninth Circuit found that the overly expansive reach of the Los Angeles ordinance was its fatal flaw, as the homeless violated the statute just by being present on the public rights of way.

Under the framework adopted in *Jones*, determining whether Defendants have violated the Eighth Amendment requires a two-part inquiry.  First, the Court must determine whether the homeless have no choice but to be present in the City's public spaces.  This could be established either on the basis that there is insufficient shelter space or perhaps because, for at least a portion of the homeless population, the "chronic homeless," living in a shelter is not a viable option.  Second, the Court must find that Defendants' enforcement of the Camping and Sleeping Ordinances effectively penalizes the homeless for simply being present or engaging in innocent activity, such as sleeping, that does not warrant punishment under the Eighth Amendment and, in effect, criminalizes the status of being homeless.

In the instant case, Plaintiffs have not met their burden.  Plaintiffs have not set forth sufficient evidence to support a reasonable inference that there is a class of homeless people in Boise who are unable to find shelter and are being prosecuted for merely being present in public.  Instead, the undisputed facts reflect that the City of Boise offers safe harbor to the homeless in the city parks during the day, when they can sit, lie down, and sleep without fear of citation.  *See Affidavit of James R. Hall*, ¶¶ 4-5 (Dkt. 77-8). Further, the City of Boise has a directive in place to ensure that no one is cited for

camping or sleeping in public at night when shelter space is otherwise available. *See Affidavit of Claire Walker*, Ex. 28 (Dkt. 77-6).

Fundamentally, the Court is satisfied that the City has devised a procedure that reasonably ensures that the homeless will not be cited for simply being present in public places when shelter space is unavailable. If there are instances when this policy breaks down, then the individuals cited under the ordinances can argue that the ordinance has been applied to them in an unconstitutional matter. Similarly, if the system begins to breakdown in a routine manner, then a renewed constitutional challenge can be made. However, on the instant record, the Court finds that the system in place reflects a reasonable means of addressing the issue and ensuring that the homeless are not being penalized simply for being present when they have no other place to be.

## DISCUSSION

As explained more fully below, the Plaintiffs' right to retrospective relief is barred by the Rooker-Feldman doctrine. Moreover, Plaintiffs' right to prospective relief is largely moot in light of the Boise Police Department's Special Order clarifying its policy not to enforce either the Sleeping Ordinance or the Camping Ordinance when shelter space is unavailable at night. Further, there is no support for Plaintiffs' allegation that the Sleeping Ordinance is enforced during the day. Thus, the Eighth Amendment challenge fails as a matter of law as do Plaintiffs' claims brought under the due process clause.

**A.     Retrospective Relief and the Rooker-Feldman Doctrine**

Under the Rooker-Feldman doctrine, the Court lacks subject matter jurisdiction over Plaintiffs' claims for retrospective relief. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Rooker-Feldman doctrine recognizes that "federal district courts lack jurisdiction to exercise appellate review over final state court judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). This bar to jurisdiction covers direct appeals from state court judgments, *de facto* appeals from state court judgments, and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003); *see also Doe v. Mann*, 415 F.3d 1038, 1042 (9th Cir. 2005).

Principles of federalism underlie the rule, which recognizes the separate and distinct jurisdiction of state courts over state court appeals. As the Ninth Circuit explains:

> Rooker-Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing *de facto* appeals from state-court judgments: If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction. *See Feldman*, 460 U.S. at 483 n. 16 & 485. Simply put, 'the United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings.'

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (quoting *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)).

Applied to the instant case, the Rooker-Feldman doctrine bars Plaintiffs from seeking retrospective relief from the alleged injuries caused by the state-court judgments. This includes claims for damages based on criminal fines, incarceration costs, and lost wages, as well as an order compelling Defendants to expunge Plaintiffs' criminal records. These requests for relief are designed to compensate Plaintiffs for the injuries occasioned by the state-court judgments. If the Court were to grant such relief, the instant lawsuit would serve as an end-run around the state court appellate process. Under Rooker-Feldman, the Court lacks subject matter jurisdiction to provide such relief, as it would undermine the state court's jurisdiction and serve as a *de facto* appeal from the state court.

