**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANET F. BELL; BRIAN S. CARSON; ROBERT MARTIN; LAWRENCE LEE SMITH; ROBERT ANDERSON; PAMELA S. HAWKES; JAMES M. GODFREY; BASIL E. HUMPHREY, *Plaintiffs-Appellants*, | No. 11-35674 |
| | D.C. No. 1:09-cv-00540-REB |
| v. | OPINION |
| CITY OF BOISE; BOISE POLICE DEPARTMENT; MICHAEL MASTERSON, in his official capacity as Chief of Police, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Idaho
Ronald E. Bush, Magistrate Judge, Presiding

Argued and Submitted
August 7, 2012—Seattle, Washington

Filed March 7, 2013

2                    BELL v. CITY OF BOISE

Before: Susan H. Black,* Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Black

## SUMMARY**

### Civil Rights

The panel reversed the district court's summary judgment and remanded in this 42 U.S.C. § 1983 action in which plaintiffs, who either are or have been homeless, alleged that police officers enforced two local camping and sleeping ordinances against them, in violation of the Eighth Amendment.

Plaintiffs contended that defendants' policy, custom, and practice of enforcing these ordinances had the effect of criminalizing homelessness and constituted cruel and unusual punishment. The panel reversed the dismissal of plaintiffs' claims for retrospective relief, determining that those claims were not barred by the *Rooker-Feldman* doctrine. The panel held that although plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege that the state court committed legal error, nor did they seek relief from the state court judgment itself. Rather,

---

* The Honorable Susan H. Black, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiffs asserted as a legal wrong an allegedly illegal act by an adverse party: the City's allegedly unconstitutional enforcement of the ordinances.

The panel also reversed the dismissal of plaintiffs' claims for prospective relief because those claims had not been mooted by defendants' voluntary conduct. In reversing, the panel did not reach the merits of plaintiffs' Eighth Amendment claims. Rather, the panel held that jurisdiction existed as to plaintiffs' Eighth Amendment claims and remanded for a consideration of the merits in the first instance.

## COUNSEL

Howard A. Belodoff, Idaho Legal Aid Services, Inc., Boise, Idaho, for Plaintiffs-Appellants.

Scott B. Muir, Assistant City Attorney, Boise City Attorney's Office, Boise, Idaho, for Defendants-Appellees.

## OPINION

BLACK, Circuit Judge:

Plaintiffs appeal the court's[1] order granting summary judgment to Defendants City of Boise, Boise Police Department, and Michael Masterson in his official capacity

---

[1] The parties consented to proceeding before a magistrate judge in accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

as Chief of Police. Plaintiffs' amended complaint, brought pursuant to 42 U.S.C. § 1983, alleged Defendants enforced two local ordinances in violation of the Eighth Amendment to the Constitution. The court held the *Rooker-Feldman*[2] doctrine deprived it of subject matter jurisdiction over Plaintiffs' claims for retrospective relief. The court also found Plaintiffs' claims for prospective injunctive and declaratory relief "largely moot" because the City of Boise amended one ordinance and the Chief of Police issued an internal policy regarding the enforcement of both ordinances.

We reverse the dismissal of Plaintiffs' claims for retrospective relief because those claims are not barred by the *Rooker-Feldman* doctrine. We also reverse the dismissal of Plaintiffs' claims for prospective relief because those claims have not been mooted by Defendants' voluntary conduct. In reversing, we do not reach the merits of Plaintiffs' Eighth Amendment challenges. Rather, we hold that jurisdiction exists as to Plaintiffs' Eighth Amendment claims and remand for a consideration of the merits in the first instance.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Robert Anderson, Janet Bell, Brian Carson, Pamela Hawkes, Basil Humphrey, Robert Martin, and Lawrence Lee Smith are individuals who either are or have been homeless in Boise. Plaintiffs have all been cited or

---

[2] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923).

arrested for violating one or both of the local ordinances at issue on appeal.[3]

Between 2006 and 2009, Plaintiffs Anderson, Bell, Hawkes, Humphrey, Martin, and Smith were cited or arrested for violating Boise City Code § 9-10-02 (1993) (the Camping Ordinance). During that period, the Camping Ordinance provided:

> It shall be unlawful for any person to use any of the streets, sidewalks, parks or public places as a camping place at any time . . . provided that this section shall not prohibit the operation of a sidewalk café pursuant to a permit issued by the City Clerk.

