UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| JANET F. BELL, BRIAN S. CARSON, ROBERT MARTIN, LAWRENCE LEE SMITH, ROBERT ANDERSON, PAMELA S. HAWKES, JAMES M. GODFREY, and BASIL E. HUMPHREY,<br><br>            Plaintiffs,<br><br>     vs.<br><br>CITY OF BOISE; BOISE POLICE DEPARTMENT; and MICHAEL MASTERSON, in his official capacity as Chief of Police,<br><br>            Defendants. | Case No. 1:09-cv-00540-REB<br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** |

Currently pending before the Court is Defendants' Second Motion for Summary

Judgment (Dkt. 141).  The Court has carefully reviewed the record, considered oral

arguments, and now enters the following Order granting, in part, and denying, in part,

Defendants' Motion.

**MEMORANDUM DECISION AND ORDER - 1**

## SUMMARY OF THE DECISION

The Plaintiffs are individuals who either are or were homeless in Boise and they allege that Defendants (Boise City and its Police Department) have criminalized the status of being homeless by the manner in which Defendants enforce Boise City ordinances[1] prohibiting (as a practical matter) camping and sleeping in public.  Defendants now seek summary judgment on Plaintiffs' claim that Defendants' enforcement actions violate the Eighth Amendment's prohibition on cruel and unusual punishment.

In ruling on Defendants' previous summary judgment motion, the Court dismissed Plaintiffs' claims on jurisdictional and mootness grounds.  Order (Dkt. 115).  On Plaintiffs' appeal from that decision, the United States Court of Appeals for the Ninth Circuit reversed this Court's decision as to whether this federal court has jurisdiction to consider the claims, but did "not reach the merits of Plaintiffs' Eighth Amendment challenges" on appeal.  *Bell v. City of Boise*, 709 F.3d 890, 892-96 (9th Cir. 2013).

This Court on remand also does not reach the underlying merits of Plaintiffs' Eighth Amendment claims.  Those claims are largely barred by the so-called "favorable-termination" requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court held that, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a . . . plaintiff must prove

---

[1]  The ordinances are Boise City Code Section 9-10-02 02 (the "Camping Ordinance") and Boise City Code Section 6-01-05(A) (which prohibits disorderly conduct and is referred to throughout this order as the "Sleeping Ordinance").

**MEMORANDUM DECISION AND ORDER - 2**

that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

Plaintiffs could have raised their argument of Eighth Amendment unconstitutionality as a defense to their criminal prosecutions and on direct appeal. A decision in their favor on such claims in this case would necessarily imply the invalidity of their prior convictions or sentences. As a consequence, such claims cannot be prosecuted in this case under the holding in *Heck*. Accordingly, the Court will dismiss all claims for relief that seek expungement from Plaintiffs' records of any camping and sleeping ordinance violations, reimbursement for any fines or incarceration costs, recovery of damages for the alleged civil rights violations, and any other claim or recovery that seeks relief for events that have already occurred and necessarily would imply the invalidity of Plaintiffs' convictions.

The dismissal does not, however, extend to Plaintiffs' request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. That claim seeks prospective relief – *i.e.*, a declaration stating that Defendants' present and threatened future actions in enforcing the Ordinances violate Plaintiffs' rights to be free from cruel and unusual punishment under the Eighth Amendment and the Idaho Constitution (Article I, § 6).[2] Further, this claim is

---

[2] Because Plaintiffs have not argued that the Idaho Constitution provides more extensive protection than does the Eighth Amendment to the U.S. Constitution, this decision refers to both the state and federal constitutional challenges as an Eighth Amendment challenge throughout.

**MEMORANDUM DECISION AND ORDER - 3**

not precluded by the doctrine of res judicata, and it remains to be determined on the

merits.  The Court will require, however, that Plaintiffs file an Amended Complaint

stating this claim more particularly and omitting any dismissed claims for relief.[3]

## BACKGROUND[4]

In this lawsuit, Plaintiffs claim that Defendants enforce Boise City ordinances[5] (the

"Ordinances") regarding camping and sleeping in public against the homeless in Boise in

a manner that violates the Eighth Amendment's prohibition against status crimes.

Plaintiffs are individuals who either are or were homeless in Boise.  Each has been cited

---

[3]  For instance, regarding the Sleeping Ordinance, only nighttime enforcement remains at issue.  *See Bell*, 709 F.3d at 896 ("Plaintiffs do not appeal the court's decision that their Eighth Amendment claims concerning daytime enforcement of the Sleeping Ordinance failed as a matter of law.").  Additionally, the state constitutional claims are at issue only to the extent that their federal counterparts survive.  *See Bell v. City of Boise*, 834 F.Supp.2d 1103, 1116 (D.Idaho 2011) (finding that "the state constitutional challenges fail for the same reasons the federal constitutional claims fail"); *Bell*, 709 F.3d at 896 n.8 (finding that, by not raising the issue in their opening brief, Plaintiffs had waived appeal of the district court's dismissal of their Idaho constitutional claims for the same reasons as their federal counterparts).

[4]  The facts are set forth more fully in the Court's prior Memorandum Decision and Order (Dkt. 115) and the opinion of the United States Court of Appeals for the Ninth Circuit in *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013).  For that reason, and because the parties are familiar with the factual background of this case, the full facts will not be recited here, but are incorporated by reference to the Court's Order at Docket Number 115 and the Ninth Circuit's opinion in *Bell*.

[5]  The ordinances at issue are Boise City Code ("B.C.C.") Sections 9-10-02 and 6-01-05(A).  Boise City Code § 9-10-02 (the "Camping Ordinance") makes it a crime for any person "to use any of the streets, sidewalks, parks or public places as a camping place at any time."  Boise City Code § 6-01-05(A) (the "Sleeping Ordinance") criminalizes disorderly conduct, defined to include "[o]ccupying, lodging or sleeping in any building, structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof."  B.C.C. § 6-01-05(A).  These are considered misdemeanor crimes, punishable by a fine not exceeding one thousand dollars ($1,000) and imprisonment in the county jail not to exceed six (6) months.  *See* B.C.C. §§ 6-01-21; 9-10-19.  *See also* Idaho Code § 18-111 (explaining the difference between felonies, misdemeanors, and infractions).

**MEMORANDUM DECISION AND ORDER - 4**

and convicted under Boise City's Camping Ordinance, or its Sleeping Ordinance, or both.[6]  Defendants are the City of Boise, the Boise City Police Department, and Boise City Police Chief Michael Masterson.

