PUBLIC RECORD VERSION

Howard A. Belodoff, ISB # 2290
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID 83702
(208) 336-8980 │ Phone
(208) 342-2561 │ Fax

Eric S. Tars, # 94857 (PA)
The National Law Center on Homelessness & Poverty
1411 K Street, Suite 1400
Washington, DC 20005
(202) 638-2535 │ Phone
(202) 628-2737 │ Fax

Marguerite M. Sullivan, # 497894 (DC)
Rebecca Valentine, # 989607 (DC)
Aziz Ahmad, # 1004817 (DC)
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200 │ Phone
(202) 637-2201 │ Fax

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT MARTIN, LAWRENCE LEE SMITH, ROBERT ANDERSON, BASIL E. HUMPHREY, PAMELA S. HAWKES, and JANET F. BELL | ) Case No. 1:09-CV-540-REB <br><br> ) **SECOND AMENDED COMPLAINT** <br> ) **FOR INJUNCTIVE AND** <br> ) **DECLARATORY RELIEF** |
| Plaintiffs, | ) |
| v. | ) |
| | ) **Eighth Amendment;** |
| CITY OF BOISE; BOISE POLICE DEPARTMENT; and MICHAEL MASTERSON, in his official capacity as Chief of Police, | ) **42 U.S.C. § 1983;** <br> ) **28 U.S.C. §§ 2201, 2202** <br> ) <br> ) |
| Defendants | ) |

COME NOW the Plaintiffs Robert Martin, Lawrence Lee Smith, Robert Anderson, Basil E. Humphrey, Pamela S. Hawkes, and Janet F. Bell (hereinafter "Plaintiffs"), and for a cause of action against the City of Boise, the Boise Police Department, and Chief of Police Michael Masterson (hereinafter "Defendants"), state and allege as follows:[1]

**PRELIMINARY STATEMENT**

1.      In Boise, Idaho, thousands of people are homeless on any given night.  Idaho Housing & Finance Ass'n, *Homelessness in Idaho 2013 Point-In-Time Count Report* (2013). Without accounting for any length of stay policies and religious participation requirements which would exclude homeless persons from accessing area shelters, there are only beds for approximately 460 people in area shelters.  With the recent economic downturn, the homeless population includes an increasing number of people who have become homeless for the first time. *Id.* at 4.    Shelters in Boise have to place people on mats in every available floor space when they run out of beds and still do not have enough room to meet the need.

2.      Those individuals who are not able to find a bed or floor mat in the shelters have no choice but to sleep in the public places of Boise in violation of laws that prohibit "camping" or sleeping in public places.  Boise police officers routinely issue camping citations to persons who are homeless for sleeping, sitting, or talking with friends in public places—activities non-homeless persons have the freedom to engage in without fear of police interference.  Boise police officers also issue disorderly conduct and "park after dark" citations to persons who are homeless

---

[1] In its Memorandum Decision and Order on Defendants' Second Motion for Summary Judgment, dated January 27, 2014, the Court requested that Plaintiffs file the Second Amended Complaint, finding that "it is appropriate for case management purposes to require Plaintiffs to file a second amended complaint stating only the claim that remains." Order, Dkt. No. 152 at 31. In filing this Second Amended Complaint, Plaintiffs are not waiving their rights to appeal the claims dismissed by the Court's January 27, 2014 Order.

merely for sleeping in discrete public places and parks at night. These citations lead to convictions and jail time, which make it more difficult for Boise's homeless population to obtain and keep employment and long-term housing. Thus, they continue to sleep in public places despite the constant fear of being issued a citation or arrested by police.

3.    This is an action brought by persons who are homeless and who are threatened with citation or arrest under three Boise Municipal Code ordinances: (1) § 9-10-02, which prohibits camping on streets, in parks, or in public places at any time; (2) § 6-01-05(A), which prohibits sleeping in public as "disorderly conduct"; and (3) § 13-03-05(E), which prohibits individuals from being in the city's parks during times of closure (colloquially known as "Park After Dark"). The Defendants have used these laws to cite and arrest individuals who cannot avoid violating these laws because they are homeless. In effect, Defendants have "criminalized" homelessness and these laws violate the requirements of the United States Constitution.

4.    Plaintiffs bring this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.[2] Plaintiffs seek this relief to enjoin Defendants from enforcing Boise Municipal Code §§ 9-10-02, 6-01-05(A), and 13-03-05(E) for sleeping or lying down in public and to declare those ordinances unconstitutional.

**JURISDICTION AND VENUE**

5.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367. Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate rights

---

[2] *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452 (1974); *Vasquez v. Rackauckas*, 734 F.3d 1025 (9th Cir. 2013).

SECOND AMENDED COMPLAINT – Page 3

established by the Eighth Amendment of the United States Constitution.  Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6.    Venue in this action is proper in the District of Idaho under 28 U.S.C. § 1391(b), as the Defendants are located in the District of Idaho and all the events and/or omissions giving rise to the claims complained of herein have occurred or will occur in the District.

