VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division
United States Department of Justice

MARK KAPPELHOFF
EVE HILL
Deputy Assistant Attorney Generals
Civil Rights Division

JUDY PRESTON
Acting Chief
Civil Rights Division
Special Litigation Section

TIMOTHY MYGATT
Special Litigation Counsel
Civil Rights Division
Special Litigation Section

SHARON BRETT (NY 5090279)
Trial Attorney
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave NW
Washington, DC 20530
Phone: (202) 353-1091
Email:Sharon.Brett@usdoj.gov

WENDY OLSON
United States Attorney for the District of
Idaho
United States Department of Justice

CHIRAAG BAINS
Senior Counsel to the Assistant Attorney
General
Civil Rights Division

*Of Counsel:*
Lisa Foster
Director
Office for Access to Justice

Maha Jweied
Deputy Director
Office for Access to Justice

Robert Bullock (CA 219942)
Senior Counsel
Office for Access to Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Phone: (202) 514-5324
Email: Bob.Bullock@usdoj.gov

*Attorneys for the United States of America*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANET F. BELL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 1:09-cv-540-REB |
| v. | ) Hon. |
| | ) |
| CITY OF BOISE, et al., | ) **STATEMENT OF INTEREST** |
| | ) **OF THE UNITED STATES** |
| Defendants. | ) |
| | ) |

## STATEMENT OF INTEREST OF THE UNITED STATES

On any given night in the United States, half a million people are likely to be experiencing homelessness.[1]  Homeless individuals are a diverse population, including children, families, veterans, and the elderly.  The causes of homelessness are also varied.  In recent years, some people who were affected by the economic downturn and foreclosure crisis have become homeless.[2]  Some homeless individuals have serious and persistent physical or behavioral health conditions that neither they nor the communities in which they live have sufficient services to accommodate.  As a result, these individuals are unable to obtain permanent housing.[3]  Other individuals are homeless because of circumstances beyond their control; they are victims of domestic violence and trafficking, or youth who are separated from their families.[4]  These individuals must find space in a public shelter or sleep on the street.

For many homeless people, finding a safe and legal place to sleep can be difficult or even impossible.  In many cities, shelters are unable to accommodate all who are homeless.[5]  In 2014, 42% of homeless individuals slept in unsheltered, public locations—under bridges, in cars, in parks, on the sidewalk, or in abandoned buildings.[6]

---

[1] U.S. Dep't of Hous. and Urban Dev., *2014 Annual Homeless Assessment Report* ("2014 AHAR") 1 (October 2014), *available at* https://www.hudexchange.info/resources/documents/2014-AHAR-Part1.pdf. The 2014 AHAR found that as of January 2014, 578,424 individuals in the United States were homeless on any given night.

[2] *See generally id.*  Nationally, 11% of all homeless adults are veterans.  *Id.* at 40.

[3] U.S. Interagency Council on Homelessness, *Opening Doors: Federal Strategic Plan to Prevent and End Homelessness* 6, 10-11 (2010), *available at* http://usich.gov/PDF/OpeningDoors_2010_FSPPreventEndHomeless.pdf.

[4] There are approximately 45,205 unaccompanied homeless children in the United States. 2014 AHAR at 1.  "Unaccompanied children and youth" is defined in the AHAR as a person under the age of 25 who is not a member of a family or a multi-child household. *Id.* at 32.

[5] *Id.*

[6] *Id.* at 14.  In 2014 there were roughly 153,000 unsheltered homeless individuals nationwide on any given night.  *Id.*

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 2**

In this case, Plaintiffs are homeless individuals who were convicted of violating certain city ordinances that prohibit camping and sleeping in public outdoor places.[7]  They claim that the City of Boise and the Boise Police Department's ("BPD") enforcement of these ordinances against homeless individuals violates their constitutional rights because there is inadequate shelter space available in Boise to accommodate the city's homeless population.  Plaintiffs argue that criminalizing public sleeping in a city without adequate shelter space constitutes criminalizing homelessness itself, in violation of the Eighth Amendment.[8]

