UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| JANET F. BELL, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF BOISE, et al., <br><br> Defendants. | Case No. 1:09-cv-00540-REB <br><br> **ORDER** <br><br> (Dkts. 188, 196, 208) |

**I. Introduction and Summary of Oral Rulings**

Pending before the Court are Plaintiffs' Motion for Sanctions (Dkt. 208), Defendants' Motion to Dismiss (Dkt. 188), and Plaintiffs' Motion to Modify the Case Management Order (Dkt. 196). At the time of oral argument upon the motions (*see* Dkt. 227), the Court issued several rulings on the record, which are summarized here:

- Pursuant to Plaintiffs' agreement (Dkt. 227, p. 76), the Court granted, in part, Defendants' Motion to Dismiss (Dkt. 188) and dismissed Plaintiffs Janet Bell and Pamela Hawkes from this case (Dkt. 227, p. 93).

- At the hearing, Plaintiffs' counsel acknowledged that they could not locate Plaintiffs Basil Humphrey and Lawrence Smith. (Dkt. 227, p. 77). The Court found there had been adequate opportunity to try and locate these Plaintiffs and that prejudice would occur from further extending scheduling deadlines to

**ORDER - 1**

try to give Plaintiffs' counsel yet more time to locate them (Dkt. 227, p. 94). On that basis, the Court granted, in part, Defendants' Motion to Dismiss (Dkt. 188) and dismissed Plaintiffs Humphrey and Smith from this case.

- The Court granted, in part, Defendants' Motion to Dismiss (Dkt. 188) and dismissed Defendant Boise Police Department from this case. (Dkt. 227, p. 94).

- The Court granted Plaintiffs' Motion to Modify the Case Management Order (Dkt. 196) to allow Plaintiffs to depose Jennifer Otto (Dkt. 227, p. 104).[1]

The two remaining issues are whether the Court should (1) dismiss Defendant Michael Masterson, the former Police Chief at Boise City, and (2) impose sanctions on Defendants for spoilation of evidence. Having considered counsels' arguments and the briefing, the Court enters the following order:

## II. Motion to Dismiss

Defendants argue that the Boise City Police Chief should be dismissed because he does not have the requisite capacity to sue or be sued. *See* Fed. R. Civ. P. 17. That capacity is determined "by the law of the state where the court is located", here, Idaho law. Fed. R. Civ. P. 17(b)(3).

---

[1] On April 24, 2015, Jennifer Otto's deposition was taken. Dkt. 244-19. Plaintiffs also had requested that the Idaho Housing and Finance Administration be allowed to produce documents after the discovery deadline pursuant to Plaintiffs' third party discovery request, but at the time of the hearing that document production had been completed (Dkt. 227, p. 97) and was no longer at issue.

**ORDER - 2**

Plaintiffs claims against Michael Masterson are brought in his official capacity as Chief of Police for Boise City.  Rev. 2d Amd. Compl., p. 1 (Dkt. 172).  "There is no longer a need to bring official-capacity actions against local government officials, for under [*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)] . . . local government units can be sued directly for damages *and injunctive or declaratory relief*." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (emphasis added).  Thus, "[a] suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  *See also Monell*, 436 U.S. at 691 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").  "[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cnty. of Santa Clara*, 928 F.Supp. 993, 996 (N.D.Cal. 1996) (emphasis in original).  *See also Hackney v. City of Hayward*, No. 14-CV-01714-JCS, 2014 WL 2795826 (N.D. Cal. June 19, 2014) (dismissing chief from action where she was sued only in her "official capacity"); *Ochoa v. City of Hayward*, No. C-14-02385 DMR, 2014 WL 4088203, at *2 (N.D. Cal. Aug. 19,

ORDER - 3

2014) (same).[2]  Accordingly, the claims against Boise City's Police Chief are duplicative of the claims against the municipality.

Additionally, Plaintiffs' Revised Second Amended Complaint seeks an "injunction, enjoining Defendants, their officers, employees, assignees, successors, and agents from enforcing Boise Municipal Code §§ 9-10-02 and 6-01-05(A), with respect to persons sleeping or lying down in public."  Dkt. 172, pp. 22-23.  The Boise City Police Chief is an employee of Boise City[3] and, therefore, would be enjoined from enforcing the challenged ordinances if Plaintiffs obtain the requested relief.  Thus, as a practical matter, it is not necessary for a separate suit to be maintained against the police chief for Plaintiffs to obtain their desired relief.