Moreover, in order to provide the requested retrospective relief, the Court would have to examine the particular circumstances giving rise to each citation. This is exactly the type of judicial review the Rooker-Feldman doctrine prohibits. Plaintiffs were the losing parties in state court; they are now complaining of injuries caused by state court judgments; and they are inviting the federal court to review and reject that judgment in each Plaintiff's case. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those

judgments.")[2]

At the same time, the Rooker-Feldman doctrine does not preclude the Court from

considering the constitutionality of the City's on-going enforcement of the Camping and

Sleeping Ordinances and awarding declaratory or prospective injunctive relief from such

enforcement. The distinction is that the retrospective relief is focused upon the validity of

the state court's judgments; whereas, the prospective relief is focused upon Defendants'

allegedly illegal conduct in enforcing the ordinances when shelter space is full. *See Noel*,

341 F.3d at 1164; *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d

1022, 1029-30 (9th Cir. 2005). The Court does not risk conducting a *de facto* appeal

from the state court judgments when focused upon the constitutionality of the

Defendants' on-going enforcement of the ordinances at issue.

**B.     Claims for Prospective Relief**

As explained more fully below, Plaintiffs' claims for prospective relief are now

largely moot. Article III of the Constitution limits federal court jurisdiction to actual

"cases" and "controversies." *See U.S. Constn.* Art. III § 1; *see also Allen v. Wright*, 468

U.S. 737, 750 (1984); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009).

---

[2] The Court acknowledges, as discussed during the oral argument, that the very
nature of such charges, when brought against homeless individuals in busy urban courts,
limits the practical likelihood of constitutional challenges. However, the fact that the
challenges were not brought at the time such charges were pending does not mean that
such challenges could not have been brought.

The "case or controversy" requirement "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright*, 468 U.S. at 750.

The district court does not have "jurisdiction to hear a case that cannot affect the litigants' rights." *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (holding claim moot because challenged statute was repealed). "Generally, a case should not be considered moot if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time." *Id.* Nonetheless, "if there is no reasonable expectation that the illegal action will recur . . . a case is deemed moot." *Id.*

Defendants argue that the relief Plaintiffs request has been mooted in two ways. First, on January 1, 2010, the Boise Police Department issued a Special Order clarifying its policy not to enforce Boise City Code §§ 9-10-02 and 6-01-05(A) when shelter space is unavailable ("Special Order"). *See Sergeant Clair Walker Affidavit*, ¶ 6, Ex. 26 (Dkt. No. 77-6). Second, Boise City Code § 9-10-02 was amended to include a definition of camp or camping. For the reasons set forth below, the Court agrees.

## 1.    Enforcement of the Sleeping and Camping Ordinances

Underlying Plaintiffs' Eighth Amendment claim is the assumption that Defendants enforce the Camping and Sleeping Ordinances against the homeless in Boise when the homeless have no choice but to be present somewhere in the City. However, the City of Boise has rendered moot the claims concerning enforcement of the ordinances at night

**MEMORANDUM DECISION AND ORDER - 13**

when shelter space is unavailable. In addition, there is no factual support for the allegation that the sleeping ordinance is enforced during the day. Accordingly, the Eighth Amendment Claims are mooted in part and otherwise fail as a matter of law: the undisputed facts reflect that the homeless may sleep in the parks during the day (whether or not shelter space is available) and may sleep in the parks at night in the event shelter space is unavailable.

On January 1, 2010, the Boise Police Department adopted a Special Order concerning the enforcement of the Camping and Sleeping Ordinances. *Affidavit of Clair Walker*, ¶ 5 (Dkt. 77-6), Ex. 26. The Special Order states, "[o]fficers have discretion to enforce camping/sleeping in public ordinances **except** when, [1] Person is on public property and [2] There is no available overnight shelter." *Id.* at Ex. 26 (emphasis added).