Boise City Code § 9-10-02 (1993). Violation of the Camping Ordinance was (and is) a misdemeanor. Boise City Code § 9-10-20.[4]

Between 2007 and 2009, Plaintiffs Carson, Hawkes, and Martin were cited for violating Boise City Code § 6-01-05(A)

---

[3] On the record before us, there is nothing to support the allegation that Plaintiff James Godfrey was cited or arrested for a violation of the local ordinances at issue on appeal. Thus, any injury suffered by Godfrey cannot be linked to the challenged actions of Defendants, and Godfrey therefore lacks standing to seek relief. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733, 128 S. Ct. 2759, 2768 (2008) ("To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."). Accordingly, we affirm the dismissal of all claims as to Godfrey.

[4] The Boise City Code is available at: http://cityclerk.cityofboise.org/city-code/.

6                    BELL v. CITY OF BOISE

(the Sleeping Ordinance). The Sleeping Ordinance criminalizes as a misdemeanor "disorderly conduct," which includes "[o]ccupying, lodging or sleeping in any building, structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof." Boise City Code § 6-01-05(A).

On June 28, 2010, Plaintiffs filed an amended complaint challenging the Camping and Sleeping Ordinances (collectively, the Ordinances) and seeking relief pursuant to 42 U.S.C. § 1983. Plaintiffs' amended complaint alleged that Defendants used the Ordinances "to cite and arrest individuals who cannot avoid violating these laws because they are homeless." Plaintiffs contended that Defendants' policy, custom, and practice in enforcing these ordinances "has the effect of 'criminalizing' homelessness" and constitutes "cruel and unusual punishment in violation of Plaintiffs' well established rights under the Eighth Amendment." Plaintiffs sought declaratory and injunctive relief to enjoin enforcement of the Ordinances. Plaintiffs also sought an order (1) "compelling the City of Boise authorities to seek expungement of the records of any homeless individuals unlawfully cited or arrested" under the Ordinances, and (2) requiring the reimbursement of any criminal fines or costs of incarceration paid by homeless individuals as a result of unlawful citations and arrests. Plaintiffs further sought an "[a]ward of damages according to proof."

Central to Plaintiffs' claims is the alleged unavailability of overnight space in Boise's homeless shelters. Three primary homeless shelters operate in Boise. Boise Rescue Mission (BRM) operates two of the shelters—City Light for

Women and Children (City Light) and River of Life. During the summer, both BRM shelters restrict the length of time a person may stay without participating in certain programs. City Light provides shelter for women and children, while River of Life provides shelter for men. Interfaith Sanctuary (Sanctuary) operates the third shelter. Sanctuary cannot guarantee shelter for every person who requests it, and frequently turns away people when full. However, Sanctuary employs a reservation system for those who have stayed the prior evening. People who stayed the previous night are guaranteed the same beds, provided they "show up by 9:00 pm or make special arrangements." Otherwise, the beds are given to those on the wait list. Sanctuary does not appear to restrict a person's length of stay, given that Plaintiff Anderson spent three years living at Sanctuary.

On November 10, 2009, after this litigation had commenced,[5] the City amended the Camping Ordinance by adding a definition of "camp" and "camping":

> The term "camp" or "camping" shall mean the use of public property as a temporary or permanent place of dwelling, lodging, or residence, or as a living accommodation at anytime between sunset and sunrise, or as a sojourn. Indicia of camping may include, but are not limited to, storage of personal belongings, using tents or other temporary structures for sleeping or storage of personal belongings, carrying on cooking activities or making any fire in an unauthorized area, or any of these activities in combination with

---

[5] Plaintiffs' original complaint was filed on October 22, 2009.