Plaintiffs contend that the Defendants' policy, custom, and practice of issuing citations, arresting, and "harassing" homeless individuals, including Plaintiffs, under the Ordinances has the effect of criminalizing homelessness.  *Id.* at ¶ 35.  They seek declaratory, injunctive, and monetary damages relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02.  More specifically, Plaintiffs ask for: (1) an order enjoining Defendants from enforcing the Ordinances against people sleeping or lying down in public; (2) an order compelling the City of Boise to expunge the criminal records of any homeless individuals cited or arrested and charged under the Ordinances; (3) an order requiring reimbursement of any fines paid or incarceration costs imposed upon homeless individuals for violation of the Ordinances; (4) and declaratory relief.  *See* Amd. Compl., p. 25 (Dkt. 53).

Defendants previously moved for summary judgment on all claims raised by Plaintiffs in their Amended Complaint (Dkt. 53).  The Court entered a Memorandum Decision and Order which held that the *Rooker–Feldman* doctrine[7] precluded subject

---

[6]  Defendants' Statement of Undisputed Facts (Dkt. 141-1) details the sentences imposed and attaches the state court docket sheets for each case.  Plaintiffs report that they have paid fines ranging from $25 to $75 and/or have been sentenced to jail terms ranging from one to 90 days. (Dkt. 143, p. 1).

[7]  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

**MEMORANDUM DECISION AND ORDER - 5**

matter jurisdiction over Plaintiffs' claims for retrospective relief and that Plaintiffs'

claims for prospective injunctive and declaratory relief were largely moot because of

changes in the Ordinances and the City's enforcement of the same stemming from an

amendment made to one of the Ordinances, and an internal policy issued by the Chief of

Police regarding the enforcement of both Ordinances.  Order (Dkt. 115).

On Plaintiffs' appeal, the Ninth Circuit reversed the dismissal of Plaintiffs' claims

for retrospective relief "because those claims are not barred by the *Rooker–Feldman*

doctrine" and reversed the dismissal of Plaintiffs' claims for prospective relief "because

those claims have not been mooted by Defendants' voluntary conduct."  *Bell v. City of*

*Boise*, 709 F.3d 890, 892 (9th Cir. 2013). The Ninth Circuit did "not reach the merits of

Plaintiffs' Eighth Amendment challenges" on appeal, but did rule that jurisdiction exists

as to those claims.[8]  *Id.* at 896.  In a footnote, however, the Ninth Circuit made specific

reference to *Heck v. Humphrey's* "favorable-termination" requirement and raised the

question as to whether the holding in *Heck* bars Plaintiffs' Eighth Amendment claims.

*Bell*, 709 F.3d at 897 n.11 (quoting *Heck*, 512 U.S. 477, 486–87 (1994) ("We hold that, in

---

[8]  The Eighth Amendment is the only remaining basis for Plaintiffs' challenge to the ordinances because Plaintiffs waived appeal of all other issues "by failing to challenge these rulings in their opening brief."  *Bell*, 709 F.3d at 896 n.8 (explaining that although this Court "held that Plaintiffs' right to travel claims failed as a matter of law, the Camping Ordinance was not unconstitutionally vague, the overbreadth doctrine did not apply outside the First Amendment context, and the Idaho constitutional claims failed for the same reasons as their federal counterparts[,] Plaintiffs have waived appeal of these issues by failing to challenge these rulings in their opening brief.").  Additionally, Plaintiffs did not appeal the ruling that the daytime enforcement of the Sleeping Ordinance failed as a matter of law, so only nighttime enforcement is at issue.

**MEMORANDUM DECISION AND ORDER - 6**

order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus") (footnote omitted)).  Following the remand, Defendants filed their second motion for summary judgment, at issue now, arguing two-fold that the holding in *Heck* and claim preclusion principles bar Plaintiffs' Eighth Amendment claims.

## DISCUSSION

**A.    Plaintiffs' remaining claim is an Eighth Amendment challenge to Defendants' alleged conduct of criminalizing homelessness as a status offense.**

Plaintiffs allege that "Defendants are punishing Plaintiffs and other homeless individuals based on their status as homeless person[s]" and that doing so "constitute[s] cruel and unusual punishment in violation of Plaintiffs' well established rights under the Eighth Amendment."  Amd. Compl., ¶¶ 57-58 (Dkt. 53).  In response to Defendants' first summary judgment motion, Plaintiffs similarly argued that "it is unconstitutional to criminalize involuntary acts that are an unavoidable consequence of being homeless, *i.e.*, acts that [a homeless person] is powerless [to] avoid."  Pls.' Resp., p. 1 (Dkt 85) (citation and internal quotation marks omitted).  In making such arguments, Plaintiffs largely rely

**MEMORANDUM DECISION AND ORDER - 7**

on the case of *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated by* 505 F.3d 1006 (9th Cir. 2007).[9]

In *Jones*, a panel decision of the Ninth Circuit Court of Appeals focused upon a discrete Eighth Amendment claim, *i.e.*, whether the Cruel and Unusual Punishment clause limits not just the ways in which a state can punish criminal behavior, but also "what" behavior or conduct a state can criminalize.  *Jones*, 444 F.3d at 1128–29.  The Cruel and Unusual Punishment clause "circumscribes the criminal process in three ways:  First, it limits the kinds of punishment that can be imposed on those convicted of crimes . . .; second, it proscribes punishment grossly disproportionate to the severity of the crime . . .; and third, it imposes substantive limits on what can be made criminal and punished as such. . . ."  *Ingraham v. Wright*, 430 U.S. 651, 667–68 (1977).  The third limitation, however—and the one at issue in *Jones* and in this case—should "be applied sparingly."[10] *Id.* at 668 (internal citations omitted).

According to the panel in *Jones*, when a state engages in this type of Eighth Amendment violation, "a person suffers constitutionally cognizable harm as soon as he is

---

[9]  As described in the Court's earlier Memorandum Decision and Order, "[t]he *Jones* decision was later vacated as a result of a settlement agreement; therefore the opinion is not binding."  (Dkt. 115, p. 6, n. 1).  Even so, this Court considered *Jones* because it "does shed light on the issue and how the Ninth Circuit might approach such challenges in the future."  *Id.*

[10]  *See also Powell v. Texas*, 392 U.S. 514, 531–32 (1968) ("The primary purpose of [the Cruel and Unusual Punishment clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made criminal is ordinarily relevant only to the fitness of the punishment imposed.").  The United States Supreme Court in *Powell* described *Robinson's* proscription as one against statutes or laws that seek "to punish a mere status".  *Powell*, 392 U.S. at 532.

**MEMORANDUM DECISION AND ORDER - 8**

subjected to the criminal process." *Jones*, 444 F.3d at 1129.  Indeed, many Eighth Amendment cases involve challenges to the terms of a criminal punishment which arise in a manner that could not be raised as a direct defense or in a subsequent appeal of a conviction.  However, this is not such a case.  Here, the Eighth Amendment claims could have been raised as a defense in a criminal proceeding and on direct appeal.