**PARTIES**

**A.    Plaintiffs**

7.    Upon information and belief, Plaintiff ROBERT WILLIAM MARTIN is a homeless individual who lives in Boise.  Upon information and belief, he has been homeless on and off since he was eighteen years old.              REDACTED

In the past, he stayed at the Interfaith Sanctuary shelter with his then-wife and small child, but Interfaith Sanctuary asked Martin and his family to leave because they had too many belongings, mostly consisting of items for their then-toddler.  He tried to stay at the Boise Rescue Mission's River of Life shelter but at one point was told not to return because his insomnia made it difficult for him to wake up at the time the shelter required.  Martin received a camping citation on March 21, 2009.  He was sleeping in the bushes near the I-84 highway not far from the shelter in which his wife and son were sleeping because he could not stay at any of the shelters in Boise that night.  He told the Boise police officer who cited him that he was unable to stay at a shelter, but the officer issued a citation anyway.  Martin pled guilty because he did not have the funds to hire an attorney and was afraid that challenging the citation would

SECOND AMENDED COMPLAINT – Page 4

result in additional court costs and incarceration.  Since he received his camping citation, officers have threatened Martin with more camping citations and cited him under other statutes for sleeping in public places.  On April 24, 2009, Martin received a citation for disorderly conduct merely for sleeping outside the Corpus Christi day shelter.  Martin had been wandering around all night looking for a place to sleep because he could not stay at any of the shelters. At four or five in the morning he decided to sit down by Corpus Christi day shelter and wait for it to open at 7:00 a.m.  He dozed off while waiting and received a citation as a result.  On September 9, 2012, Martin received a camping citation for sleeping outside the Interfaith Sanctuary shelter.  Upon information and belief, Martin pled guilty because he did not have the funds to hire an attorney and was afraid that challenging the citation would result in additional court costs and incarceration.  Because Martin is homeless and lacks stable housing, he will be forced to sleep outside on any evening when Boise's shelters are full or otherwise unavailable to him.

      8.     Upon information and belief, Plaintiff LAWRENCE LEE SMITH was a homeless Boise resident and is chronically homeless.                              REDACTED

                                                      He receives Social Security benefits, but nevertheless has found himself without funds sufficient to continuously cover the cost of living and renting an apartment in Boise.  For many years, he lived in a camper van, but his van was towed and he lacked the funds needed to get it back.  At times he has slept along the Boise River and in other out-of-the-way areas in Boise.  He has stayed at Boise Rescue Mission shelter in the past; however, given the shelter's limited resources and overcrowding, Smith has never been able to sleep in a bed there.  The few times he stayed at Boise Rescue Mission, he had to sleep on a mat on the floor in an small room with four or five other individuals.  Boise Rescue Mission has turned him away for lack of space many times in

SECOND AMENDED COMPLAINT – Page 5

PUBLIC RECORD VERSION

the past.  Smith no longer attempts to stay at Boise Rescue Mission because the shelter's religious philosophy and activities requirements conflict with his religious beliefs.  Smith has also been turned away from the Interfaith Sanctuary shelter for lack of space in the past.  Smith received two camping citations from the same Boise police officer on April 28, 2007 and May 12, 2007 for setting up a tent in secluded areas near the river.  Because he was sleeping deep in the woods and could not be observed from any public path, he believes that the officer sought him out to issue a camping citation.  He was convicted and served ninety days incarceration for the first citation and ten days incarceration for the second citation.  In addition, he missed one of his court appearances and was convicted of failing to appear.  After he was arrested, he lost his tent, his stove, and his fishing equipment—all of which Smith needed to sustain himself in the absence of shelter.  Upon information and belief, Smith fears that he will face additional citations that he cannot pay and/or arrest by Boise police officers on the nights when he has no choice but to sleep in public places of Boise.

9.    Plaintiff ROBERT ANDERSON is a homeless Boise resident.    REDACTED

However, he was homeless for over four years and found a more permanent living situation in a rental property in 2012.  He and his wife recently received a notice of eviction because they have been unable to pay all of the monthly rent.  If they are evicted, they will likely have difficulty finding new housing because of their bad credit record, the prior eviction, Anderson's lack of income, and his significant debt.  Anderson received a camping citation on September 1, 2007.  He had been staying at the Boise Rescue Mission, but was forced to leave because of the shelter's policy of allowing men to stay for only seventeen days unless they enroll in the shelter's religious programming.  He and some other

SECOND AMENDED COMPLAINT – Page 6

PUBLIC RECORD VERSION

men slept in the foothills, in an area they believed was outside of the Boise city limits.   At approximately 8:00 a.m. the next morning, a Boise police officer found them and issued camping citations.   Anderson believes that the officer specifically sought out homeless individuals to whom he could issue citations.   Anderson was convicted and served one day incarceration and received a $25.00 fine which he could not afford to pay.   Anderson fears that if he is evicted, he will once again be forced to sleep outside and will receive additional citations and more fines that he will not be able to pay.