The parties disagree about the appropriate framework for analyzing Plaintiffs' claims.  Plaintiffs encourage the court to follow *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) (*vacated after settlement*, 505 F.3d 1006 (9th Cir. 2007)), which held that enforcement of anti-camping ordinances may violate the Eighth Amendment on nights where there is inadequate

---

[7] *See* Revised Second Am. Compl. at 4-5, ECF No. 171.  Plaintiffs in this case challenge the application of two Boise Municipal Code ordinances.  The first ordinance, Boise City Code § 9-10-02, prohibits "us[ing] any of the streets, sidewalks, parks or public places as a camping place at any time, or to cause or permit any vehicle to remain in any of said places to the detriment of public travel or convenience."  The ordinance defines "camp" or "camping" to mean "the use of public property as a temporary or permanent place of dwelling, lodging or residence, or as a living accommodation at any time between sunset and sunrise, or as a sojourn."  The second ordinance, § 6-01-05(A), prohibits "disorderly conduct," which includes "[o]ccupying, lodging or sleeping in any building, structure or place, whether public or private, or in any motor vehicle without the permission of the owner or person entitled to possession or in control thereof."

[8] Plaintiffs allege that BPD's enforcement practices are unconstitutional because: 1) there is insufficient shelter space available to accommodate all who are homeless in Boise, Pls. Mem. in Supp. of Pls. Mot. for Summ. J. ("Pls. Mem."), ECF No. 243-2, at 16-18; 2) there are restrictions on certain shelter beds that some homeless individuals are unable to meet, thereby preventing them from obtaining shelter space even when beds may be unoccupied, *id.* at 20; and 3) the BPD continues to enforce the anti-camping and disorderly conduct ordinances when shelters are full and against those who do not qualify for the beds, either because BPD officers are insufficiently trained or they are unaware when shelters are full because of unreliable reporting from the shelters.  *Id.* at 20-21.  Defendants, on the other hand, contend that there has never been a time when a homeless individual was turned away from a shelter due to lack of space, and even if that were to occur, the BPD would not enforce the ordinances under such circumstances.  Defs. Resp. in Opp'n to Pl. Mot. for Summ. J. ("Defs. Resp."), ECF No. 257, at 7-10.  The parties dispute whether individuals are being turned away from shelters for lack of space or inaccessibility to persons with disabilities.  The parties also dispute whether the beds available in the Boise Rescue Mission, which is affiliated with a religious institution, should be counted in the total number of available beds for homeless individuals, as use of those beds may subject them to unwanted proselytizing.  Pls. Mem. at 13-14.  The United States takes no position on any of these disputes.

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 3**

shelter space available for all of a city's homeless individuals.  Pls. Mem. at 5.  Defendants, on

the other hand, assert that Plaintiffs' reliance on *Jones* is "heavily misplaced, factually

unsupported, and immaterial to this case."  Defs. Resp. at 7.

Because the summary judgment briefing in this case makes clear that there is a significant

dispute between the parties on the applicability of *Jones* and conflicting lower court case law in

this area, the United States files this Statement of Interest to make clear that the *Jones* framework

is the appropriate legal framework for analyzing Plaintiffs' Eighth Amendment claims.  Under

the *Jones* framework, the Court should consider whether conforming one's conduct to the

ordinance is possible for people who are homeless.  If sufficient shelter space is unavailable

because a) there are inadequate beds for the entire population, or b) there are restrictions on those

beds that disqualify certain groups of homeless individuals (e.g., because of disability access or

exceeding maximum stay requirements), then it would be impossible for some homeless

individuals to comply with these ordinances.  As set forth below, in those circumstances

enforcement of the ordinances amounts to the criminalization of homelessness, in violation of the

Eighth Amendment.