### III.  Motion for Sanctions

#### A.  Standards of Law

"A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence."  *Compass*

---

[2]  The Court recognizes that these district court cases are not binding, but finds their reasoning persuasive.  Additionally, the cases cited may not involve the exact claims brought here, but the Court finds the context analogous enough to apply the reasoning to the instant case.  On the other hand, the Court finds one of this Court's prior decisions, cited by Plaintiffs to support their argument that the police chief is properly named, *Carr v. Higgins*, No. 1:13-cv-00380-REB, 2014 WL 4411238, at *18 (D. Idaho Sept. 5, 2014), is inapposite because the cited text relates to an Eleventh Amendment immunity argument, and municipalities generally do not have that type of immunity.  *See Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003).

[3]  McJunkin Aff., ¶ 3 (Dkt. 189).  *See also Garnett v. City of Coeur d'Alene*, 2010 WL 4024061, p. 7 (explaining that the Coeur d'Alene Police Department "is not itself a legal entity, but is part of the official entity of the City of Coeur d'Alene").

**ORDER - 4**

*Bank v. Morris Cerullo World Evangelism*, No. 13-CV-0654-BAS WVG, 2015 WL 2180436, at *7 (S.D. Cal. May 8, 2015); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).

"Although the Ninth Circuit has . . . not set forth a precise standard for determining when [spoilation] sanctions are appropriate, the majority of trial courts have adopted the following test: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Justice v. Rockwell Collins, Inc.*, No. 3:12-CV-01507-AA, 2015 WL 4507445, at *8 (D. Or. July 22, 2015) (citations and internal quotations and brackets omitted); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 989-90 (N.D.Cal. 2012); *Leon v. IPX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006) (outlining a similar test for determining when to "impos[e] the harsh sanction of dismissal") (citation and internal quotations omitted). The party seeking spoliation sanctions bears the burden of establishing each element. *Apple*, 888 F.Supp.2d at 989-90.

With regard to the second factor, "[c]ourts have not been uniform in defining the level of culpability-be it negligence, gross negligence, willfulness, or bad faith-that is required before sanctions are appropriate for evidence destruction." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013) (citation and internal quotation marks omitted). However, "a party's destruction of evidence need not be in

**ORDER - 5**

'bad faith' to warrant a court's imposition of sanctions." *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D.Cal. 2006) (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)). *See also Karnazes v. County of San Mateo*, 2010 WL 2672003 at *2 (N.D.Cal. July 2, 2010) ("An adverse inference instruction may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence."). Nonetheless, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d at 1066-67.

**B.  Discussion**

Plaintiffs argue that certain documents relevant to this litigation "are lost forever—namely, the volunteer logs and location assignments that volunteers fill out at training (at the beginning of the [Point-in-Time ("PIT") Survey process] and email traffic from volunteers containing feedback about the Survey (at the end of the PIT Survey process)" because the City failed to place a litigation hold on those records and allowed destruction of those documents from 2012 on.[4] Dkt. 208-1, p. 6. Plaintiffs' counsel argued at the hearing that these documents would have supported Plaintiffs' argument

---

[4] At oral argument Plaintiffs' counsel noted that the City had represented it had produced everything within its possession as of March 2015. Dkt. 227, p. 44. The City's briefing describes that several of the identified missing documents were found and produced to Plaintiffs and that only the volunteer release forms from the 2013 PIT count are still missing. Dkt. 215, p. 8. At oral argument the City acknowledged that some emails also may be missing.

**ORDER - 6**

that the Point-in-Time[4] surveys in 2013 and 2014 undercounted the number of homeless individuals. Dkt. 227, p. 46.

However, despite that there are potentially relevant records that have not been located, and some of which may have been destroyed[5], the Court is not persuaded that the City "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958. Nor have Plaintiffs shown that the City acted in a grossly negligent manner given the procedural history of this case and the City's representations as to what was perceived as relevant to the litigation at various times during the pendency of this case.

The fact of the matter is that this lawsuit and the nature of the claims, and therefore also the nature of the core of relevance to such claims, has evolved, and the City's explanation as to the nature of the search that was conducted (and the efforts to preserve information gathered in such a search) is a sensible explanation in that context. In that regard, a discussion of the changing nature of the case from its filing to its most recent denouement is useful. The Court dismissed Plaintiffs' case in July of 2011 and entered Judgment in Defendants' favor. Dkt. 116. Plaintiffs then appealed. Dkt. 118. After the usual period of time consumed by such an appeal, the Ninth Circuit Court of Appeals

---

[4] The PIT Survey is the way the City tracks the total number of homeless people in Boise and is conducted on a single day in January each year. *See* Dkt. 208-1, p. 4.