Available overnight shelter is defined as "a public or private shelter, with an available overnight space, open to an individual or family unit experiencing homelessness at no charge. To qualify as available, the space must take into account sex, marital and familial status, and disabilities." *Id.* The Special Order further explains that otherwise available shelter space is *not* considered available to a particular individual if it "is not suitable to meet the individual's disability needs, or the individual has exceeded the maximum allowable stay [at the shelter]." *Id.* This individual exception expressly excludes "voluntary actions such as intoxication, drug use or unruly behavior." *Id.* The Special Order also clarifies that "sleeping in a public park during park hours is not prohibited." *Id.*

**MEMORANDUM DECISION AND ORDER - 14**

To ensure that officers know when shelters are full, shelter personnel agreed to call the Boise Police Department around 11 p.m. if the shelter is full. *Affidavit of Clair Walker*, ¶ 10 (Dkt. 77-6). The Boise State University Dispatch office, which has a contract with the Boise Police Department for law enforcement services at the university, then distributes the information via Department-wide e-mail and records the information. *Id.* at ¶¶ 11, 12, 13. Thus, the Boise police officers who would otherwise enforce the Camping and Sleeping Ordinances are directed not to do so when shelter space is unavailable, and the City has devised a way to obtain this information directly from the shelters.

The Court is satisfied that this system, adopted January 1, 2010, is sufficient to foreclose any reasonable expectation that the alleged illegal action will recur. It is no longer reasonable to expect that the Boise Police Department will enforce the Camping and Sleeping Ordinances against homeless people at night when shelter space is unavailable.

This conclusion also renders moot the Plaintiffs' argument that the homeless have no choice but to be present on the streets. The Court need not address the allegations regarding sufficiency of shelter space and the estimated number of homeless living in Boise on any given night, a moving target to be sure.[3] In addition, the Court need not

---

[3] As described by the parties in their briefing to the Court, the nature of the homeless population must also be scrutinized in light of the gender and age of the individuals. Some shelters accept only adult men, others only women and children. The Boise Police Department's Special Order recognizes such limitations, as a shelter for one portion of the homeless population might be full on a given night, while a shelter for a different portion is not.

**MEMORANDUM DECISION AND ORDER - 15**

consider whether homelessness is a chronic condition or the product of decision-making and free will, an analysis lending itself to the metaphysical. Instead, the focus of the Court's inquiry is on what the City has done to accommodate the homeless, assuming that there will be some number of homeless individuals in need of shelter at any given time.

During the day, the homeless find safe harbor in the city parks and at night, they can find safe harbor in the city's shelters and, when shelter space is unavailable, the City allows the homeless to sleep in the city parks. The Court finds the City's approach reasonable and constitutionally sufficient.

Plaintiffs argue that there is a dispute of fact as to whether the City continues to enforce the Ordinances against homeless when the shelters are unavailable and the homeless have nowhere to go. *See Response to Defendants' Motion for Summary Judgment,* p. 4 (Dkt. 85). However, the Special Order became effective January 1, 2010, and there is nothing in the record evidencing the *routine* enforcement of the Sleeping or Camping Ordinances in a manner inconsistent with the Special Order since its adoption.

In support of their argument, Plaintiffs cite to the following: (1) Fawn Pettet's Affidavit stating there have been times since the Special Order was instituted that Sanctuary has been out of shelter space and did not call BSU dispatch (Dkt. 85-2, p.10); (2) statements in citations indicating the individuals cited claimed not to have shelter;[4]

---

[4] These statements include the following: "have nowhere to stay" (Dkt. 85-9, p. 19); "just needed a place to sleep" (Dkt. 85-9, p.37); "had no place to stay" (Dkt. 85-9, p. 39); "had done his time at the Mission (ROL) and had no place to stay" (Dkt. 85-9, p. 41); "had done his 17 days at the mission" (Dkt. 85-9, p. 43); "Kicked out of ROL" with "[n]o place to stay;" (Dkt. 85-9, p. 45).

and (3) statements by Boise City Police Officers indicating that, before issuing a citation, they would not check with the shelters to confirm whether space was available[5] and are not required to check their e-mail to determine if shelter space is available.[6]

These statements are not sufficient to create an issue of fact concerning the constitutionality of a system reasonably devised to avoid issuing citations against the homeless when shelter space is unavailable. First, even if Sanctuary on occasion fails to call the City Police, this does not mean that the system generally is unreasonable or unreliable. Second, stating that any one shelter is unavailable is not sufficient to establish that there is no shelter space available in the City of Boise, since there are at least three shelters open every night. Third, even though the police officers are not *required* to check their email, they are encouraged to do so[7] and there is no indication from the record that they routinely fail to do so. Thus, the Court finds that the undisputed facts support a finding that the City of Boise has devised a reasonable system to ensure that the ordinances are not routinely enforced against the homeless when shelter space is unavailable.