> one another or in combination with either
> sleeping or making preparations to sleep
> (including the laying down of bedding for the
> purpose of sleeping).

Boise City Code § 9-10-02 (2009).

No changes were made to the Sleeping Ordinance. However, the Boise Police Department's Chief of Police issued a "Special Order," with instructions to post the order in the 2009 Policy Manual accompanied by a handwritten note that the policy regarding enforcement of the Ordinances "is modified by Special Order 10-03, effective at 0001 hours on January 1, 2010." The Special Order is not referenced or incorporated into the Ordinances. Although the record is vague as to exactly how the Special Order was created, it is clear from the record that the Chief of Police has the exclusive authority to establish policy for the Boise Police Department.

The Special Order prohibits officers from enforcing the Camping and Sleeping Ordinances when a person is on public property and there is no available overnight shelter. The Special Order defines "available overnight shelter" as "a public or private shelter, with an available overnight space, open to an individual or family unit experiencing homelessness at no charge. To qualify as available, the space must take into account sex, marital and familial status, and disabilities." The Special Order further provides that, if an individual cannot use available space because of a disability or a shelter's length-of-stay restrictions, the space should not be considered available. The space will be considered available if the individual cannot use the space "due to

voluntary actions such as intoxication, drug use or unruly behavior."

All three homeless shelters agreed to report voluntarily to Boise State University Dispatch on evenings they determined their shelters were "full."[6]  Boise State University agreed to then send an e-mail to the Boise Police Department advising officers that a shelter had reported being full.  No written agreement exists between Defendants and the shelters.

After extensive discovery, the amendment of the Camping Ordinance, and the adoption of the Special Order, the court granted Defendants' motion for summary judgment.  The court, citing *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007) (order), recognized that a legal basis existed for Plaintiffs' Eighth Amendment challenge to the Ordinances.[7]  The court then concluded Plaintiffs' Eighth Amendment claims for prospective relief were "mooted in part and otherwise fail as a matter of law."

In analyzing Plaintiffs' Eighth Amendment claims for prospective relief, the court distinguished between daytime

---

[6] The Special Order does not define "full" or "full space capacity"; rather, these terms are used on the "Overnight Shelter Capacity Advisory Protocol" form.

[7] The court noted that *Jones* was vacated as a result of a settlement agreement and thus not binding.  However, it concluded the decision "shed light on the issue and how the Ninth Circuit might approach such challenges in the future."  As stated previously, we do not reach the merits of Plaintiffs' Eighth Amendment challenges to the enforcement of the Ordinances.  Likewise, we do not address the propriety of the *Jones* analysis.

enforcement of the Sleeping Ordinance and nighttime
enforcement of the Sleeping and Camping Ordinances. With
respect to the daytime enforcement of the Sleeping
Ordinance, it determined "the undisputed facts reflect that the
homeless may sleep in the parks during the day (whether or
not shelter space is available)." Accordingly, the court
concluded the daytime aspect of Plaintiffs' Eighth
Amendment claims failed as a matter of law.

With respect to nighttime enforcement of both
Ordinances, the court held that Plaintiffs' Eighth Amendment
claims for prospective relief were mooted by the adoption of
the Special Order. The court reasoned that the adoption of
the Special Order allowed the homeless to sleep in parks at
night if shelter space was unavailable, which made it "no
longer reasonable to expect that the Boise Police Department
will enforce the . . . Ordinances against homeless people at
night when shelter space is unavailable." Accordingly, the
court found that adoption of the Special Order mooted the
nighttime enforcement aspect of Plaintiffs' Eighth
Amendment claims for prospective relief. The court noted
that its "decision does not bar Plaintiffs from bringing a
future action contending that Defendants are not following
the policy set forth in the Special Order."