An analogous case, involving an appeal of a criminal conviction under a state statute which allegedly criminalized the status of addiction to narcotics, is *Robinson v. California*, 370 U.S. 660, 661, 666-67 (1962).[11]  In *Robinson*, the Supreme Court considered the case on direct review, in deciding Robinson's argument that "a law which made a criminal offense of . . . a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments".  *Id.*  Similarly, a constitutional challenge to a Texas statute criminalizing public intoxication also went to the Supreme Court on direct appeal from a state conviction.[12]  *Powell v. Texas*, 392 U.S. 514, 517 (1968).

---

[11]  Although the "appellant tried unsuccessfully to secure habeas corpus relief in the District Court of Appeal and the California Supreme Court," *Robinson*, 370 U.S. 660, 664, n.6, his appeal was "from the Appellate Department of the Superior Court of California, County of Los Angeles."  *Robinson v. California*, 368 U.S. 918 (1961).

[12]  There are some cases in which the *Heck* bar has not been applied to Eighth Amendment claims, but those cases involved challenges to the type of punishment imposed or conditions of incarceration and not to what conduct a state may criminalize.  *See, e.g.*, *Hanner v. City of Dearborn Heights*, No. 07-15251, 2009 WL 540699, *4-6 (E.D.Mich. Mar. 4, 2009) (finding *Heck* did not bar plaintiff's claim that he was deprived of a crutch in jail in violation of the Eighth Amendment's proscription against cruel and unusual punishment).

**MEMORANDUM DECISION AND ORDER - 9**

Moreover, whether this cases presents a "facial" or "as-applied" challenge to a statute or ordinance is immaterial.  An as-applied challenge can be raised in a criminal prosecution, and then on direct appeal from any conviction.  *See, e.g.*, *United States v. Jinian*, 725 F.3d 954, 958 (9th Cir. 2013) (appellant argued a wire fraud statute was unconstitutional as applied to him); *United States v. Shetler*, 665 F.3d 1150, 1156 (9th Cir. 2011) (appellant argued at the trial level and on appeal that a statute, as applied to him, was void for vagueness).

In sum, Plaintiffs could have raised both facial and as-applied Eighth Amendment defenses to their criminal charges, even though they did not do so.[13]

## B. *Heck v. Humphrey* bars Plaintiffs' Eighth Amendment claims brought under § 1983.

Plaintiffs did not raise Eighth Amendment claims in their state criminal cases, nor did any appeal their convictions.  Hence, Eighth Amendment arguments were never

---

[13]  Although not mentioned in the briefing in connection with the *Heck* issue, Plaintiffs argued in the preclusion doctrine section of their brief that they "could not have conveniently raised their Eighth Amendment claim[s] in prior criminal misdemeanor proceedings." Pls.' Resp., p. 14 (Dkt. 143).  A homeless person, presumably indigent and perhaps dealing with other difficulties such as mental illness, may have challenges in navigating through the criminal justice system.  However, those challenges, even if daunting, are not unique and the issue presented here is not a *Gideon v. Wainwright* question.  Others who are also indigent, or have limited understanding of the legal system, or are mentally ill, or cannot speak English, and so forth, also face challenges.  Such circumstances, lamentable as they are, may make the individual's encounter with the criminal justice system difficult, but such difficulty is a practical, not legal, barrier to raising a constitutional defense to a criminal charge.  Moreover, court-appointed counsel assisted most of the Plaintiffs who appeared for the proceedings in their misdemeanor cases, so those individuals were not navigating the criminal justice system alone.  (Dkt. 141-1; 141-3, pp.4-5). It is difficult to envision a sensible line to be drawn upon the particular details of an individual defendant's personal circumstances (leaving aside an indigent's right to counsel, which is not part of the analysis), by which this or any other court could decide that the rule in *Heck* ought not to apply solely because of those circumstances.

**MEMORANDUM DECISION AND ORDER - 10**

considered in the criminal cases.  That fact is significant here, although not under any sort

of exhaustion requirement.  *See Heck*, 512 U.S. at 489-90 (explaining that "[e]ven a

prisoner who has fully exhausted available state remedies has no cause of action under

§ 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or

impugned by the grant of a writ of habeas corpus") (citations and internal quotation marks

omitted)).  "[W]hen a state prisoner seeks damages in a § 1983 suit, *the district court*

*must consider whether a judgment in favor of the plaintiff would necessarily imply the*

*invalidity of his conviction or sentence*; if it would, the complaint must be dismissed

unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated."  *Heck*, 512 U.S. at 487 (emphasis added).  Further:

> [I]n order to recover damages for allegedly unconstitutional
> *conviction or imprisonment, or for other harm caused by*
> *actions whose unlawfulness would render a conviction or*
> *sentence invalid*, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed *on direct appeal*,
> expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, *or* called into
> question by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.  A claim for damages bearing that
> relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under § 1983.

512 U.S. at 486–87 (emphases added).

A judgment finding the Ordinances unconstitutional in this case necessarily would

imply the invalidity of Plaintiffs' convictions under those Ordinances.  The fulcrum of

Plaintiffs' § 1983 claims is the allegation of unconstitutional convictions.  None of those

convictions, however, was reversed on direct appeal or otherwise called into question,

**MEMORANDUM DECISION AND ORDER - 11**

and none of the Plaintiffs raised a constitutional challenge in his or her criminal case,

including on appeal.  The holding of *Heck* is a close fit to such circumstances.[14]

Accordingly, the *Heck* bar applies to Plaintiffs' claims that would necessarily imply the

invalidity of the convictions or sentences.  Here, that includes the relief requesting

expungement of the records of any camping and sleeping ordinance violations,

reimbursement for any fines or incarceration costs, recovery of damages for the alleged

civil rights violations, and any other claim or recovery tied to events that have already

occurred.

**C.    *Heck v. Humphrey* does not bar Plaintiffs' request for prospective declaratory relief.**

Plaintiffs' have requested a declaratory judgment under 28 U.S.C. §§ 2201 and

2202, stating that Defendants' present and threatened future actions in enforcing the

Ordinances violate the Eighth Amendment's prohibition against cruel and unusual

punishment.[15]  *See* Amd. Compl., p. 25 (Dkt. 53).

---

[14]  Although not issued on or after January 1, 2007, *see* Fed R. App. P. 32.1, one unpublished disposition from the Ninth Circuit addresses similar issues.  In *Masters v. City of Bellflower*, No. 95-55921, 1996 WL 583625 (9th Cir. Oct. 7, 1996), the plaintiff raised a constitutional challenge to the validity of a city animal control statute which formed the basis of his criminal conviction.  *Id.* at *1.  The panel ruled that a judgment in the plaintiff's favor would necessarily imply that the statute and, therefore, the plaintiff's conviction, were invalid.  *Id.*  The criminal conviction had not been invalidated or reversed *on direct appeal*, and, accordingly, the Ninth Circuit affirmed the district court's ruling that the plaintiff's § 1983 claim against the city for damages was barred.  *Id., cert. denied* 522 U.S. 871 (2007).