10.    Plaintiff BASIL E. HUMPHREY is a homeless Boise resident.   He moved to Idaho around 2005 to live with his daughter.   She encouraged him to enroll in a biblically-based alcoholism program at the Boise Rescue Mission.   After he had difficulties staying sober he was kicked out of the program and was unable to stay at the shelter.   Humphrey had no place to go and was forced to sleep outdoors for several months.        REDACTED

He received camping citations on August 2, 2007 and September 18, 2007, was convicted, and served three and two days' time, respectively, for these citations.   Because Humphrey is homeless and lacks stable housing, he will be forced to sleep outside on any night when Boise's shelters are full or otherwise unavailable to him.   He fears receiving additional citations and more fines that he will not be able to pay.

SECOND AMENDED COMPLAINT – Page 7

11.    Plaintiff PAMELA S. HAWKES[3] was a homeless Boise resident.  She received eleven different camping citations from Boise police officers in 2006 and 2007.  She also received a disorderly conduct citation on July 24, 2007. These citations resulted in periods of two to four days of incarceration per citation and fines.  She often had no choice but to sleep in public places because she could not find space in Boise shelters.  She left Boise because she feared that Boise police officers would continue to cite and arrest her pursuant to § 9-10-02, and she did not have the ability to pay more criminal fines.

12.    Plaintiff JANET F. BELL has resided in Boise since April 13, 2007, and for much of that time was without shelter.                REDACTED



Because she has difficulty maintaining a traditional job, Bell has spent most of her life traveling and working short-term jobs to earn an income.  Although space was occasionally available at the Boise Rescue Mission's City Lights Home for Women and Children, Bell could not stay there because the Boise Rescue Mission's religious philosophy and activities requirements conflict with her own religious beliefs and because the Boise Rescue Mission limits the length of stay for persons who do not enroll in their religious programming.  Moreover, the Boise Rescue Mission would not allow Bell to stay with her then-fiancé because it prohibits couples from staying together in the same shelter facilities.  Bell received two citations under § 9-10-02 for sleeping in parks and

---

[3] Pamela S. Hawkes and Janet F. Bell remain in this case to preserve their right to appeal the Court's Order of January 27, 2014 granting in part Defendant's Motion for Summary Judgment and thereby dismissing Bell and Hawkes' claims for damages under 42 U.S.C. § 1983.  Dkt. No. 152.  They do not assert claims for prospective relief.

SECOND AMENDED COMPLAINT – Page 8

other public locations.  On the morning of April 28, 2007, a Boise police officer approached Bell and another individual while they were sitting on a riverbank.  Bell did not have a tent or bedroll at the time, only a backpack with some personal belongings, yet she still received a citation.  On the second occasion, on May 22, 2007, Bell had just arrived in a secluded location where other homeless individuals slept and put down a bedroll when an officer arrived, wrote citations, and threatened to arrest the individuals if they did not leave immediately.  Bell has been convicted twice under the statute and received a thirty-day suspended sentence.  In addition to these two instances, there were several other occasions on which Boise police officers approached Bell and threatened to arrest her for napping or sitting with friends in secluded areas.  She ultimately was forced to sleep in the bed of a pickup truck, outside the Boise city limits, because she feared that she would be cited and/or arrested by Boise police officers if she fell asleep in public places in Boise.  She knew that another citation would result in the revocation of her suspended sentence and that she would be incarcerated.

**B.    Defendants**

13.    Defendant CITY OF BOISE (hereinafter "City") is a municipal corporation, organized under the laws of the State of Idaho, with the capacity to sue and be sued.  The City is the legal and political governmental entity responsible for the actions of the Boise Police Department, its officials, agents, and employees.  The City is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees who were following the City's Ordinances and policies.

14.    Defendant BOISE POLICE DEPARTMENT (hereinafter "Department") is the municipal agency responsible for policing the City and for enforcement of Boise Municipal Code §§ 9-10-02, 6-01-05(A), and 13-03-05(E).  The Department is sued in its own right and on the

basis of the acts and omissions of its officials, agents, and employees who were following the City's Ordinances and policies.

15.    Defendant MICHAEL MASTERSON has been the Chief of Police since January 2005.  As such, he is responsible for the administration and operation of the Department, and ultimately, for the enforcement of Boise Municipal Code §§ 9-10-02, 6-01-05(A), and 13-03-05(E).  Under his direction, Boise police officers have issued numerous citations to Plaintiffs for allegedly violating Sections 9-10-02, 6-01-05(A) and 13-03-05(E) and have threatened Plaintiffs with citations and/or arrest.  Chief Masterson is sued in his official capacity.