## INTEREST OF THE UNITED STATES

The United States has authority to file this Statement of Interest pursuant to 28 U.S.C

§ 517, which permits the Attorney General to attend to the interests of the United States in any

case pending in a federal court.[9]  Pursuant to the Violent Crime Control and Law Enforcement

Act of 1994, 42 U.S.C. § 14141 ("Section 14141"), the United States enforces the rights of

individuals to be free from unconstitutional and abusive policing.  The United States has used its

---

[9] The full text of 28 U.S.C. § 517 is as follows: "The Solicitor General, or any officer of the
Department of Justice, may be sent by the Attorney General to any State or district in the United States to
attend to the interests of the United States in a suit pending in a court of the United States, or in a court of
a State, or to attend to any other interest of the United States."

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 4**

authority under Section 14141 to investigate numerous jurisdictions for unconstitutional police practices.[10]

The United States also has a broad interest in ensuring that justice is applied fairly, regardless of wealth or status.  In 2010, Attorney General Eric Holder launched the Office for Access to Justice ("ATJ") at the Department of Justice to address the access-to-justice crisis in the criminal and civil justice systems.  ATJ's mission is to help the justice system deliver outcomes that are fair and accessible to all.[11]  ATJ works with other federal agencies on a range of programs and policies affecting low-income and vulnerable people—including agencies that work to prevent and end homelessness.

The United States also has an interest in breaking the cycle of poverty and criminalization.  Numerous federal initiatives are tasked with reducing the criminalization of homelessness and promoting alternatives to incarceration that are more cost-effective, efficient, and fair.  For example, the United States Interagency Council on Homelessness ("USICH"), composed of nineteen cabinet secretaries and agency heads, coordinates federal efforts to end homelessness.  USICH was established through the Stewart B. McKinney Homeless Assistance Act in 1987 and was most recently reauthorized in 2009 with the passage of the Homeless Emergency Assistance and Rapid Transition to Housing Act. 42 U.S.C. § 11311 *et seq*.

In 2010, USICH and ATJ, with support from the Department of Housing and Urban Development ("HUD"), held a summit entitled *Searching for Balance: Civic Engagement in*

---

[10] *See, e.g.*, Letter from Jocelyn Samuels, Acting Ass't Att'y Gen., to Hon. Richard J. Berry, Mayor of Albuquerque, N.M. (Apr. 10, 2014), *available at* http://www.justice.gov/crt/about/spl/documents/apd_findings_4-10-14.pdf; Letter from Thomas Perez, Ass't Att'y Gen. to John Engen, Mayor of Missoula, Mont. (May 15, 2013*), available at* http://www.justice.gov/crt/about/spl/documents/missoulapdfind_5-15-13.pdf; Investigation of the New Orleans Police Dep't, U.S. Dep't of Justice, Civil Rights Division (Mar. 16, 2011), *available at* http://www.justice.gov/crt/about/spl/nopd_report.pdf.

[11] *See* Office for Access to Justice, U.S. Dep't of Justice, http://www.justice.gov/atj/ (last visited June 16, 2015).

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 5**

*Communities Responding to Homelessness* on the development of constructive alternatives to the criminalization of homelessness. A related report, *Searching Out Solutions: Constructive Alternatives to Criminalization*, explores themes raised at the summit.[12]   HUD also produced a guide, *Reducing Homeless Populations' Involvement in the Criminal Justice System*, intended to raise awareness among law enforcement and service providers about available resources to serve homeless people, and those at risk of homelessness, who are involved in the criminal justice system.[13]

## DISCUSSION

The "Cruel and Unusual Punishments" Clause of the Eighth Amendment "imposes substantive limits on what can be made criminal and punished as such."  *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977).  Pursuant to that clause, the Supreme Court has held that laws that criminalize an individual's status, rather than specific conduct, are unconstitutional.  *Robinson v. California*, 370 U.S. 660 (1962).  In *Robinson,* the Court considered a state statute criminalizing not only the possession or use of narcotics, but also addiction.  Noting that the statute made an addicted person "continuously guilty of this offense, whether or not he had ever used or possessed any narcotics within the State"—and further that addiction is a status "which may be contracted innocently or involuntarily," given that "a person may even be a narcotics addict from the moment of his birth"—the Court found that the statute impermissibly criminalized the status of addiction and constituted cruel and unusual punishment.  *Id.* at 666-67 & n.9.