[5] At oral argument, the City argued that the City had been unable to locate certain documents, such as the 2013 volunteer release forms and perhaps some emails, but also argued that does not mean they were "destroyed". *See* Dkt. 227 (Tr., p. 36, Ls. 3, 19-23; p. 37, Ls. 19-21).

**ORDER - 7**

issued its mandate, remanding part of this case to the Court, on April 1, 2013. Proceedings began again shortly thereafter in this Court. Although an appeal was pending from 2011 to 2013, it was not clear whether this litigation would survive appeal.

In 2012, the City contracted with Beth Geagan to plan and conduct the annual PIT counts on behalf of the City. Geagan Dec., ¶ 5. Although best practices might have cautioned the City to maintain a litigation hold on a wide variety of documents when this case was on appeal, and to inform Ms. Geagan of the litigation, the City points out that Plaintiffs had "never deposed a single witness responsible for planning and conducting the PIT Count or sent follow-up requests to the City for PIT-related documents or information" before this case went on appeal.[6] Dkt. 215, p. 4. Thus, the City argues, there was "no reason in 2012 to believe that Plaintiffs may one day want, need, or request any of Ms. Geagan's PIT documents, especially not the volunteer and locations sign-in sheets or the volunteer release forms." Dkt. 215, p. 5. For that reason, "the City did not instruct Ms. Geagan to retain every piece of paper she created or received while planning the 2012, 2013, or 2014 PIT Counts." *Id.* Ms. Geagan was made aware of this lawsuit in December of 2014, and it appears that she maintained documentation after that time.

The City also points out that in 2013 and 2014, after this litigation recommenced in district court, the Plaintiffs did not make any discovery requests that "would have caused the City to notify Ms. Geagan and request that she suspend her normal document

---

[6] The City argues that "it was not until December 15, 2014 that Plaintiffs first expressed any interest in the PIT Count when it served Plaintiffs' Third Set of Interrogatories and Requests for Production and Second Requests for Admission to Defendant City of Boise", Dkt. 208-11, p. 22-34. Dkt. 215, p. 5.

ORDER - 8

retention policies regarding the PIT Count." *Id.* Plaintiffs counter that "[g]iven Plaintiffs' need to show that shelter beds are not available to homeless individuals under *Jones*, Plaintiffs [in January of 2010] specifically asked for '[a]ll documents that refer or relate to the estimated number or counts of homeless persons present or residing in Boise, Idaho." Dkt. 219, p. 3 9(citing Dkt. 208-11, p. 14). One could construe this request so broadly as to emails and documents underlying the PIT surveys, but in the context of what was done and what was preserved the Court is not persuaded that the City's failure to either preserve or to locate certain documents that might fall under that request was a failure from a cavalier or intentional state of mind that rises to the level required to impose the harsh sanction of an adverse inference. In short, the Court finds Plaintiffs have failed to meet their burden to establish the second factor of the spoilation sanctions test, *i.e.*, that the City acted with the required culpable state of mind in not preserving certain records in this case.

Because Plaintiffs have failed to establish that the records were destroyed with a culpable state of mind, as is their burden, no sanctions will be imposed. Moreover, the Court allowed Plaintiffs to take an additional deposition related to the missing records after the close of discovery — an accommodation that lessened any prejudice resulting from the missing records — and Plaintiffs were able through other avenues to obtain some of the missing records from the Idaho Housing and Finance Administration, *see* Dkt. 227, p. 97; Dkt. 208-1, p. 6. Finally, Plaintiffs have argued, and the Court has considered, the argument that the lack of documentation underlying the 2013 and 2014

**ORDER - 9**

PIT surveys, when compared to the 2015 PIT survey, demonstrate that the 2013 and 2014 surveys contained an undercount of homeless individuals.

## IV.  Order

For the reasons set forth above, IT IS HEREBY ORDERED:

Plaintiffs' Motion for Sanctions (Dkt. 208) is DENIED.

Defendants' Motion to Dismiss (Dkt. 188) is GRANTED.  Plaintiffs Janet Bell, Pamela Hawkes, Basil Humphrey, and Lawrence Smith are DISMISSED from this case. Defendants Boise Police Department the Boise City Police Chief[7] also are DISMISSED from this case.

Plaintiffs' Motion to Modify the Case Management Order (Dkt. 196) is GRANTED, in part, to allow Plaintiffs to depose Jennifer Otto.  No fees and costs are awarded related to this motion.  *See* Dkt. 227.



DATED:  **August 23, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[7] Although Police Chief Mike Masterson is the named Defendant in this case, the dismissal is effective against both Chief Masterson and his successor, Bill Bones.

**ORDER - 10**