Plaintiffs also argue that there is a dispute of fact as to whether the City has enforced the Sleeping Ordinance against homeless individuals sleeping in public parks

---

[5] *See Declaration of Kristi O'Malley*, Ex. 33 (Deposition of Andrew S. Johnson, 66:13-15, 67:9-24) (Dkt. 85-5, pp.113, 114); *Id*. at Ex. 34 (Deposition of Anthony Dotson, 102: 9-24 (Dkt. 85-5, p. 148).

[6] *Id.* at Ex. 35 (Deposition of Kevin R. O'Rourke, 81:4-19) ( Dkt. 85-6, p.30).

[7] *Id.* at Ex. 35 (Deposition of Kevin R. O'Rourke, 81: 6-11) (Dkt. 85-6, p.30).

during the day. *See Response to Defendants' Motion for Summary Judgment,* p. 4 (Dkt. 85). In support of their argument, Plaintiffs cite to the depositions of Plaintiffs Janet F. Bell and Pamela S. Hawkes. However, neither of these women states that she was cited for sleeping in the parks during the day. Bell testified that she and her husband were awakened by Boise police officers as they slept in the park during the day. *See O'Malley Affidavit,* Ex. 24, Deposition of Janet F. Bell Nightengale, 63: 18-64-4 (Dkt. 87). Hawkes testified that she was told on several occasions that she could not sleep in certain areas within the park. *Id.* at Ex. 24, Deposition of Pamela S. Hawkes, 76:9-77:19 (Dkt. 85).

These statements do not support a reasonable inference that these women, or any other homeless individuals, have been cited for sleeping in the parks during the day. Instead, these statements reinforce testimony from Boise police officers who state that sleeping alone is permitted in the parks during the day, but they routinely check on folks who are lawfully sleeping to ensure their welfare. *See, e.g. Affidavit of Officer Anthony B. Dotson*, ¶¶ 12-13 (Dkt. 77-3); *Affidavit of Officer Andrew S. Johnson*, ¶¶ 10-11 (Dkt. 77-4); *Affidavit of Officer Kevin O'Rourke*, ¶¶ 12-13 (Dkt. 77-5).

In light of this evidence, the Court finds there is no genuine dispute of fact concerning day-time enforcement of the sleeping ordinance. Rather, the homeless in Boise can sleep in the public parks during the day, though they may be awakened on

occasion by the police who are ascertaining their circumstances as a means of checking upon their welfare.[8]

That is not to say that the homeless may camp in the Boise parks during the day. Camping is prohibited in the city parks and is only tolerated at night when the shelters are unavailable. However camping, unlike sleeping alone, is conduct that the parties do not dispute may be prohibited. What Plaintiffs argue is that Defendants must not use the Camping Ordinance as a means of targeting homeless individuals for the unavoidable consequence of sleeping with their belongings.

As discussed more fully below, the City has addressed this concern with a new definition in the Camping Ordinance that reasonably addresses the issue and provides the Boise City Police with guidance as to what, other than sleeping, may constitute camping. Again, this definition effectively moots Plaintiffs' claim that the police are targeting the innocent act of sleeping rather than camping in public places.

The Court finds that the Special Order combined with the new definition of camping effectively moot Plaintiffs' claims concerning the on-going enforcement of the Sleeping and Camping Ordinances. Because the City of Boise allows the homeless to sleep in the parks during the day and at night if the shelters are unavailable, there is no support for the allegation that the homeless have no choice but to be present and sleep on

---

[8] The Court is mindful that such "welfare" checks can easily be misused by law enforcement as a means of harassment, intended not to check upon the welfare of the homeless individual, but rather to make the park an unwelcome place for the homeless individual. However, the mere possibility of such an ulterior motive for such contacts is not enough on this record to create an issue of fact precluding summary judgment.