The court also concluded that the *Rooker-Feldman*
doctrine barred consideration of Plaintiffs' claims for
retrospective relief, including Plaintiffs' request for an order
compelling expungement of Plaintiffs' criminal records and
Plaintiffs' request for damages. The court reasoned that
because Plaintiffs' requested relief was "designed to
compensate Plaintiffs for the injuries occasioned by the state-
court judgments," their retrospective claims "would serve as
an end-run around the state court appellate process," and

"serve as a *de facto* appeal from the state court." Further, Plaintiffs' claims would have required the court "to review and reject [the] judgment in each Plaintiff's [criminal] case." Thus, the court found *Rooker-Feldman* prohibited examination of the merits of Plaintiffs' retrospective claims.

The court granted summary judgment to Defendants on the remainder of Plaintiffs' claims and dismissed the amended complaint. This timely appeal followed. Plaintiffs do not appeal the court's decision that their Eighth Amendment claims concerning daytime enforcement of the Sleeping Ordinance failed as a matter of law. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1137 n.13 (9th Cir. 2012) (noting that an appellant waives appeal of an issue not raised in an opening brief).[8] Rather, Plaintiffs' appeal focuses on the court's findings with regard to mootness and the *Rooker-Feldman* doctrine.

## STANDARD OF REVIEW

We review an application of the *Rooker-Feldman* doctrine de novo. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). We also review de novo questions of Article III justiciability, including mootness. *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1176 (9th Cir. 2011). Factual determinations underlying the district court's decision are

---

[8] The court also held that Plaintiffs' right to travel claims failed as a matter of law, the Camping Ordinance was not unconstitutionally vague, the overbreadth doctrine did not apply outside the First Amendment context, and the Idaho constitutional claims failed for the same reasons as their federal counterparts. Plaintiffs have waived appeal of these issues by failing to challenge these rulings in their opening brief. *See Tsao*, 698 F.3d at 1137 n.13.

reviewed for clear error. *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010).

## DISCUSSION

We first discuss the court's dismissal of Plaintiffs' Eighth Amendment claims for retrospective relief under the *Rooker-Feldman* doctrine. We determine the *Rooker-Feldman* doctrine is inapplicable because Plaintiffs' suit is not a forbidden de facto appeal. We then discuss the court's dismissal of Plaintiffs' Eighth Amendment claims for prospective relief on mootness grounds. We conclude Defendants have failed to meet their heavy burden of demonstrating that the Special Order eliminates all reasonable expectations of recurrence of the allegedly unconstitutional enforcement of the Ordinances. Because we hold that jurisdiction exists over Plaintiffs' Eighth Amendment claims for retrospective and prospective relief, we remand for a consideration of the merits of these claims.[9]

### A. *Rooker-Feldman*

The court dismissed Plaintiffs' claims for retrospective relief under the *Rooker-Feldman* doctrine after finding those "requests for relief are designed to compensate Plaintiffs for the injuries occasioned by the state-court judgments." On

---

[9] As discussed earlier, the court concluded Plaintiffs' Eighth Amendment claims for prospective relief concerning daytime enforcement of the Sleeping Ordinance failed as a matter of law. Plaintiffs failed to appeal this issue, thus, on remand, the court need only consider the merits of Plaintiffs' Eighth Amendment claims concerning nighttime enforcement of the Ordinances. Our holding is limited to jurisdiction; nothing in this opinion should be construed as passing judgment on the merits of Plaintiffs' claims.

appeal, Plaintiffs contend the court incorrectly applied the *Rooker-Feldman* doctrine.  We agree.

The *Rooker-Feldman* doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment.  *Skinner v. Switzer*, __ U.S. __, 131 S. Ct. 1289, 1297 (2011).  To determine whether the *Rooker-Feldman* bar is applicable, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision.  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).[10] A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision."  *Id.* at 1164.  In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."  *Id.*  Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court.  *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief.").

If "a federal plaintiff seeks to bring a forbidden de facto appeal, . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court

---

[10] The Supreme Court approved of *Noel*'s approach to *Rooker-Feldman* in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527 (2005).

judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158. The "inextricably intertwined" language from *Feldman* is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis. *See id.* Should the action *not* contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends. *See Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005).