[15]  Plaintiffs cited to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, in the Jurisdiction and Venue section of their Amended Complaint (Dkt. 53), and asked for declaratory relief in their Prayer for Relief, but did not include this claim as a separate "claim for relief", *see id.* pp. 22-24.  However, they incorporated "all preceding paragraphs" in the section of the Amended Complaint stating their claims for relief.  *Id.* at p. 22, ¶ 55.

**MEMORANDUM DECISION AND ORDER - 12**

In most instances, the holding in *Heck* will bar § 1983 claims for injunctive or declaratory relief.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that certain "cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if success in that action would necessarily demonstrate the invalidity of confinement or its duration*") (emphasis added).[16]  However, *Heck* does not necessarily preclude *all* claims under the Declaratory Judgment Act.

Moreover, Plaintiffs seek a declaration that the Ordinances violate both the United States Constitution and the Idaho Constitution.  *See Los Angeles County, Cal. v. Humphries*, 131 S.Ct. 447, 451 (2010) (Section 1983 protects against "deprivation of any rights ... secured by the Constitution and laws [*of the United States*]".) (quoting 42 U.S.C. § 1983) (internal quotation marks omitted, emphasis added, alterations in original)); *Skinner v. Switzer*, 131 S.Ct. 1289, 1301–02 (2011) (Thomas, J., dissenting) (explaining that the boundaries of § 1983 were first circumscribed in *Preiser v. Rodriguez*, 411 U.S. at 489, where "the Court began with the undisputed proposition that a state prisoner may not use § 1983 to challeng[e] his underlying conviction and sentence *on federal*

---

[16]  *But see Wolff v. McDonnell*, 418 U.S. 539, 554-55 (1974) (permitting prisoners to use § 1983 "as a predicate to a damages award" to obtain a declaratory judgment, explaining that "because under [*Preiser v. Rodriguez*, 411 U.S. 475 (1973)] only an injunction restoring good time improperly taken is foreclosed, [it would not] preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations").

**MEMORANDUM DECISION AND ORDER - 13**

*constitutional grounds*") (alteration in original, emphasis added, internal quotation marks omitted)).  Accordingly, summary judgment is not warranted at this time on Plaintiffs' request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.[17]

**D.     *Heck's* bar applies to Plaintiffs' Eighth Amendment claims brought under § 1983, even if federal habeas relief was unavailable on the facts of this case.**

Even if federal habeas relief was unavailable to any of the Plaintiffs because he or she was never in custody (or if in custody, not for any significant length of time), *Heck* is still a bar to the § 1983 claims based on the Eighth Amendment.  Plaintiffs ask that the Court rule otherwise, relying on a concurring opinion written by Justice Souter in *Spencer v. Kemna*, 523 U.S. 1 (1998), a case decided after *Heck*.  Pls.' Resp., p. 4 (Dkt. 143).  In his *Spencer* concurrence, Justice Souter opined that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement *without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy*."  *Id.* at 21 (Souter, J. concurring) (emphasis added).  That circumstance, however, does not apply to Plaintiffs here, as it was not "impossible as a matter of law" for Plaintiffs to obtain the "favorable termination" required to bring a §1983 action.  Any of the Plaintiffs could have raised a

---

[17]  As detailed further on in this Decision, the Court will require Plaintiffs to file an Amended Complaint and, if Plaintiffs believe they have a right to bring a declaratory judgment claim under § 1983 as one for prospective declaratory and injunctive relief despite the Court's ruling that *Heck* bars all other relief requested under §1983, they should support their amended claim with appropriate authority.

**MEMORANDUM DECISION AND ORDER - 14**

constitutional challenge to the ordinances in their criminal case, based on the same facts underlying Plaintiffs' Eighth Amendment claims in this case, and, if successful, paved the way for a §1983 case.

Most court rulings that have found an exception to the *Heck* doctrine have done so in reliance on Justice Souter's concurrence in *Spencer*[18].  That concurrence, however, must be considered in conjunction with a close reading of the majority opinion issued in *Spencer*, in which the Court affirmed the dismissal of a habeas claim brought by a petitioner who was no longer in custody.  Such a claim, the Supreme Court ruled, was moot because after being released from custody the petitioner no longer suffered any continuing collateral consequences from his earlier parole revocation.  *Id.* at 14–16. Justice Souter and the other justices joining in his concurrence sought to limit the reach of the majority's ruling, (and that of *Heck*), by asserting that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement," and thus "the answer to [petitioner] Spencer's argument that his habeas claim cannot be moot because *Heck* bars him from relief under § 1983 is that *Heck* has no such effect."  *Id.* at 21 (Souter, J., concurring).[19]

---

[18]  *Spencer*, 523 U.S. 1, 18-19 (Justice Souter, in his concurrence, joined in the "Court's opinion as well as the judgment, though [he did] so for an added reason that the Court [did] not reach.").

[19]  Justice Stevens, who dissented from the majority opinion, agreed with those Justices joining in the Souter concurrence that a petitioner without a remedy under the habeas statute may bring an action under § 1983.  *Id.* at 25 n. 8 (Stevens, J., dissenting).

**MEMORANDUM DECISION AND ORDER - 15**

The petitioner in *Spencer* argued that the ruling in *Heck* "would foreclose him from pursuing a damages action" under § 1983, "unless he can establish the invalidity of his parole revocation," and, therefore, "his action to establish that invalidity cannot be moot." *Id.* at 17.  The majority of the Justices were not persuaded, and described this argument as "a great non sequitur, *unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available*." *Id.* (emphasis added).  The majority opinion then went on to explain that a § 1983 damages claim is *not* foreclosed by *Heck* "[i]f, for example, petitioner were to seek damages for using the wrong procedures, not for reaching the wrong result," and if that procedural defect did not "necessarily imply the invalidity of the revocation." *Id.* (citing *Heck*, 512 U.S. at 482–83) (citations and internal quotation marks omitted).

Significantly, Justice Souter agreed that "the majority opinion in *Heck* can be read to suggest that [the] favorable-termination requirement is an element of any § 1983 action alleging unconstitutional conviction, whether or not leading to confinement and whether or not any confinement continued when the § 1983 action was filed." *Id.* at 19 (citing *Heck*, 512 U.S. at 483–84).  He further agreed that the majority in *Heck* "acknowledged the possibility that even a released prisoner might not be permitted to bring a § 1983 action implying the invalidity of a conviction or confinement without first satisfying the favorable-termination requirement." *Id.* at 19-20 (Souter J., concurring).  Justice Souter then explained that he joined the majority decision in *Heck*, "not because the favorable-termination requirement was necessarily an element of the § 1983 cause of

**MEMORANDUM DECISION AND ORDER - 16**

action for unconstitutional conviction or custody, but because it was a 'simple way to avoid collisions at the intersection of habeas and § 1983.'"  *Id.* at 21 (citation omitted).