**FACTUAL ALLEGATIONS**

**A.    Provisions at Issue**

16.    Boise Municipal Code § 9-10-02 makes it a crime for any person "to use any of the streets, sidewalks, parks or public places as a camping place at any time."[4] The terms of this ordinance are broad, such that it covers sleeping or resting in any public place in Boise at any time of the day or night.  Police officers have cited individuals for sitting and sleeping in public places throughout the City.  The only exception in the statute to this complete ban is for the "operation of a sidewalk café."

17.    The Department does not maintain adequate written guidance or training materials regarding the enforcement of § 9-10-02.  The Boise Community Ombudsman's December 20,

---

[4]    The statute defines "camp" or "camping" as "the use of public property as a temporary or permanent place of dwelling, lodging, or residence, or as a living accommodation at any time between sunset and sunrise, or as a sojourn.  Indicia of camping may include, but are not limited to, storage of personal belongings, using tents or other temporary structures of sleeping or storage of personal belongings, carrying on cooking activities or making any fire in an unauthorized area, or any of these activities in combination with one another or in combination with either sleeping or making preparations to sleep (including the laying down of bedding for the purpose of sleeping."

SECOND AMENDED COMPLAINT – Page 10

2006 *Special Report on Interactions Between the Boise Police Department and the Homeless* ("*Ombudsman's Report*") recommended that the Boise Police Department create a written, binding protocol governing its officers' interactions with homeless individuals. *Ombudsman's Report* at 44. On information and belief, the Police Department never created such a protocol.

18.    Defendants have a policy and custom of enforcing the statute broadly; the statute's prohibition on camping amounts to a ban on sleeping, lying down, or sitting—basic necessities in life. The statute particularly targets persons who are homeless because they have to carry and possess their personal belongings at all times in violation of the statute and do not have the ability to store them due to their homeless status.

19.    Boise Municipal Code § 6-01-05(A) criminalizes "occupying, lodging or sleeping in any building, structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof" as "disorderly conduct." This ordinance is also very broad in that it explicitly prohibits sleeping in <u>any public place</u> in Boise at any time of the day or night and, thus, explicitly bans a necessary function of life.

20.    Boise Municipal Code § 13-03-05(E) prohibits any person from "enter[ing] or remain[ing] in the park during times of closure, except for purposes of transit through the park, or as authorized by permit." Section 13-03-01(E) defines "park" as "[a]ny and all lands, buildings, reserves, sports complexes, swimming pools, golf courses, trails and other special places, including the Boise River Greenbelt, that are owned, operated or maintained by Boise City, and are delineated generally in the publication known as the Department of Parks and Recreation Map, and/or specifically in the Inventory of Park Properties at the office of the Director."

SECOND AMENDED COMPLAINT – Page 11

21.     The Department adopted a Special Order, effective on January 1, 2010, that added section 2.15.00 to the Department Policy Manual, Enforcement of Camping/Sleeping Ordinance. The Special Order is an internal policy issued by Chief Masterson.  The Special Order is not itself a city ordinance, nor is it referenced or incorporated into any city ordinances.  Chief Masterson, or any person who holds the office of Chief of Police after him, has the sole authority to rescind or change the Special Order at any time.

22.     The Special Order does not define "available overnight shelter," "full" or "full space capacity."  The Special Order does not provide any guidance or training to officers on how to determine if a person cannot utilize shelter space because of a disability or if the person has exceeded the maximum allowable stay.  It is not clear from the face of the Special Order what ordinances are affected by the Special Order.

23.     The Department also promulgated the Overnight Shelter Capacity Advisory Protocol as a means of implementing the Special Order.  The one page protocol form is not referenced or incorporated into any city ordinance.

24.     Under the Overnight Shelter Capacity Advisory Protocol, it is voluntary for shelters to report to the Department, through the Boise State University ("BSU") dispatch, whether they are full.  The Department does not monitor whether the shelters actually report their status or encourage them to do so.  Police officers do not monitor to confirm whether or not the shelters are actually full on a given night.  There have been times that shelters have been full and did not contact the BSU dispatch.  The emails from BSU dispatch do not provide any information as to whether shelters are available to persons with specific disabilities or whether any particular person is permitted to stay at any shelter.

25.    Officers are not required to check their email to determine whether the shelters have reported being full before issuing a citation.  Officers cite individuals without checking on the status of the shelters.  The Police Department instructed officers not to call the BSU dispatch or the shelters to ask if the shelters are full.

26.    On information and belief, the City, through the Boise Police Department, Chief of Police, and police officers, aggressively and selectively enforces the anti-camping, disorderly conduct, and park after dark ordinances' prohibitions on sleeping in public against homeless individuals in Boise in order to force these individuals to make the untenable choice between criminal convictions and leaving the City.  On information and belief, the enforcement of these ordinances is part of a policy promoted by the City, the Boise Police Department, and Chief Masterson to "solve" the homelessness problem in Boise.