---

[12] U.S. Interagency Council on Homelessness, *Searching Out Solutions: Constructive Alternatives to Criminalization* (2012), *available at* http://usich.gov/resources/uploads/asset_library/RPT_SoS_March2012.pdf.
[13] U.S. Dep't of Justice, *Reducing Homeless Populations' Involvement in the Criminal Justice System* (2012), *available at* http://www.justice.gov/sites/default/files/atj/legacy/2012/05/09/doj-resource-guide.pdf.

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 6**

Six years after *Robinson*, the Court addressed whether certain acts also may not be subject to punishment under the Eighth Amendment if they are unavoidable consequences of one's status.  In *Powell v. Texas*, 392 U.S. 514 (1968), the Court considered the constitutionality of a statute that criminalized public intoxication.  A four-member plurality interpreted *Robinson* to prohibit *only* the criminalization of status and noted that the statute under consideration in *Powell* criminalized conduct—being intoxicated in public—rather than the status of alcohol addiction.  The plurality declined to extend *Robinson*, citing concerns about federalism and a reluctance to create a "constitutional doctrine of criminal responsibility."  *Id.* at 534 (plurality opinion).  Moreover, the plurality found that there was insufficient evidence to definitively say Mr. Powell was incapable of avoiding public intoxication.  *Id.* at 521-25.  The dissenting justices, on the other hand, found that the Eighth Amendment protects against criminalization of conduct that individuals are powerless to avoid, and that due to his alcoholism, Mr. Powell was powerless to avoid public drunkenness.  *Id.* at 567 (dissenting opinion).  The dissenters, therefore, would have reversed Mr. Powell's conviction.  *Id.* at 569-70.

Justice White provided the decisive fifth vote to uphold Mr. Powell's conviction.  Instead of joining the plurality opinion, in a separate concurrence he set forth a different interpretation of *Robinson*.  Justice White did not rest his decision on the status-versus-conduct distinction raised by the plurality. Instead, Justice White considered the voluntariness, or volitional nature, of the conduct in question.  *See Powell*, 392 U.S. at 548-51 (White, J., concurring in the judgment).  Under this analysis, if sufficient evidence is presented showing that the prohibited conduct was involuntary due to one's condition, criminalization of that conduct would be impermissible under the Eighth Amendment.  *Id.* at 551.

Notably for the present case, Justice White specifically contemplated the circumstances of individuals who are homeless.  He explained that, "[f]or all practical purposes the public streets may be home for these unfortunates, not because their disease compels them to be there, but because, drunk or sober, they have no place else to go and no place else to be when they are drinking."  *Id.*  Justice White believed some alcoholics who are homeless could show that "resisting drunkenness is impossible and that avoiding public places when intoxicated is also impossible."  *Id.*  For these individuals, the statute "is in effect a law which bans a single act for which they may not be convicted under the Eighth Amendment—the act of getting drunk."  *Id.* Ultimately, Justice White sided with the plurality because Mr. Powell did not present evidence to show that he was incapable of avoiding public places while intoxicated.  *Id.* at 552.  However, Justice White's concurrence articulated the narrowest grounds for the decision; accordingly, it is the only controlling precedent from *Powell*.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that the narrowest position controls when no rationale garners the votes of a majority of the Court).