**MEMORANDUM DECISION AND ORDER - 19**

the street.  Accordingly, the following claims fail as a matter of law: (1) the Eighth

Amendment claim based on Defendants' alleged enforcement of the Camping and

Sleeping Ordinances against homeless people who have no choice but to be present in the

City's public spaces and (2) the equal protection claim based on Defendants' alleged

enforcement of the Camping and Sleeping Ordinances against homeless people who have

no choice but to sleep on the street.

### 2.  The Camping Ordinance and the City's Definition of "Camping"

Plaintiffs contend that the Camping Ordinance is unconstitutionally vague.  An

ordinance is "unconstitutionally vague within the meaning of the due process clause of

the Fourteenth Amendment" when it fails to "define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is prohibited and in a

manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v.

Lawson*, 461 U.S. 352, 353 (1983).  In *Kolender*, the U.S. Supreme Court concluded that

a statute requiring an individual to provide "credible and reliable" information was

"unconstitutionally vague on its face because it encourages arbitrary enforcement by

failing to describe with sufficient particularity what a suspect must do in order to satisfy

the statute."  *Id.* at 361.

Camping is defined in the Camping Ordinance as using public property "as a

temporary or permanent place of dwelling, lodging, or residence or as a living

accommodation at anytime between sunset and sunrise."  B.C.C. § 9-10-02.  Combined

with the Boise Police Special Order, this means that a homeless individual can sleep and

**MEMORANDUM DECISION AND ORDER - 20**

be present on public property with all of their belongings during the day but cannot camp overnight, *unless the city shelters are full.*

The Camping Ordinance further describes "indicia of camping" to include, *inter alia*, "storage of personal belongings, using tents or other temporary structures for sleeping or storage of personal belongings, carrying on cooking activities or making any fire in an unauthorized area, or any of these activities in combination with one another or in combination with either sleeping or making preparations to sleep (including the laying down of bedding for the purpose of sleeping). B.C.C. § 9-10-02.

This language is adequate to put the public on notice of what conduct is prohibited. While the homeless are more likely than those with housing to be present in public places with their belongings, the Camping Ordinance is not so vague as to encourage discriminatory enforcement. The Camping Ordinance allows individuals, regardless of their housing status, to be present in the City's public parks during the day -- resting, recreating, picnicking, sleeping, or just laying about. What the Camping Ordinance does not allow is using the parks as a dwelling place or sleeping in the parks overnight *unless the city shelters are full.*

Accordingly, the Camping Ordinance is not unconstitutionally vague. In enacting the Camping Ordinance, the City sought to prohibit, camping, but not prohibit the homeless, who often travel with their belongings, to be present on public property. The particulars of such a distinction are not easily drawn, and perhaps the distinction could be even more neatly drawn in the case of Boise's Camping Ordinance. The task before the

Court, however, is not to rewrite what has been written, but to assess whether what the City has adopted sufficiently draws the distinction. The Court is satisfied that the Camping Ordinance meets the necessary constitutional measure of clarity.

### 3. Due Process Claims: Ordinances Overbroad as Applied

Plaintiffs contend that the Camping and Sleeping Ordinances violate due process, because they are unconstitutionally overbroad as applied to Plaintiffs. However, neither the United States Supreme Court nor the Ninth Circuit has ever applied the overbreadth doctrine outside the limited context of the First Amendment. *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *Nunez v. City of San Diego*, 114 F.3d 935, 949 n. 11 (9th Cir. 1997). In addition, there is no persuasive authority suggesting the Court do so in the instant case. Accordingly, these claims fail as a matter of law.

### 4. Right to Travel

Defendants seek summary judgment on Plaintiffs' right to travel claims. Plaintiffs allege that the City's enforcement of the Camping and Sleeping Ordinances effectively deprives the homeless in Boise of sleep, a necessity of life, thus unlawfully impinging on the rights of the homeless to travel to and through Boise.