The court erred by dismissing Plaintiffs' claims for retrospective relief under the *Rooker-Feldman* doctrine. Although Plaintiffs sought relief designed to remedy injuries suffered from a state court judgment, they did not allege before the court that the state court committed legal error, nor did they seek relief from the state court judgment itself. Rather, Plaintiffs assert "as a legal wrong an allegedly illegal act . . . by an adverse party"—the City's allegedly unconstitutional enforcement of the Ordinances. *Noel*, 341 F.3d at 1164. Without a direct challenge to a state court's factual or legal conclusion, Plaintiffs' suit is not a forbidden de facto appeal, and *Rooker-Feldman* is inapplicable. *See Manufactured Home Cmtys.*, 420 F.3d at 1030 ("MHC's complaint does not directly challenge a state court's factual or legal conclusion. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker-Feldman*."); *see also Maldonado*, 370 F.3d at 950; *Kougasian*, 359 F.3d at 1140. We therefore reverse the dismissal of Plaintiffs' claims for retrospective relief.[11]

---

[11] On appeal, neither party argues whether preclusion principles apply. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) ("*Rooker-Feldman* does not override or supplant issue and claim preclusion doctrines."). Preclusion principles are not jurisdictional.

## B. Mootness

The court dismissed Plaintiffs' claims for prospective relief as moot after concluding the Special Order was "sufficient to foreclose any reasonable expectation that the alleged illegal action will recur." Specifically, the court found it was no longer reasonable to expect the Ordinances would be enforced against the homeless at night when shelter space was unavailable. On appeal, Plaintiffs argue the court failed to apply the stringent standard for evaluating whether a defendant's voluntary cessation of a challenged practice renders a case moot. Defendants contend Plaintiffs' claims have been mooted by the Special Order.[12]

---

*Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 872 (9th Cir. 2005). We therefore decline to consider their application to this case.

The parties also fail to address the application of *Heck v. Humphrey*'s "favorable-termination" requirement. *See* 512 U.S. 477, 486–87, 114 S. Ct. 2364, 2372 (1994) ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." (footnote omitted)). The court may address this issue on remand to determine whether Plaintiffs have raised a "cognizable" § 1983 claim. *Heck*, 512 U.S. at 483, 114 S. Ct. at 2370.

[12] Defendants also contend Plaintiffs' claims have been mooted by the amended definition of "camping" in the Camping Ordinance. We disagree. Although the amended provision provides additional guidance for the public and police, and was subject to a more rigorous implementation process, it does not, standing alone, moot Plaintiffs' request for prospective relief under the Eighth Amendment. Plaintiffs' request for prospective relief under the Eighth Amendment rests on an

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, __ U.S. __, 132 S. Ct. 2277, 2287 (2012); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (internal quotation marks omitted)). The standard for determining whether a defendant's voluntary conduct moots a case is "stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. at 708 (internal quotation marks omitted); *see also White v. Lee*, 227 F.3d 1214, 1242–44 (9th Cir. 2000). The "heavy burden" lies with the party asserting mootness to demonstrate that, after a voluntary cessation, "the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. at 708 (internal quotation marks omitted). This heavy burden applies to a government

---

allegation that enforcement of the Camping Ordinance effectively criminalized their status as homeless individuals. Mere clarification of the Camping Ordinance does not address the central concerns of Plaintiffs' Eighth Amendment claims. Thus, Defendants have failed to carry their heavy burden of demonstrating that "the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000) (internal quotation marks omitted).

entity that voluntarily ceases allegedly illegal conduct. *White*, 227 F.3d at 1243–44.[13]

The court's mootness analysis relied upon our decision in *Native Village of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir. 1994). *Noatak*, however, involved Alaska's repeal of a challenged statute and was "not a case where a defendant voluntarily ceases challenged action in response to a lawsuit." *Id.* at 1508, 1511. *Noatak* recognized the general principle that, "if a challenged law is repealed or expires, the case becomes moot." *Id.* at 1510.

*Noatak*'s general principle narrowing the voluntary cessation exception is limited to "state legislative enactments that otherwise moot a controversy." *See Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006) (noting the voluntary cessation exception has been narrowed in these circumstances). For state legislative enactments, "'[a] statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" *Id.* (quoting *Noatak*, 38 F.3d at 1510). By contrast, however, repeal or amendment of an ordinance by a local government or agency does not necessarily "deprive a federal court of its power to determine the legality of the practice." *Id.* (internal quotation marks omitted).

We are not presented with a change to a state legislative enactment, nor are we presented with the repeal of the

---

[13] Although we presume a government entity is acting in good faith when it changes its policy, *see Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010), the government entity still must meet its heavy burden of proof, *White*, 227 F.3d at 1244.

BELL V. CITY OF BOISE

challenged Ordinances. Defendants rely on the adoption of
the Special Order, which is not analogous to either a state or
local legislative enactment. Generally speaking, a statute is
"[a] law passed by a legislative body." *Black's Law
Dictionary* 1542 (9th ed. 2009). Idaho's statutes are codified
in the Idaho Code, and the legislative power to enact the laws
of the State is vested in a senate and house of representatives.
Idaho Const. art. III § 1. The Idaho Constitution provides that
"no bill shall become a law without the concurrence of a
majority of the members present," *id.* § 15, and the people of
Idaho reserve "the power to approve or reject at the polls any
act or measure passed by the legislature," *id.* § 1.

Similarly, the City of Boise defines ordinances as "formal
legislative acts of the Council [to be] used whenever the
Council intends to pass a regulatory measure, especially when
it provides a penalty for a violation." City of Boise,
http://cityclerk.cityofboise.org/city-code/ (last visited Dec.
18, 2012). The procedures for adopting an ordinance are
outlined in the Idaho Code and "must be strictly followed."
*Id.* A majority vote of the city council is required to pass or
adopt an ordinance, and the subject of the ordinance must be
clearly expressed in the title. Idaho Code. § 50-902. The
Idaho Code also imposes certain publication requirements
before an ordinance may take effect. Idaho Code §§ 50-901,
50-901A.

The Special Order is not governed by any analogous
procedures. Although policies in the Boise Police
Department Policy Manual may be created by a "policy
committee," the Chief of Police has the ultimate, and
exclusive, authority to "establish policy and to direct all
actions of the Department and its employees." *See* Masterson
Dep. 27: 1–4, 28: 6-8, Aug. 12, 2010. The Special Order was

issued by the Boise Police Department's Chief of Police with instructions to post the order in the 2009 Policy Manual. Employees were then instructed to include a handwritten note that the policy regarding enforcement of the Ordinances "is modified by Special Order 10-03, effective at 0001 hours on January 1, 2010." The record is vague as to exactly how the Special Order was created. We do not know what function, if any, the policy committee served in creating the Special Order. What we do know is that the Chief of Police, and only the Chief of Police, has the "authority to establish policy for the police department." Masterson Dep. 28: 10–11.

The Special Order is an internal policy that purports to curb the discretion of officers to enforce the Ordinances when "[t]here is no available overnight shelter." It is not a formal written enactment of a legislative body and thus was not subject to any procedures that would typically accompany the enactment of a law. Nor is the Special Order referenced or incorporated in the Ordinances.[14] Even assuming Defendants have no intention to alter or abandon the Special Order, the ease with which the Chief of Police could do so counsels against a finding of mootness, as "a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the provision." *Coral Constr. Co. v. King Cnty.*, 941 F.2d 910, 928 (9th Cir. 1991).

---

[14] Nothing in this opinion should be construed as holding that merely referencing or incorporating the Special Order in the Ordinances would have rendered this case moot. As noted previously, the "near categorical rule of mootness" recognized in *Noatak* applies in cases of state statutory change, while "local government or administrative agency repeal or amendment" does not necessarily "deprive a federal court of its power to determine the legality of the practice." *Chem. Producers*, 463 F.3d at 878 (internal quotation marks omitted).

20                    BELL v. CITY OF BOISE

The Special Order is also distinguishable from the "entrenched" and "permanent" policy issued in *White*. 227 F.3d at 1243. In *White*, the Department of Housing and Urban Development (HUD) adopted a new policy in response to the plaintiffs' allegations that HUD investigators violated their First Amendment rights. *Id.* at 1225. The new policy was designed to protect the First Amendment rights of parties subject to HUD investigations, and the policy was circulated in a memorandum, announced by press release, and incorporated into a field handbook. *Id.* at 1242. We found the policy change to be "permanent" based on the broad scope and unequivocal tone of the new policy. *Id.* at 1243. We also noted the new policy, which had been renewed on an annual basis and in place for more than five years, was "fully supportive of First Amendment rights," "address[ed] all of the objectionable measures that HUD officials took against the plaintiffs," and "even confesse[d] that [plaintiffs'] case was the catalyst for the agency's adoption of the new policy." *Id.* & n.25. Based on these facts, we held HUD had met its heavy burden of proving the challenged conduct could not reasonably be expected to recur, such that the plaintiffs' claims were mooted by the new policy. *Id.* at 1244.

Although *White* establishes that a policy change may be sufficient to meet the stringent standard for proving a case has been mooted by a defendant's voluntary conduct, *id.* at 1243–44, the Special Order lacks the assurances present in *White*. Significantly, in *White*, the new policy addressed "*all* of the objectionable measures that HUD officials took against the plaintiffs." *Id.* at 1243 (emphasis added). In contrast, the Special Order fails to fully address Plaintiffs' allegations in their amended complaint with regard to Defendants' nighttime enforcement of the Ordinances. Moreover, as discussed above, the authority to establish policy for the

Boise Police Department is vested entirely in the Chief of Police, such that the new policy regarding enforcement of the Ordinances could be easily abandoned or altered in the future. *Coral Constr. Co.*, 941 F.2d at 928. Simply put, Defendants have failed to establish with the clarity present in *White* that the new policy is the kind of permanent change that proves voluntary cessation.

On the record before us, we conclude the implementation of the Special Order is insufficient to moot Plaintiffs' Eighth Amendment claims for prospective relief.[15] Defendants have failed to meet their heavy burden to make it "absolutely clear that the allegedly wrongful behavior"—the alleged unconstitutional enforcement of the Ordinances—"could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. at 708 (internal quotation marks omitted); *see also DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 963 n.1 (9th Cir. 1999) (adopting the reasoning of *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998), which concluded a changed policy was insufficient to moot a controversy because the policy, adopted after the commencement of the suit, was "'not implemented by statute

---

[15] Defendants argue Plaintiffs are no longer homeless and therefore lack standing to seek injunctive or declaratory relief. Defendants are not entitled to summary judgment on this ground. To defeat a motion for summary judgment, Plaintiffs, as the party asserting federal court jurisdiction, "need not establish that they in fact have standing, but only that there is a genuine issue of material fact as to the standing elements." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002). Viewing the evidence in the light most favorable to the nonmovant, Plaintiffs have met this standard for purposes of their claims for prospective relief. On remand, the court may conduct further discovery on the standing issue for purposes of Plaintiffs' injunctive and declaratory relief claims.

22                Bᴇʟʟ ᴠ. Cɪᴛʏ ᴏғ Bᴏɪsᴇ

or regulation and could be changed again'"); *Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (concluding a vague policy enacted during litigation did "not deprive the court of a justiciable controversy").

## CONCLUSION

We reverse the court's dismissal of Plaintiffs' claims for retrospective relief because those claims are not barred by the *Rooker-Feldman* doctrine. Further, we conclude jurisdiction exists as to Plaintiffs' claims for prospective relief regarding the nighttime enforcement of the Ordinances. We remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**