Justice Souter's concurrence assumes that the federal habeas statute may provide the *only* means of satisfying *Heck's* favorable-termination requirement and, in many cases, that may well be true.  However, in other cases, plaintiffs (such as those who brought this lawsuit) convicted of state crimes may raise § 1983 claims based upon underlying circumstances in which those same plaintiffs could have secured favorable terminations by raising the defense of unconstitutionality before the trial court, or by direct appeal, or by post-conviction litigation.  *See, e.g., Molina-Aviles v. District of Columbia*, 797 F.Supp.2d 1, 6 (D.D.C. June 23, 2011) (pointing to the availability of state court habeas and habeas-type remedies to challenge plaintiffs' alleged unconstitutional driving while intoxicated convictions and concluding that "*Heck* precludes any § 1983 suit challenging a criminal conviction that has not already been favorably terminated, regardless of the availability of habeas-type relief")*.  See also Harrison v. Michigan*, 722 F.3d 768, 772–75 (6th Cir. 2013) (discussing *Heck*, 512 U.S. at 487).

Moreover, the *Heck* favorable-termination requirement is described in the disjunctive, *i.e.*, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, *or* called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. 486–87 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 17**

After *Spencer*, some federal circuit courts have drawn upon Justice Souter's concurrence to support decisions which do not apply *Heck's* favorable termination requirement, in a variety of circumstances.[20]  *See, e.g.*, *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (holding that *Heck* did not bar a plaintiff who was convicted and fined, but not imprisoned, from alleging selective prosecution under § 1983 because he was never in custody and thus could not seek habeas relief)[21]; *Wilson v. Johnson*, 535 F.3d 262,

---

[20]  The Second Circuit has issued the most recent decision upon the issue.  *See Poventud v. City of New York*, No. 12–1011–cv, 2014 WL 182313, *13 (2nd Cir. Jan. 16, 2014) (explaining that "many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction" and finding that Poventud's conviction had been "declared invalid by a state tribunal").  *See also id.,* 2014 WL 182313 at *37 (Jacobs, J., dissenting) (arguing "[t]here is no need to choose a side in this split because the narrow exception articulated by Justice Souter would be inapplicable here in any event" as "[t]he motivating concern in the *Spencer* dicta was that circumstances beyond the control of a criminal defendant might deprive him of the opportunity to challenge a federal constitutional violation in federal court" and the defendant in the *Poventud* case "is not such a person").

[21]  Leather was assessed a $300 fine as well as a $25 surcharge, and his driver's license was suspended for 90 days, but he did not appeal this conviction.  *Leather*, 180 F.3d at 424.  The Second Circuit relied on a prior decision, *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999), to decide "whether a plaintiff, convicted of a criminal offense, could proceed with a § 1983 claim where no remedy of habeas corpus existed."  *Id.*  However, the facts of *Jenkins* are distinguishable from *Leather* and the case at hand.  Jenkins' § 1983 claim did not challenge his state court conviction, but was based on his allegations that a state department of corrections employee "violated his constitutional right to procedural due process in the course of presiding over two separate disciplinary hearings."  179 F.3d at 20.  In concluding that *Heck's* favorable-termination requirement did not bar Jenkins' claim, the Second Circuit observed that, "[i]n *Heck*, the Court did not address administrative or disciplinary segregation at all because the plaintiff challenged only the legality of his underlying criminal conviction and not any subsequent disciplinary action" and then "h[e]ld that a § 1983 suit by a prisoner, such as *Jenkins*, challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards*."  179 F.3d at 27.  Thus, considering that the *Leather* decision relied on the factually distinct case of *Jenkins*, this Court concludes that any persuasive value *Leather* may have does not override the other considerations that led this Court to conclude that *Heck* applies to bar the Plaintiffs' claims in this case.

**MEMORANDUM DECISION AND ORDER - 18**

266–68 (4th Cir. 2008)[22]; *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d

592, 603 (6th Cir. 2007)[23] (concluding that *Heck* is inapplicable because Powers' one day

term of incarceration for his reckless-driving misdemeanor "was too short to enable him

to seek habeas relief"); *DeWalt v. Carter*, 224 F.3d 607, 617-18 (7th Cir. 2000)[24] (relying

on *Spencer* to overrule *Anderson v. County of Montgomery*, 111 F.3d 494, 499 (7th Cir.

---

[22] The Fourth Circuit in *Wilson* explained that the purpose of § 1983 is to "provid[e] litigants with a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation," and that "[b]arring [the plaintiff's] claim would leave him without access to any judicial forum in which to seek relief for his alleged wrongful imprisonment." *Wilson*, 535 F.3d at 268. Plaintiffs here are not claiming they lacked access to a judicial forum in which to raise their Eighth Amendment challenges.

[23] The plaintiff in *Powers* filed a § 1983 action under circumstances similar to the Plaintiffs here, *i.e.*, upon a misdemeanor conviction for which only a short jail term was imposed. Powers alleged that he was deprived of an indigency hearing "because the Public Defender has a policy or custom of failing to request such hearings when its clients face jail time for nonpayment of court-ordered fines his incarceration," and that "the absence of any inquiry into his ability to pay the court-imposed fine, violated his Fifth, Sixth, and Fourteenth Amendment rights." *Powers*, 501 F.3d at 597. However, in a later decision discussing *Powers*, the Sixth Circuit commented:

> Because Justice Souter joined both the Court's opinion that
> Spencer's habeas claim was moot and the judgment affirming the
> district court's decision to that effect, the question he raised about
> whether Spencer could nevertheless maintain a § 1983 action for
> damages was not only unnecessary to the holding of the case but
> could also be described as purely hypothetical. At this point,
> however, we are bound by *Powers* . . . in which the panel chose to
> treat the Souter concurrence as establishing a rule of law, rather
> than dictum.

*Harrison v. Michigan*, 722 F.3d 768, 774 n.1 (6th Cir. 2013).

[24] The Seventh Circuit explained that "[u]nlike the plaintiffs in *Preiser*, *Heck*, and *Edwards*," Mr. DeWalt's case does not "lie at the intersection of sections 2254 and 1983" because "DeWalt does not challenge the fact or duration of his confinement, but only a condition of his confinement-the loss of his prison job." 224 F.3d at 617. Thus, DeWalt's circumstances also are unlike those of the Plaintiffs in this case, who have challenged the fact of their conviction and the resulting fines and, for some, confinement.

**MEMORANDUM DECISION AND ORDER - 19**

1997), which held that *Heck* barred a former prisoner from challenging his conviction in a

§ 1983 suit even if he could not seek habeas relief); *Cohen v. Longshore*, 621 F.3d 1311,

1317 (10th Cir. 2010) ("adopt[ing] the reasoning of these circuits and hold[ing] that a

petitioner who has no available remedy in habeas, through no lack of diligence on his

part, is not barred by *Heck* from pursuing a § 1983 claim"); *Harden v. Pataki*, 320 F.3d

1289, 1298-99 (11th Cir. 2003) (concluding "that *Heck* does not bar most § 1983

damages claims based on improper extradition").

Plaintiffs argue that this Court should reach a similar result, where they argue that

Plaintiffs "never had, and never would have on mootness grounds, an opportunity to

petition for a writ of habeas corpus."  Pls.' Resp., p. 1 (Dkt. 143).  However, other circuits

have imposed *Heck's* bar even when federal habeas relief is not available,

notwithstanding the Souter concurrence in *Spencer*.  As described by the Third Circuit:

> As we recently held in *Gilles v. Davis*, 427 F.3d 197, 210 (3d
> Cir. 2005), a § 1983 remedy is not available to a litigant to
> whom habeas relief is no longer available.  In *Gilles*, we
> concluded that *Heck's* favorable-termination requirement had
> not been undermined, and, to the extent that its validity was
> called into question by *Spencer*, we observed that the Justices
> who believed § 1983 claims should be allowed to proceed
> where habeas relief is not available so stated in concurring
> and dissenting opinions in *Spencer*, not in a cohesive majority
> opinion.

*Williams v. Consovoy*, 453 F.3d 173, 177–78 (3d Cir. 2006).  *See also, Randell v.*

*Johnson*, 227 F.3d 300, 300–01 (5th Cir. 2000) (per curiam) (holding that *Heck* barred a

former prisoner from alleging under § 1983 that he was improperly made to serve two

sentences for the same offense because he was not given credit for his initial prison stay);

**MEMORANDUM DECISION AND ORDER - 20**

*Entzi v. Redmann*, 485 F.3d 998, 1003–04 (8th Cir. 2007) (stating that "[a]bsent a decision of the [Supreme] Court that explicitly overrules what we understand to be the holding of *Heck*, . . . we decline to depart from that rule" and holding that the plaintiff's claim may be pursued only in an action for habeas corpus relief even though plaintiff had argued that habeas corpus was no longer available to him on a claim challenging the length of his imprisonment).  Indeed, the Supreme Court has said in a case decided after *Spencer* that the issue remains undecided of whether *Heck* applies when habeas review is unavailable.  *See Muhammad v. Close*, 540 U.S. 749, 752 (2004) (per curiam) (noting that "[m]embers of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement" but "[t]his case is no occasion to settle the issue").

The Court agrees with this second line of cases.  The majority opinion in *Heck* described Justice Souter's concurring opinion in that case as "adopt[ing] the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but [thinking] it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges."  *Heck*, 512 U.S. at 490 n. 10.  In response, the majority opinion firmly stated that "the principle barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated" and, therefore, could not

**MEMORANDUM DECISION AND ORDER - 21**

bring a federal habeas claim.  512 U.S. at 490 n. 10.  Thus, the Supreme Court in *Heck*

considered more than the intersection of § 1983 actions with habeas relief.  The majority

opinion emphasized "the hoary principle that civil tort actions are not appropriate vehicles

for challenging the validity of outstanding criminal judgments" and stated the Court's

concern for "finality and consistency" in such cases, where the Court "has generally

declined to expand opportunities for collateral attack."  512 at 485–86.

This Court is also attuned to the touchstone of caution that must attend any case

such as this, which arguably invites a remodeling of constitutional law precedent from our

Supreme Court.  The Court agrees with the First Circuit, in a similar proceeding:

> We are mindful that dicta from concurring and dissenting
> opinions in a recently decided case, *Spencer v. Kemna*, 523
> U.S. 1 . . ., may cast doubt upon the universality of *Heck's*
> "favorable termination" requirement.  *See id.* at 19-21, 118
> S.Ct. at 989 (Souter, J., concurring); *id.* at 21-23, 118 S.Ct. at
> 990 (Ginsberg, J., concurring); *id.* at 25 n. 8, 118 S.Ct. at 992
> n. 8 (Stevens, J., dissenting).  The Court, however, has
> admonished the lower federal courts to follow its directly
> applicable precedent, even if that precedent appears weakened
> by pronouncements in its subsequent decisions, and to leave
> to the Court "the prerogative of overruling its own decisions."
> *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 2017,
> 138 L.Ed.2d 391 (1997); *see also Rodriguez de Quijas v.*
> *Shearson/American Express, Inc*., 490 U.S. 477, 484, 109
> S.Ct. 1917, 104 L.Ed.2d 526 (1989).  We obey this
> admonition.

*Figueroa v. Rivera*, 147 F.3d 77, 81 n. 3 (1st Cir. 1998).

Accordingly, this Court concludes that the particular nuances of Justice Souter's

concurrence in *Spencer* are not directly implicated in this case, and the Court finds no

**MEMORANDUM DECISION AND ORDER - 22**

exception to the *Heck* rule drawn from that decision which would require the result sought by Plaintiffs here.

**E.      The Ninth Circuit's holding in *Nonnette* is limited to the particular circumstances of that case, which are not found here.**

Some of the circuit courts finding exceptions to the ruling in *Heck* have cited in support the case of *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002).  Plaintiffs also rely upon *Nonnette*, arguing that they were either not incarcerated or not incarcerated long enough to bring a federal habeas action and, thus, *Heck* does not apply.  *See* Pls.' Resp., pp. 5-6 (Dkt. 143).  The facts of *Nonnette*, however, are far different than the matter before the Court here.

In *Nonnette*, the plaintiff claimed that he had been deprived of "good time" credits which should have reduced the amount of time he spent in state custody.  316 F.3d at 874–75.  Nonnette first exhausted his prison administrative remedies, as required, before seeking alternative forms of relief.  *Id.* at 874, n. 1. The remedy for such "good time" deprivation is ordinarily found in a petition for writ of habeas corpus, but Nonnette could not file a habeas petition because he already had been released from custody.  *Id.* at 875–76.  Under those circumstances, the Ninth Circuit held that *Heck* did not bar Nonnette from maintaining a § 1983 claim.[25]  *Id.* at 876.

---

[25]  The issue on appeal was framed as: "Does the unavailability of a remedy in habeas corpus because of mootness permit Nonnette to maintain a § 1983 action for damages, even though success in that action would imply the invalidity of the disciplinary proceeding that caused revocation of his good-time credits?"  *Id.* at 876.

**MEMORANDUM DECISION AND ORDER - 23**

However, the *Nonnette* court "emphasize[d]" that its holding "affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters." 316 F.3d at 877 n. 7. In contrast to the Plaintiffs' claims in this case, Nonnette's constitutional claim was not ripe at the time that the issue was being considered by the prison's administrative process. It was the decision that resulted in what Nonnette contended was a short-changing of his good time credits that gave rise to his § 1983 claim, not the underlying conviction that led him to prison in the first place.

A careful reading of the more recent decision in *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2003) also limits the holding in *Nonnette* to other similar circumstances, such as former prisoners challenging loss of good-time credits, revocation of parole, or similar matters. *Guerrero* involved a former prisoner who, after his release from prison, filed a § 1983 challenge to the validity of his conviction. The Ninth Circuit ruled that *Heck* barred his § 1983 claims: "Guerrero never challenged his convictions by any means prior to filing" his § 1983 lawsuit and that "[h]is failure timely to achieve habeas relief is self-imposed." *Guerrero*, 442 F.3d at 705. "[T]hough habeas relief for Guerrero may be 'impossible as a matter of law,' we decline to extend the relaxation of *Heck's* requirements." 442 F.3d at 704–05 (comparing *Nonnette*, where the plaintiff diligently challenged administrative revocation of good-time credits, with *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), where the plaintiff failed diligently to challenge an

**MEMORANDUM DECISION AND ORDER - 24**

underlying criminal conviction).[26]  The *Guerrero* court narrowly construed the holding in

*Nonnette*, emphasizing that "*Nonnette* was founded on the unfairness of barring a

plaintiff's potentially legitimate constitutional claims *when the individual immediately*

*pursued relief* after the incident giving rise to those claims *and* could not seek habeas

relief only because of the shortness of his prison sentence."  *Guerrero*, 442 F.3d at 705

(emphases added).  The court emphasized that although "Guerrero is no longer in custody

and thus cannot overturn his prior convictions by means of habeas corpus does not lift

*Heck's* bar" and even though exceptions to *Heck's* bar may exist for plaintiffs no longer

in custody, "any such exceptions would not apply" in Guerrero's case.  *Id.* at 704.

Plaintiffs' claims here are most similar to those of the plaintiff in *Guerrero*, in that

they seek to challenge (and thereby invalidate) convictions and sentences that have never

been invalidated, or favorably-terminated, as required by *Heck*.  Their claims are not

similar to those described in *Nonnette*, which are those brought by "former prisoners

challenging loss of good-time credits, revocation of parole or similar matters" who have

timely pursued other available relief.  316 F.3d at 877 n. 7.  Unlike the plaintiff in

*Nonnette*, the plaintiffs here not only made no timely prior challenge, they did not make

---

[26]  *See also Smith v. Ulbricht*, No. CV12-00199-M-DLC, 2013 WL 589628, *1-3
(D.Mont. Feb. 14, 2013) (finding the plaintiff's request to "expunge and effectively purge any
evidence an arrest ever took place or conviction entered" to be more like *Guerrero* than *Nonnette*
and explaining that the plaintiff "has not timely and diligently sought appropriate relief from his
prior convictions" and though habeas relief may be "impossible as a matter of law," the plaintiff
was not entitled to the relaxation of *Heck's* bar).

**MEMORANDUM DECISION AND ORDER - 25**

*any* challenge to the constitutionality of the government conduct of which they now complain.

When considered under the *Guerrero* decision, decisions from other circuit courts that have applied *Heck* despite the unavailability of habeas relief, and against the majority opinion in *Heck*, this Court views the holding in *Nonnette* as limited to the particular circumstances and distinct facts of that case.  Other district courts in the Ninth Circuit are of the same mind, in analogous circumstances.  *See Robertson v. Qadri*, No. C 06-4624 JF, 2009 WL 150952, *3 (N.D.Cal. Jan. 21, 2009) (explaining that Robertson's circumstances are entirely different from *Nonnette* because "[t]he remedy for [Robertson's] allegedly unlawful arrest and conviction is an appropriate motion or appeal with respect to his criminal conviction" and, thus, the *Heck* doctrine barred Robertson's later § 1983 claim).  *See also Ra El v. Crain*, No. ED CV 05–00174 DDP, 2008 WL 2323524, *12-13 (C.D.Cal. June 4, 2008) (describing *Nonnette* as a "narrow exception limited to plaintiffs (1) who are former prisoners challenging loss of good-time credits, revocation of parole or similar matters, . . . not collaterally challenging underlying criminal convictions, and (2) who diligently pursued 'expeditious litigation' to challenge those punishments to the extent possible" (citations and internal quotation marks omitted).[27]

---

[27] This part of the district court's decision was affirmed on appeal to the Ninth Circuit, where the panel explained that: "[t]o the extent that [plaintiff] claims a denial of the Fourteenth Amendment right to production of exculpatory evidence, summary judgment was proper because a favorable decision on this claim 'would necessarily imply the invalidity of his conviction.'" *Ra El v. Crain*, No. 08–56122, 399 Fed.Appx. 180, 182, 2010 WL 3937982, *1 (9th Cir. Oct. 5,

**MEMORANDUM DECISION AND ORDER - 26**

**F.     Plaintiffs' claims for prospective declaratory relief are not claim-precluded.**

Alternatively, Defendants argue that Plaintiffs' constitutional challenge to the Ordinances is claim-precluded because Plaintiffs were convicted and judgments imposed for violations of the Ordinances.  *See* Defs.' Mem., p. 7 (Dkt. 141-3).  The Court need not reach this issue as to the non-prospective relief sought by Plaintiffs.  However, because *Heck's* bar does not apply to Plaintiffs' requests for prospective declaratory relief under the Declaratory Judgment Act, the Court will now consider whether they are barred by the doctrine of res judicata.

Res judicata (or claim preclusion) prevents parties from re-litigating causes of action which were finally decided in a previous suit.  Res judicata is an affirmative defense which, this setting, operates to give preclusive effect to prior state court judgments.  *See* 28 U.S.C. § 1738 (federal courts must afford full faith and credit to state judicial proceedings); *Allen v. McCurry*, 449 U.S. 90 (1980) (federal courts considering § 1983 actions must give collateral estoppel preclusive effect to state court judgments); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984).  Whether a state judgment has preclusive effect in a federal action is determined by state law governing claim preclusion.  *See Migra*, 465 U.S. at 83–85.

The doctrine of claim preclusion is recognized as an affirmative defense under Idaho law.  Put simply, "under the principle of res judicata or claim preclusion, judgment on the merits in a prior proceeding generally bars relitigation between the same parties or

_____

2010) (quoting *Heck*, 512 U.S. at 487)).

their privies on the same cause of action."  *D.A.R., Inc., v. Sheffer*, 997 P.2d 602, 605

(Idaho 2000) (citing *Yoakum v. Hartford Fire Ins.*, 923 P.2d 416 (Idaho 1996)).  Claim

preclusion generally bars adjudication not only on the matters offered and received to

defeat the claim, but also as to matters relating to the claim *which might have been*

*litigated in the first suit*.  *Ticor Title Co. v. Stanion*, 157 P.3d 613, 620 (Idaho 2007).  In

asserting the affirmative defense, the Defendants have the burden of establishing all of the

essential elements by a preponderance of the evidence.  *Foster v. City of St. Anthony*, 841

P.2d 413, 420 (Idaho 1992).

Defendants argue that Plaintiffs' § 1983 claim is "factually premised upon the

same conduct that led to Plaintiffs' misdemeanor convictions."  Defs.' Mem., p. 9 (Dkt.

141-3).  Defendants do not explain how Plaintiffs could have requested prospective

declaratory or injunctive relief in their criminal cases.  The Court recognizes that, as

described in *Preiser v. Rodriguez*, 411 U.S. 475 (1975), res judicata principles apply to

civil rights suits brought under § 1983.  *Id.* at 497.  *See also Huffman v. Pursue, Ltd.*, 420

U.S. 592, 606, n. 18; *Wolff v. McDonnell*, 418 U.S. 539, 554, n. 12.  Additionally, as

outlined in *Preiser,* the doctrine of res judicata has been applied to issues previously

decided both in state civil proceedings, *e. g., Coogan v. Cincinnati Bar Assn.*, 431 F.2d

1209, 1211 (6th Cir. 1970), and in state criminal proceedings, *e. g., Goss v. Illinois*, 312

F.2d 257, 259 (7th Cir. 1963).  *See also Allen v. McCurry*, 449 U.S. 90, 103-04 (1980)

("[N]othing in the legislative history of § 1983 reveals any purpose to afford less

deference to judgments in state criminal proceedings than to those in state civil

**MEMORANDUM DECISION AND ORDER - 28**

proceedings."); *Webber v. Giffin*, Civil No. 07–1675–KI, 2008 WL 5122702 (D.Or. Dec. 3, 2008) (finding plaintiff barred from pursuing claims, including constitutional violations under § 1983, where those claims could have been raised in administrative proceeding addressing plaintiff's violation of Oregon water laws).

However, even though the "[t]he transactional concept of a claim is broad," *Ticor*, 157 P.3d 613, 620 (internal quotation marks omitted), the res judicata doctrine does not stretch so far as to preclude the claim for prospective declaratory judgment relief that remains in this case.  "What constitutes the same transaction must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, *whether they form a convenient trial unit*, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Sadid v. Vailas*, 936 F.Supp.2d 1207, 1218 (D.Idaho 2013) (internal quotation marks omitted and emphasis added) (citing *Andrus*, 186 P.3d at 633 (quoting the Restatement (Second) of Judgments § 24 (1982)).  Here, Plaintiffs could have raised a constitutional claim as a defense to their criminal charges.  However, claims for prospective injunctive and declaratory relief – traditionally tried in a civil court -- were likely unavailable for them, and would not have formed a convenient trial or conformed to the parties' expectations about the issues involved in a criminal case.

The Court finds persuasive the decision in *Cutler v. Guyer*, No. 3:08–CV–371–BLW, 2010 WL 3735689 (D.Idaho Sept. 14, 2010), in which District Judge B. Lynn Winmill ruled that claim preclusion principles did not bar a § 1983 claim.  Although

**MEMORANDUM DECISION AND ORDER - 29**

brought under different circumstances, the defendants in *Cutler* sought to use both claim and issue preclusion to dismiss a federal civil rights action based on the plaintiff's prior state habeas corpus action.  "An Idaho habeas corpus action is a unique state law cause of action based upon the Idaho Constitution and Idaho statute," Judge Winmill wrote, and while that action "may involve federal constitutional issues, there is ordinarily no right to discovery, no availability of jury trial, and no availability of a remedy other than injunctive relief."  *Id.* at *10.

Plaintiffs did have a right to a jury trial in their criminal cases.[28]  However, the criminal rules and procedures do not permit the extent of discovery allowed in civil cases, nor provide an avenue to join a civil counterclaim in a criminal proceeding.

In summary, res judicata and claim preclusion principles do not bridge this proceeding and the plaintiffs' individual criminal prosecutions.  There is simply not a sufficient common ground between the facts and the nature of the proceedings to permit such a defense in this case.  Additionally, because claim preclusion does not apply, the Court need not consider Plaintiffs' argument that Defendants waived this defense by excluding it from their Answer to the Amended Complaint.

---

[28]  *See* Idaho Code § 19-1902 ("Issues of fact must be tried by jury, unless a trial by jury be waived in criminal cases by the consent of both parties expressed in open court and entered in the minutes.  In case of misdemeanor the jury may consist of six (6) or any number less than six (6) upon which the parties may agree in open court.  There shall be no right to trial by jury for an infraction punishable only by a penalty not to exceed one hundred dollars ($100) and no imprisonment.").

**MEMORANDUM DECISION AND ORDER - 30**

**G.      Conclusion**

On the facts of this case, the favorable termination requirement of *Heck* is a bar to Plaintiffs' § 1983 claims.  However, Plaintiffs' claim for prospective injunctive and declaratory relief, to the extent that such claim seeks declaratory relief under the Declaratory Judgment Act, is not barred by *Heck*.  Finally, the criminal cases and the instant case are not sufficiently identical under a claim preclusion analysis to justify application of the bar of res judicata to Plaintiffs' claims for prospective declaratory and injunctive relief.

A portion of this case remains, but most of the claims have been dismissed.  In the exercise of its discretion, the Court finds that it is appropriate for case management purposes to require Plaintiffs to file a second amended complaint stating only the claim that remains.  After the Amended Complaint is filed, and Defendants respond in the ordinary course, the parties shall meet and confer and submit a new stipulated litigation plan.  The stipulated litigation plan is due no later than twenty days after Defendants respond to the Amended Complaint.  At that time, the Court will set a telephonic case management conference.

**ORDER**

**ACCORDINGLY, IS HEREBY ORDERED** that Defendants' Second Motion for Summary Judgment (Dkt. 141) is GRANTED, in part, and DENIED, in part, as set forth in more detail above.

On or before **February 25, 2014**, Plaintiffs shall file and Amended Complaint.

After the Amended Complaint is filed, and Defendants respond, the parties shall meet and

confer and submit a new stipulated litigation scheduling plan.  The stipulated litigation

plan is due no later than 20 days after Defendants respond to the Amended Complaint.

DATED:  **January 27, 2014**



_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 32**