27.    In fact, the ordinances at issue in this case are not the only ordinances enacted by the City that are intended to, or have the effect of, targeting Boise's homeless residents.  In September 2013, the City of Boise adopted an ordinance barring persons from orally soliciting money or other things of value throughout the public areas of the city.  Two homeless individuals who make their living soliciting on the streets of Boise, along with the ACLU of Idaho, successfully challenged the statute as violating the First Amendment to the U.S. Constitution.  This Court enjoined the city from enacting certain portions of the ordinance and the City has since repealed the ordinance.  Judgment, *ACLU v. City of Boise*, No. 1:13-cv-00478-EJL (D. Idaho Feb. 10, 2014) (Dkt. No. 22).

**B.    Homelessness in Boise**

28.    Federal law defines a "homeless individual" to include one who lacks a fixed, regular and adequate night-time residence, or one who resides in a shelter, transitional housing or

a place not ordinarily used for sleeping accommodations, such as streets, automobiles, abandoned buildings, parks or other public spaces. Stewart B. McKinney Homeless Assistance Act of 1987 § 103(a), 42 U.S.C. § 11302(a) (2000). A homeless child is also an "individual[] who lack[s] a fixed, regular, and adequate nighttime residence." 42 U.S.C. § 11434a(2)(A)(B)(i).

29.     Private and public organizations in Boise track the number of homeless persons residing and receiving services in the city. The Boise School District reports that during the 2012-13 school year, 733 of its students were homeless. The other school districts in Ada County, Meridian, and Kuna, report having 364 and 201 homeless students, respectively. Terry Reilly, a community based non-profit corporation dedicated to providing quality, comprehensive health care, served 1399 homeless patients at its clinic in Boise during the period April 2012 through March 2013. Terry Reilly, Annual Report Fiscal Year: April 2012 – March 2013 at 6.

30.     Boise's homeless population consists of single men and women, couples, and single- and two-parent families with children. An increasing number of Boise's homeless individuals are military veterans who have returned to the United States after serving several tours of duty in Iraq and Afghanistan. Many homeless persons in Boise have difficulty maintaining employment because jobs are not available, they lack sufficient skills and education, and/or they have physical or mental disabilities.

31.     Many people, even those who may be currently sheltered, are chronically homeless in Boise. "Chronically homeless" individuals are those who have been homeless for more than a year or who have had at least four episodes of homelessness in the last four years. *See* 24 C.F.R. § 91.5 (2011).

32.     Between forty and seventy percent of homeless individuals in Boise suffer from alcohol or drug dependence and are either mentally ill or chronically homeless. These

SECOND AMENDED COMPLAINT – Page 14

individuals have the most difficulty accessing and benefiting from the social service resources that are available.

33.    These individuals also interact the most with the Boise Police Department.  As the *Ombudsman's Report* explained, "Police officers are not trained to perform social work functions; yet, persons experiencing homelessness often become the responsibility of law enforcement agencies because of the minor misdemeanors they commit." *Ombudsman's Report* at 2.  This report indicated that members of the Boise Police Department were inadequately trained and prepared to deal with the problems of Boise's homeless population, including mental illness, alcohol or dependence, and lack of shelter and other resources.  *Id.* at 2, 22, 24-25, 44.

**C.    Effect of Enforcement of Sections 9-10-02, 6-01-05(A), and 13-03-05(E)**

34.    Repeat citations or convictions under §§ 9-10-02, 6-01-05(A), and/or 13-03-05(E) for camping or sleeping in public can have a detrimental effect on an individual's health and his or her ability to find and continue employment, procure and maintain housing, and receive government assistance or benefits.

35.    Defendants' actions pose a health risk to the homeless population of Boise because the constant need to keep moving to avoid citations under these ordinances prevents these individuals from sleeping.  Sleep is a physical and mental necessity for people to properly function.  Lack of sleep causes disruptions in cognitive function and exacerbates a myriad of physical and mental health problems.

36.    Homeless individuals like Plaintiffs typically cannot afford to pay the fines associated with violations of §§ 9-10-02, 6-01-05(A), and 13-03-05(E).  These individuals often do not have a permanent address or telephone, which makes it difficult for them to receive communications from the court.  They also often lack reliable transportation.  If they fail to

SECOND AMENDED COMPLAINT – Page 15

appear in court, the court will issue a warrant for their arrest, which will result in additional time in jail and fines for failing to appear. If these fines are not paid, the homeless individual may be subject to a civil contempt order, which only worsens the situation. Incarceration is also disruptive and expensive. Periods of incarceration interrupt employment and social security disability benefits. Moreover, a homeless individual can be charged the costs for his or her incarceration.

37.    Homeless individuals must disclose criminal convictions, even for minor infractions, on applications for public and private housing. These convictions become a matter of public record. As a result, the convictions may cause them to lose the opportunity to obtain permanent public and private housing. Additionally, an individual may lose a housing placement if he or she is incarcerated. Conviction and incarceration for camping or sleeping can also interfere with the ability to obtain and maintain Social Security disability benefits. Recipients may not receive benefits for any period in which they are incarcerated. In addition, those applying for benefits may miss crucial hearings or deadlines while incarcerated, delaying their receipt of much needed income and the ability to access medical care with Medicaid eligibility.

38.    Likewise, individuals must disclose criminal convictions when they apply for employment, and even minor infractions may make a potential employer less likely to hire an applicant. Missing work due to required court appearances or because of periods of incarceration may lead to the loss of employment and income.

39.    Defendants' policy, custom and practice of issuing citations to, arresting, and harassing homeless individuals like Plaintiffs under §§ 9-10-02, 6-01-05(A), and 13-03-05(E), under the circumstances alleged herein, has the effect of "criminalizing" homelessness. These measures do not accomplish any significant or legitimate public policy goal. Instead, they

perpetuate the cycle of homelessness by decreasing opportunities for homeless individuals to find housing and gainful employment and take care of their health needs.  "[T]he criminalization of homelessness does nothing to address the underlying causes of homelessness and often serves to exacerbate them. . . . It serves only to move people away from services and causes them to acquire a criminal record, thus making it even more difficult for them to obtain employment and housing.  *Ombudsman's Report* at 5 (summarizing problems described in The National Coalition for the Homeless and The National Law Center on Homelessness & Poverty, *A Dream Denied: The Criminalization of Homelessness in U.S. Cities* (2006)).

40.    The U.S. Interagency Council on Homelessness states, "[c]riminalization undermines real solutions." Moreover, "[i]n addition to violating domestic law, criminalization measures may also violate international human rights law, specifically the Convention Against Torture and International Covenant on Civil and Political Rights." U.S. Interagency Council on Homelessness, *Searching Out Solutions: Constructive Alternatives to the Criminalization of Homelessness* 7, 8 (2012).

**D.    Availability of Shelter**

41.    In Boise, the need for shelter space far exceeds the availability of shelter space. On any given night there are thousands of homeless individuals in Boise, yet there are fewer than 460 year-round emergency shelter beds.  On any given night in Boise, there are hundreds of people who will not be able to find safe and legal shelter.

42.    Indeed, the City's shelters are routinely full.  In a January 2014 interview with Boise State Public Radio, Interfaith Sanctuary director Jayne Sorrels explained that the shelter serves 160 individuals a night and is at capacity most nights of the year, for the whole year. According to Sorrels, they frequently turn people away because there is no room.  The Boise

Rescue Mission's City Light shelter is also full most nights. Both City Light and the Boise Rescue Missions' other shelter, River of Life, are frequently forced to house additional persons on mats on the floor when they run out of beds.

43.    Shelter spaces in Boise are frequently unavailable to certain subsets of the homeless population.  The Women's and Children's Alliance provides emergency beds only for female victims of domestic violence and their children.  The Idaho Youth Ranch provides emergency beds only for children who are part of the juvenile justice or child protection system. The other shelters allocate a certain number of beds for different groups, such as families, single women and single men.  Boise Rescue Mission's River of Life dedicates a certain number of beds to at-risk veterans, a certain number of beds to the shelter's employment and year-long religious-based alcohol and substance abuse programs, and a certain number of beds to the shelter's transitional housing programs.  Minutes from the February 5, 2014 meeting of the Homeless Coalition indicated that the Interfaith Sanctuary was operating capacity in the men's and women's dorms.

44.    Shelters also have restrictions that prevent certain homeless individuals from staying in them.  The Boise Rescue Mission shelters do not allow couples to stay together, limit the length of time any one person can stay to a maximum of seventeen or thirty days during certain months after which they may not return for a period of thirty days, emphasize religious beliefs that may conflict with the beliefs and religious faith of individuals who need shelter, or have schedules that hamper individuals' employment opportunities.  The Boise Rescue Mission shelters that provide beds to women and children have an age cut-off for male children so that those children cannot stay with their mothers and instead must stay alone in the men's shelter.

The Boise Rescue Mission men's shelter does not allow men with children.  The Boise Rescue Mission shelters also permit registered sex offenders to reside in the same shelter.

45.    Finally, some individuals who are eligible for assistance to secure permanent housing have to wait for long periods of time for such assistance or housing to become available, or cannot receive such assistance at all.  Due to the large demand for rental assistance in the community and a limited amount of funding and federal budget cuts, the Boise City/Ada County Section 8 housing assistance waiting list closed on April 29, 2011 and is no longer accepting new applicants.  The Boise City/Ada County Housing Authority reported that at the time the waiting list closed, the list had grown so long that the anticipated time to receive assistance would be four to five years from the date of application, depending on the federal funding received.

46.    Because of the lack of shelter space and the inability to obtain permanent housing, a large number of individuals who are homeless in Boise will remain so for the foreseeable future.

**E.    Pattern of Enforcement**

47.    At all relevant times, Defendants and their agents acted under color of state law and within the scope of their employment.

48.    The City of Boise, through its Police Department, and the Chief of Police maintain a policy, custom and practice of unlawfully enforcing §§ 9-10-02, 6-01-05(A), and 13-03-05(E) against homeless individuals.  The *Ombudsman's Report* credits the "consistent effort and pressure" by the Boise Police Department for the elimination of permanent homeless camps: "Through solid effort and real pressure by the Boise Police Department, no established camps exist today along the Greenbelt. . . . At present, it might be possible to find one or two people in the parks at night; but there will be no established camps." *Ombudsman's Report* at 18-19.

SECOND AMENDED COMPLAINT – Page 19

49.     The majority of camping citations are issued by officers in the Bike Patrol Unit who patrol the Greenbelt and Boise's parks.  The *Boise Police Bike Patrol 2007 Annual Report* ("*Bike Patrol Report*") states that by changing the hours of deployment, officers in the Bike Patrol issued substantially more camping citations in 2007 than prior years and were "very successful in curbing the number of campers." *Bike Patrol Report* at 17.  In fact, in 2006 Bike Patrol Unit officers issued only 30 camping citations; in 2007, enforcement of the anti-camping ordinance increased significantly with these officers issuing 162 citations for camping.  *Id.*

50.     Defendants enforce Boise Municipal Code § 9-10-02 most between the months of April and September.  Additionally, Defendants have given most citations between the hours of 5:30 and 8:30 a.m. when homeless individuals who have slept outside the night before wake up and prepare to leave the area.  Boise police officers make a point of checking for homeless individuals first thing in the morning and have even opted to start shifts early in order to look for and cite homeless individuals for violating the camping and disorderly conduct ordinances.  Boise police officers target outdoor areas where homeless individuals sleep.

51.     In an internal police communication, one Boise Police Officer stated that he had "played cat and mouse" with a homeless individual one day so that he could issue a citation to him.   Later, on three separate occasions, that same police officer told a BPD list serve that he "could not find a violation to save [his] life," that he had "[n]o luck finding transient violators," and that he "[s]talked a few transients with no success."

52.     The same Boise Police Officer estimated in 2010 that he had written 500 citations, and he described camp sweeps as his "special project."

53.     The harassment of Boise's homeless population is not limited to citation or arrest under § 9-10-02.  Boise police officers also issue disorderly conduct citations pursuant to § 6-01-

05(A) to homeless individuals sleeping in public places.  Additionally, Boise police officers use § 13-03-05(E) to cite homeless individuals for sleeping in Boise's city parks at night.  Upon information and belief, the City of Boise, through its Police Department, and the Chief of Police, has expanded its enforcement tools as part of its policy, custom and practice of unlawfully arresting, citing, threatening to cite, or otherwise harassing homeless individuals who engage in sleeping, and other necessary activities of life, in public places.

54.    Plaintiffs have each received citations and/or convictions, or threats of citations, for violations of Boise Municipal Code §§ 9-10-02 and/or 6-01-05(A) for sleeping or lying down in public.  On information and belief, with knowledge that Plaintiffs were homeless and had no lawful place to sleep or rest within the City of Boise because of a chronic shortage of shelter beds, Boise police officers have issued citations, arrested, and/or threatened Plaintiffs in an effort to drive them and other homeless individuals out of the City of Boise.  As a result, Plaintiffs often had to move constantly all night long, or sleep outside of the Boise city limits to avoid further harassment from police officers.

55.    On information and belief, Chief of Police Masterson was aware that officers in the Boise Police Department unlawfully targeted Boise's homeless population; cited, arrested, or threatened to cite or arrest Plaintiffs and other homeless individuals for sleeping in public; and either directed or condoned the behavior of his officers.  The City's *Ombudsman's Report* and Police Department publications, such as the *Bike Patrol Report*, document the City's policy, custom and practice of criminalizing homelessness and publicized the dramatic increase in camping citations in 2007 and the "success" of their enforcement efforts.

56.    Local newspaper articles, the *Ombudsman's Report* and Police Department publications publicized the Boise Police Department's practice of issuing camping citations to

SECOND AMENDED COMPLAINT – Page 21

homeless individuals who have no legal place to sleep or rest in Boise. Thus, City policymakers and other relevant individuals in positions of authority were aware of this practice and, at a minimum, knowingly permitted these actions by Boise police officers.

57.    In addition, the City, its Police Department, and Chief Masterson, failed to exercise the proper supervision over Boise police officers' interactions with homeless individuals and failed to train these officers in how to appropriately and lawfully enforce §§ 9-10-02, 6-01-05(A), and 13-03-05(E). This policy of inadequate training and supervision constitutes deliberate indifference on the part of Defendants towards the rights of homeless individuals with whom the police come into contact.

58.    Defendants' policies and practices have caused Plaintiffs to suffer – and unless enjoined will continue to cause Plaintiffs to suffer – humiliation; psychological, physical, and emotional suffering; degradation, pain, and injury; financial loss; and loss of privacy and basic constitutional and human rights.

### FIRST CLAIM FOR RELIEF

**Violation of Prohibition Against Cruel and Unusual Punishment
(Eighth Amendment; 42 U.S.C. § 1983)**

59.    Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

60.    Poverty, unemployment, untreated mental and physical illness, drug and alcohol dependence, and the City's failure to provide adequate shelter space often forces Plaintiffs and other homeless individuals to sleep in public places in Boise.

61.    Although Plaintiffs are homeless and have no way to comply with Boise Municipal Code §§ 9-10-02, 6-01-05(A), and 13-03-05(E) because they must sleep outdoors, Defendants have cited, arrested, or threatened Plaintiffs for sitting, lying, or sleeping in public

places in Boise. Defendants are punishing Plaintiffs and other homeless individuals based on their status as homeless persons.

62.    Defendants' actions that penalize Plaintiffs for their homeless status constitute cruel and unusual punishment in violation of Plaintiffs' well-established rights under the Eighth Amendment of the United States Constitution as incorporated in, and applied to the states through, the Fourteenth Amendment.

63.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive relief prohibiting the City from violating their right to be free from cruel and unusual punishment—and the right of others not before the Court as well—under federal law.

## SECOND CLAIM FOR RELIEF

### Violation of Prohibition Against Cruel and Unusual Punishment
### (Eighth Amendment; Declaratory Judgment)

1.    Plaintiffs hereby incorporate all preceding paragraphs as if fully set forth herein.

2.    Separately and in addition, because the challenged ordinances violate the freedom from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution, Plaintiffs also are entitled under 28 U.S.C. §§ 2201-2202 to a declaratory judgment declaring that Boise Municipal Codes §§ 9-10-02, 6-01-05(A), and 13-03-05(E) are unconstitutional, or in the alternative, only ever to be interpreted in particular ways prescribed by this Court, to be constitutional.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations asserted herein, Plaintiffs respectfully request relief as follows:

1.    A temporary restraining order and/or preliminary and permanent injunction, enjoining Defendants, their officers, employees, assignees, successors, and agents from

PUBLIC RECORD VERSION

enforcing Boise Municipal Code §§ 9-10-02, 6-01-05(A), and 13-03-05(E), with respect to persons sleeping or lying down in public;

2.      A declaration that Defendants' present and threatened future actions violate Plaintiffs' rights to be free from cruel and unusual punishment under the United States Constitution;

3.      Plaintiffs' costs incurred in this lawsuit pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1988, and 28 U.S.C. § 2202;

4.      Plaintiffs' reasonable attorney's fees, with respect to work performed by the Idaho Legal Aid Services, Inc., National Law Center on Homelessness & Poverty, and Latham & Watkins, LLP, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2202; and

5.      All such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a jury trial on all issues so triable.

Respectfully submitted this 25th day of February, 2014.

/s/ Marguerite M. Sullivan

Howard A. Belodoff, ISB # 2290
IDAHO LEGAL AID SERVICES, INC.
310 N. 5th Street
P.O. Box 913
Boise, ID 83701
(208) 336-8980 │ Phone
(208) 342-2561 │ Fax

Eric S. Tars, # 94857 (PA)
The National Law Center on Homelessness
& Poverty
1411 K Street, Suite 1400
Washington, DC 20005
(202) 638-2535 │ Phone
(202) 628-2737 │ Fax

Marguerite M. Sullivan, # 497894 (DC)
Rebecca Valentine, # 989607 (DC)
Aziz Ahmad, # 1004817 (DC)
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200 │ Phone
(202) 637-2201 │ Fax

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Aziz Ahmad
LATHAM & WATKINS LLP
Email: aziz.ahmad@lw.com

Howard A. Belodoff
IDAHO LEGAL AID SERVICES, INC.
Email: howardbelodoff@idaholegalaid.org

Brady J. Hall
MOORE & ELIA, LLP
Email: brady@mbelaw.net

Kelley K. Fleming
BOISE CITY ATTORNEY'S OFFICE
Email: boisecityattorney@cityofboise.org

Michael W. Moore
MOORE & ELIA, LLP
Email: mike@mbelaw.net

Scott B. Muir
BOISE CITY ATTORNEY'S OFFICE
Email: boisecityattorney@cityofboise.org

Marguerite M. Sullivan
LATHAM & WATKINS LLP
Email: maggy.sullivan@lw.com

Eric S. Tars
THE NATIONAL LAW CENTER ON
HOMELESSNESS & POVERTY
Email: etars@nlchp.org

Rebecca Valentine
LATHAM & WATKINS LLP
Email: rebecca.valentine@lw.com

/s/  Marguerite M. Sullivan

SECOND AMENDED COMPLAINT – Page 26