*Robinson* and *Powell* have resulted in a division among courts on how to analyze claims regarding enforcement of anti-camping ordinances against homeless individuals.  Because *Powell* did not produce a majority opinion on whether the Eighth Amendment prohibits only the criminalization of status or also the criminalization of involuntary conduct, it does not provide a binding test for how courts should analyze these issues.  Some courts have adopted the plurality's strict interpretation of *Robinson*, opining that the Eighth Amendment limits only the criminalization of status, not of conduct.  *See, e.g.*, *Lehr v. City of Sacramento*, 624 F. Supp. 2d. 1218 (E.D. Cal. 2009) (finding the Eighth Amendment inapplicable where a statute criminalizes conduct and not status).  Others have considered the voluntariness of the conduct, and whether

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 8**

the conduct is inextricably linked to one's status, such that punishing the conduct is indistinguishable from punishing the status.  *See, e.g.*, *Jones*, 444 F.3d 1118 (finding anti-camping ordinance violated Eighth Amendment because it criminalized sleeping in public when homeless individuals had no other choice but to sleep in public, and therefore criminalized the status of homelessness itself); *Johnson v. City of Dallas*, 860 F. Supp. 344, 350 (N.D. Tex. 1994), *rev'd on other grounds*, 61 F.3d 442 (5th Cir. 1995) (same); *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1563 (S.D. Fla. 1992) (same).  Finally, some courts have avoided the debate altogether by deciding a case on factual grounds.  *See, e.g.*, *Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000) (not deciding the legal issue of whether the Eighth Amendment reaches conduct that is inextricably linked to status because Orlando proved the voluntary nature of public sleeping by "present[ing] unrefuted evidence" that the city's large homeless shelter "has never reached its maximum capacity and that no individual has been turned away because there was no space available or for failure to pay the one dollar nightly fee"); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 59 (2015) (upholding an anti-camping ordinance because the plaintiffs failed to "allege why [they] had no shelter").

The differing interpretations of *Robinson* and *Powell* have caused drastically different results for both individuals and the criminal justice system.  In the mid-1990s, the United States twice filed briefs in appellate cases to help clarify the Eighth Amendment analysis for claims brought by individuals who were convicted of violating anti-camping ordinances.  *See* Brief for the United States as Amicus Curiae, *Joyce v. City and County of San Francisco*, No. 95-16940 (9th Cir. Mar. 29, 1996); Brief for the United States as Amicus Curiae, *Tobe v. City of Santa Ana*, No. S03850 (Cal. June 9, 1994).  In those briefs, the United States took the position—as it does here—that criminalizing sleeping in public when no shelter is available violates the Eighth

Amendment by criminalizing status.  In the twenty years since the United States last weighed in on this issue, courts' analyses of these statutes have remained divergent.

Consistent with the position taken in its previous filings, the United States now urges this Court to adopt the reasoning of *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006). Although the Ninth Circuit ultimately vacated its opinion in *Jones*—pursuant to a settlement agreement between the parties, 505 F.3d 1006 (9th Cir. 2007), not for any substantive reason— its logic remains instructive and persuasive.

The *Jones* court considered the enforcement of a Los Angeles ordinance prohibiting sitting, lying, or sleeping in public.  There, like here, the court was asked to consider a statute that, on its face, criminalized conduct rather than status.  Importantly, the plaintiffs in *Jones* presented evidence suggesting that there was an inadequate number of shelter beds available for homeless individuals, so many individuals had no choice but to sleep in public in violation of the city's ordinance.  *See Jones*, 444 F.3d at 1137.

The *Jones* court found enforcement of the ordinance to be unconstitutional as applied to the plaintiffs because of inadequate shelter space.  The court based its decision on its conclusion that, "[w]hether sitting, lying, and sleeping are defined as acts or conditions, they are universal and unavoidable consequences of being human."  *Id.* at 1136.  Because sleeping is unavoidable, the court then considered whether the plaintiffs had a choice to sleep somewhere other than in public, concluding that they did not:  "for homeless individuals in [Los Angeles'] Skid Row who have no access to private spaces, these acts can only be done in public."  *Id.* at 1136.  As a result, the court found that sleeping in public is "involuntary and inseparable from" an individual's status or condition of being homeless when no shelter space is available.  *Id.* at 1132.  The court

concluded that, under those circumstances, "by criminalizing sitting, lying, and sleeping, the City [of Los Angeles] is in fact criminalizing [Plaintiffs'] status as homeless individuals." *Id.* at 1137.

Defendants assert that reliance on *Jones* would be "misplaced, factually unsupported, and immaterial to this case." Def. Rep. at 7.  In advocating against the applicability of *Jones*, Defendants rely on a conduct-versus-status distinction that does not withstand close scrutiny. *Id.* (stating that the Boise ordinances "avoid criminalizing status by making *conduct* an element of the crime").  However, Defendants' position is unpersuasive because the Eighth Amendment analysis is not limited to a reading of the plain language of the statute in question. Rather, the practical implications of enforcing the statute's language are equally important.  Those implications are clear where there is insufficient shelter space to accommodate the homeless population:  the conduct of sleeping in a public place is indistinguishable from the status of homelessness.

Supreme Court precedent suggests as much.  As the *Jones* court correctly noted, *Powell* is best read as providing support for Plaintiffs' argument against the criminalization of involuntary sleeping in public, not as posing a barrier to that position.  Indeed, five members of the *Powell* Court (Justice White and the four dissenting Justices) believed that punishing truly involuntary or unavoidable conduct resulting from status would violate the Eighth Amendment; only four Justices would have held otherwise. *Jones,* 444 F.3d at 1135.

It should be uncontroversial that punishing conduct that is a "universal and unavoidable consequence[] of being human" violates the Eighth Amendment. *See id.* at 1136.  It is a "foregone conclusion that human life requires certain acts, among them . . . sleeping." *Johnson*, 860 F. Supp. at 350.  As the *Jones* court noted, it is impossible for individuals to avoid "sitting, lying, and sleeping for days, weeks, or months at a time . . . as if human beings could remain in

perpetual motion." *Jones*, 444 F.3d at 1136.  Once an individual becomes homeless, by virtue of

this status certain life necessities (such as sleeping) that would otherwise be performed in private

must now be performed in public.  *Pottinger*, 810 F. Supp. at 1564; *see also Johnson*, 860 F.

Supp. at 350 ("they must be in public" and "they must sleep").  Therefore, sleeping in public is

precisely the type of "universal and unavoidable" conduct that is necessary for human survival

for homeless individuals who lack access to shelter space.  *Id.*

        In this way, the Boise anti-camping and disorderly conduct ordinances are akin to the

ordinance at issue in *Robinson*, at least on nights when homeless individuals are—for whatever

non-volitional reason(s)—unable to secure shelter space.[14]  When adequate shelter space exists,

individuals have a choice about whether or not to sleep in public.  However, when adequate

shelter space does not exist, there is no meaningful distinction between the status of being

homeless and the conduct of sleeping in public.  Sleeping is a life-sustaining activity—*i.e.*, it

must occur at some time in some place.  If a person literally has nowhere else to go, then

enforcement of the anti-camping ordinance against that person criminalizes her for being

homeless.  *See id.* at 1136-37.

        Adopting the *Jones* court's approach would not implicate the knotty concerns raised by

the *Powell* plurality and cited by the district courts that depart from *Jones*.  In *Powell*, the

plurality was concerned with the Cruel and Unusual Punishments Clause becoming "the ultimate

arbiter of the standards of criminal responsibility."  392 U.S. at 533; *see also Joyce v. City &*

*Cnty. of San Francisco*, 846 F. Supp. 843, 857 (N.D. Cal. 1994); *Lehr*, 624 F. Supp. 2d at

---

[14] In *Powell*, Justice White noted that he may have held differently on the merits if there was evidence presented that Mr. Powell was unable to avoid drinking in public; the availability of alternative venues in which Mr. Powell could drink was essential to Justice White's concurrence in the judgment.  *See Powell*, 392 U.S. at 553.

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 12**

1231.[15]  The Justices in the *Powell* plurality declined to extend the Eighth Amendment

prohibition to the punishment of involuntary conduct because they feared doing so would allow

violent defendants to argue that their conduct was "compelled" by any number of "conditions."

*Powell*, 392 U.S. at 534 (expressing concern that a hypothetical murderer could claim a

compulsion to kill).  The plurality was reluctant to "defin[e] some sort of insanity test in

constitutional terms." *Id.* at 536.

        But these concerns are not at issue when, as here, they are applied to conduct that is

essential to human life and wholly innocent, such as sleeping.  No inquiry is required to

determine whether a person is compelled to sleep; we know that no one can stay awake

indefinitely.  Thus, the Court need not constitutionalize a general compulsion defense to resolve

this case; it need only hold that the Eighth Amendment outlaws the punishment of unavoidable

conduct that we know to be universal.  Moreover, unlike the hypothetical hard cases that

concerned the *Powell* plurality, the conduct at issue in the instant case is entirely innocent.  Its

punishment would serve no retributive purpose, or any other legitimate purpose.  As the plurality

in *Powell* itself noted, "the entire thrust of *Robinson*'s interpretation of the Cruel and Unusual

---

[15] In *Lehr*, the district court declined to follow the Ninth Circuit's decision in *Jones* in evaluating the plaintiffs' Eighth Amendment as-applied claims regarding the City of Sacramento's anti-camping ordinance.  Despite evidence that the population of homeless individuals in Sacramento far outnumbered the available shelter beds, the court decided to follow the plurality opinion in *Powell* and the dissent from *Jones* because there was no precedential opinion in place, and it found the *Jones* dissent "to be the more persuasive and well-reasoned opinion." *Lehr*, 624 F. Supp. 2d at 1231.  For the reasons discussed above, the United States disagrees with *Lehr* and urges this Court to reject its analysis. The rationale in *Joyce* is equally unpersuasive.  In *Joyce*, a pre-*Jones* district court decision, the court rejected the relevance of whether the City of San Francisco provided enough beds for homeless individuals.  Rather than consider how and when the city enforced its state and local laws prohibiting camping and sleeping in public places, the court looked only at the language of the statute itself and concluded that it addressed only "acts" that derive from a person's status, and not the status itself. *Joyce*, 846 F. Supp. at 857 (N.D. Cal. 1994).  The *Joyce* court therefore declined to grant the plaintiffs' motion for a preliminary injunction.  However, while the plaintiffs' appeal was pending before the Ninth Circuit, the City of San Francisco suspended, and eventually eliminated, enforcement of the challenged laws, issuing a memorandum affirming the rights of all homeless individuals. *See Joyce v. City and Cnty. of San Francisco*, No. 95-16940, 1996 WL 329317 (9th Cir. June 14, 1996).

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 13**

Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act [or] has engaged in some behavior *which society has an interest in preventing*." *Powell*, 392 U.S. at 533 (emphasis added).

Using this reasoning, the vital question for the Court becomes:  Given the current homeless population and available shelter space in Boise, as well as any restrictions on those shelter beds, are homeless individuals in Boise capable of conforming the necessary life activity of sleeping to the current law?  If not, enforcing the anti-camping ordinances and criminalizing sleeping in public violates the Eighth Amendment, because it is no different from criminalizing homelessness itself.  The *Jones* framework, developed from analyses of earlier cases, makes it clear that punishing homeless people for "acts they are forced to perform in public effectively punishes them for being homeless."  *Pottinger*, 810 F. Supp. 1551, 1564; *see also Jones*, 444 F.3d at 1136-37; *Johnson*, 860 F. Supp. at 350.

The realities facing homeless individuals each day support this application of the Eighth Amendment.  Homelessness across the United States remains a pervasive problem.  As the *Jones* court observed, "an individual may become homeless based on factors both within and beyond his immediate control, especially in consideration of the composition of the homeless as a group: the mentally ill, addicts, victims of domestic violence, the unemployed, and the unemployable." *Jones*, 444 F.3d at 1137.  Regardless of the causes of homelessness, individuals remain homeless involuntarily, including children, families, veterans, and individuals with physical and mental health disabilities.  Communities nationwide are suffering from a shortage of affordable housing. And, in many jurisdictions, emergency and temporary shelter systems are already underfunded and overcrowded.  For example, the 2010 Hunger and Homelessness Survey conducted by the

U.S. Conference of Mayors found that 64% of cities reported having to turn people away from their shelters.[16]

At least one of the Justices in *Robinson* was concerned with how criminalizing certain conditions (there, addiction to narcotics) may interfere with necessary treatment and services that could potentially improve or alleviate the condition.  *See Robinson*, 370 U.S. at 673-75 (Douglas, J., concurring).  Those concerns are equally applicable in this context.  Criminalizing public sleeping in cities with insufficient housing and support for homeless individuals does not improve public safety outcomes or reduce the factors that contribute to homelessness.  As noted by the U.S. Interagency Council on Homelessness, "[r]ather than helping people to regain housing, obtain employment, or access needed treatment and service, criminalization creates a costly revolving door that circulates individuals experiencing homelessness from the street to the criminal justice system and back."[17]  Issuing citations for public sleeping forces individuals into the criminal justice system and creates additional obstacles to overcoming homelessness. Criminal records can create barriers to employment and participation in permanent, supportive housing programs.[18]  Convictions under these municipal ordinances can also lead to lengthy jail sentences based on the ordinance violation itself, or the inability to pay fines and fees associated with the ordinance violation.  Incarceration, in turn, has a profound effect on these individuals'

---

[16] U.S. Conference of Mayors, *2010 Hunger and Homelessness Survey* (2010), *available at* http://www.usmayors.org/pressreleases/uploads/2010_Hunger-Homelessness_Report-final%20Dec%2021%202010.pdf  (*cited in Searching out Solutions: Constructive Alternatives to Criminalization, supra* note 12 at 7).

[17] *Searching out Solutions: Constructive Alternatives to Criminalization*, *supra* note 12 at 7.

[18] The Federal Interagency Reentry Council, established by Attorney General Eric Holder in January 2011, is working to coordinate efforts to remove these barriers at the federal level, so that individuals are able to move past their criminal convictions and compete for jobs, attain stable housing, support their children and families, and contribute to their communities. *See* Federal Interagency Reentry Council, *Overview* (May 2014), *available at* http://csgjusticecenter.org/wp-content/uploads/2014/05/FIRC_Overview.pdf.

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 15**

lives.[19]  Finally, pursuing charges against individuals for sleeping in public imposes further

burdens on scarce public defender, judicial, and carceral resources.  Thus, criminalizing

homelessness is both unconstitutional and misguided public policy, leading to worse outcomes

for people who are homeless and for their communities.

## CONCLUSION

For the reasons stated above, the Court should adopt the analysis in *Jones* to evaluate

Boise's anti-camping and disorderly conduct ordinances as applied to Plaintiffs in this case.  If

the Court finds that it is impossible for homeless individuals to secure shelter space on some

nights because no beds are available, no shelter meets their disability needs, or they have

exceeded the maximum stay limitations, then the Court should also find that enforcement of the

ordinances under those circumstances criminalizes the status of being homeless and violates the

Eighth Amendment to the Constitution.

Submitted this 6th day of August, 2015.

*s/  Sharon Brett*
Sharon Brett
Attorney for the United States of America

---

[19] *See* Nat'l Law Ctr.on Homelessness & Poverty, *No Safe Place: The Criminalization of Homelessness in U.S. Cities* 32-33 (2014), *available at* http://www.nlchp.org/documents/No_Safe_Place.

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 16**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2015, I served the foregoing via the Court's CM/ECF system, which will automatically provide notice to all counsel of record.

<u>   /s/ Sharon Brett           </u>
SHARON BRETT
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
(202) 353-1091

**STATEMENT OF INTEREST OF THE UNITED STATES – pg. 17**