The right of travel is a basic constitutional right. *Hospital v. Maricopa County*, 415 U.S. 250, 254 (1974). People have a constitutional right to move from one place to another as they wish. *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999). Because the right to travel is fundamental, any policy that burdens or impinges upon that right is

subject to strict scrutiny. *In re Merrill Lynch Relocation Management, Inc.*, 812 F.2d 1116, 1122 (9th Cir. 1987).

Residency requirements that deny a basic "necessity of life" may render a statute unconstitutional in light of the right of travel. *Hospital v. Maricopa County*, 415 U.S. at 259; *Int'l Org. of Masters, Mates & Pilots v. Andrews,* 831 F.2d 843, 846 (9th Cir. 1987), *cert. denied*, 485 U.S. 962 (1988). States may, however, condition nonessential benefits and rights, such as lower college tuition and dissolution of marriage, on a term of residency. *Id.* Likewise, states may impose bona fide residence requirements to ensure that services and benefits go to actual residents of the state. *Id.* at 847.

Insignificant restrictions on travel, however do not amount to a denial of the fundamental right to interstate travel. *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir.1991), *cert. denied*, 502 U.S. 907 (1991); *cf. Hawaii Boating Ass'n v. Water Transp. Facilities Div., Dept. of Transp., State of Hawaii*, 651 F.2d 661, 664 (9th Cir.1981) (holding durational residency requirement for preferential rates for mooring privileges in recreational boat harbors did not penalize fundamental right to travel). A state law implicates the constitutional right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations and quotations omitted).

Plaintiffs argue that Defendants' enforcement of the Sleeping and Camping Ordinances discourages the homeless from migrating to or remaining in Boise. For the

**MEMORANDUM DECISION AND ORDER - 23**

same reasons that Plaintiffs' Eighth Amendment claims fail, so do Plaintiffs' right to travel claims. The record before the Court does not support a reasonable inference that the homeless in Boise are being punished for sleeping, an unavoidable consequence of being. Accordingly, the homeless from other states should not be discouraged from migrating to or remaining in Boise.

### 5. Idaho State Constitutional Provisions

State constitutional provisions must provide at least as much protection as their federal counterparts but may also provide greater protections for the individual. "[S]tate courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court." *State v. Newman*, 108 Idaho 5, 11, n.6, 696 P.2d 856, 862, n.6 (1985) (citing *Oregon v. Hass*, 420 U.S. 714, 719 (1975)). This is because "federal and state constitutions derive their power from independent sources." *Id*.

Nonetheless, the parties here have not argued that the applicable state constitutional provisions provide greater protections than the federal counterparts. Accordingly, and without argument or case law to the contrary, the Court finds that the state constitutional challenges fail for the same reasons the federal constitutional claims fail.

### CONCLUSION

Plaintiffs' claims for retrospective relief are barred by the Rooker-Feldman doctrine; the claims for prospective relief are largely moot in light of the City's Special

Order; and the remaining claim, that the Camping Ordinance is void for vagueness, fails as a matter of law. Accordingly, Defendants' Motion for Summary Judgement (Dkt. 77) is granted. This decision renders moot Defendants' Motion to Dismiss Plaintiff Smith (Dkt. 80); and Defendants' Motion to Strike (Dkt. 96).

This decision does not bar Plaintiffs from bringing a future action contending that Defendants are not following the policy set forth in the Special Order. It simply means that the Special Order appears to address most of Plaintiffs' concerns. If the Special Order in practice is ineffective, Plaintiffs and other homeless individuals residing in Boise are free to challenge the Ordinances either as a defense to any criminal charges brought in state court or by bringing another lawsuit in federal court concerning the on-going enforcement of the Ordinances. Obviously, in such a setting, it behooves the City of Boise to take appropriate measures to ensure that the actual enforcement of the Camping and Sleeping Ordinances meets the City's states intentions, as described in this case.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1.     Defendants' Motion for Summary Judgment (Dkt. 77) is GRANTED and Plaintiffs' Amended Complaint is DISMISSED;

2.     Defendants' Motion to Dismiss Plaintiff Smith (Dkt. 80) is MOOT; and

**MEMORANDUM DECISION AND ORDER - 25**

3.     Defendants' Motion to Strike (Dkt. 96) is MOOT.



DATED:  **July 6, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge