UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT MARTIN and ROBERT ANDERSON, | Case No. 1:09-cv-00540-REB |
| Plaintiffs, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| CITY OF BOISE, | |
| Defendant. | |

**I.  Background and Summary of Decision**

This case, filed in 2009, has a long procedural history that includes multiple dispositive motions, multiple amendments of the Plaintiffs' Complaint, the withdrawal and addition of numerous attorneys representing the various parties, dismissal of several parties, and an appeal of a substantive ruling against the plaintiffs followed by a remand from the Ninth Circuit Court of Appeals.  The facts and legal issues are well known to the parties and set forth in more detail in the Court's prior Orders.  *See* Dkts. 152, 170, 286.

Pending are Plaintiffs' Motion for Summary Judgment (Dkt. 243) and Defendant's Motion for Dispositive Relief[1] (Dkt. 229), with associated motions to strike particular

---

[1]  The City's Motion is made under Federal Rules of Civil Procedure 12(b)(1) and 56.

**MEMORANDUM DECISION & ORDER - 1**

evidence filed by both parties (Dkts. 253, 264, 268).[2]  The case now includes two

remaining Plaintiffs: Robert Martin ("Martin") and Robert Anderson ("Anderson").  The

only remaining Defendant is the City of Boise (the "City").  *See* Order (Dkt. 286).  The

remaining claims seeks prospective relief in (1) a declaration under 28 U.S.C. § 2201 that

Boise City Code § 9-10-02 and §6-01-05(A) (collectively the  "Ordinances") violate the

Eighth Amendment's prohibition against cruel and unusual punishment, and (2) a

permanent injunction enjoining the City of Boise from enforcing the Ordinances.[3]  *See*

Amd. Compl., pp. 22-23 (Dkt. 171).

The City argues that a threshold matter precludes the case from going any further at

this point – specifically, that the case should be dismissed because the Plaintiffs lack

standing.  The City also argues that even if the Plaintiffs have standing to pursue the

remaining claim, it has nonetheless been mooted and, regardless, Plaintiffs' claims fails

on the merits.  (Dkt. 229).  Plaintiffs argue they have standing, the case is not moot, and

they should be granted summary judgment as a matter of law based upon "undisputed"

---

[2]  After the hearing on these motions, several additional motions were submitted (Dkts. 283, 287, 288, 289), some of which will be resolved here, and others by separate order.

[3]  Plaintiffs seek a declaration that the "Ordinances are unconstitutional under the Eighth Amendment to the extent they apply to and are enforced against individuals for whom shelter beds are unavailable whether because (1) there are fewer emergency shelter beds than there are homeless individuals or (2) mental illness or physical disability."  Pls.' Mem. Mot. Summ. Jdgmt., p. 3 (Dkt. 243-2).  In making this argument, Plaintiffs primarily rely on cases involving "as applied" challenges to the constitutionality of statutes.  *See, e.g.*, *id.*, p. 7.  Only nighttime enforcement of the Ordinances is at issue.  *See Bell v. City of Boise*, 709 F.3d 890, 896 (9th Cir. 2013).

**MEMORANDUM DECISION & ORDER - 2**

material facts.  *See* Pls.' Resp. (Dkt. 258);  Pls.' Mem. Mot. Summ. Jdgmt., p. 17 (Dkt. 243-2).

Martin and Anderson allege that they face a threat of being cited for violating the Boise City Ordinances prohibiting camping and sleeping at night in public places.  *See* Boise City Code §§ 6-01-05(A); 9-10-02.  Under applicable law, they have a right to bring such a claim only if they have suffered an injury-in-fact sufficient to provide the Plaintiffs legal standing under Article III of the federal Constitution.  Any such claim made upon an alleged threatened injury (as argued by Martin and Anderson) must be "certainly impending" or there must be a "substantial risk that the harm will occur." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150, n.5 (2013).  The injury-in-fact must also be concrete and particularized, and actual or imminent.  *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

The Court concludes for the reasons described to follow that neither Martin nor Anderson is facing such a concrete, particularized or imminent injury, and therefore neither Martin nor Anderson has standing to bring a constitutional challenge to the Ordinances.   Of central importance to that ruling is the fact that the Ordinances, by their very terms, are not to be enforced when a homeless individual "is on public property and there is no available overnight shelter."  Boise City Code §§ 6-01-05(A); 9-10-02.  Thus, the Ordinances are not to be enforced when the shelters are full.  Additionally, neither Plaintiff has shown that he cannot or will not stay in one or more of the available shelters, if there is space available, or that he has a disability that prevents him from accessing

**MEMORANDUM DECISION & ORDER - 3**

shelter space.  Thus, there is no actual or imminent threat that either Plaintiff will be cited for violating the Ordinances.  In the absence of such a threat, Plaintiffs cannot allege a sufficient injury-in-fact to establish legal standing to bring their claims.  Therefore, the Court lacks jurisdiction to consider the merits of the claim that the Ordinances violate certain constitutional protections, and the case must be dismissed.

## II.  Standing

### A.   Introduction

The City argues that neither Mr. Martin, nor Mr. Anderson is at risk of any "certainly impending" injury and therefore each lacks the requisite Article III standing to seek prospective relief.

### B.   Standards of Law

Federal Rule 12(b) permits dismissal of a complaint where the federal court has no jurisdiction to consider the claims raised in the complaint.  Under our Constitution federal courts may only consider and decide "[c]ases" and "[c]ontroversies."  U.S. Const., Art. III, § 2.  *See also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). Martin and Anderson have the burden of proving the existence of a case or controversy sufficient to confer Article III standing, at all stages of the litigation.  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).  To do so, there must be: (1) the existence of an injury-in-fact that is concrete and particularized, and actual or imminent; and (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.  *Bennett v. Spear*, 520 U.S. 154, 167

**MEMORANDUM DECISION & ORDER - 4**

(1997); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  If Plaintiffs lack standing at this particular stage of the lawsuit, notwithstanding the motion practice and discovery efforts that have transpired along the way, then the Court lacks jurisdiction to consider the merits of their remaining claims.[4]

## C.   Defining the Alleged Injury

The injury-in-fact requirement ensures a "personal stake in the outcome of the controversy."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).  "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation and internal quotation marks omitted).

The injury Plaintiffs allege is a threat of being cited for violating the Boise City Ordinances prohibiting camping and sleeping at night in public places.  Their claims are, therefore, based upon an allegation of a future injury, which can amount to an injury-in-fact but only if the threatened injury is "certainly impending" or there is a "substantial risk that the harm will occur."[5]  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150, n.5

---

[4]  There have been a number of additional plaintiffs, in addition to Martin and Anderson, at various times in the pendency of this case.  They have been dismissed for various reasons, including reasons related to the very fact of their homeless status – *i.e.*, that they live in a nomadic manner and transient status, and that either by choice or circumstance they have fallen out of contact with their counsel.  As a result, such persons were unavailable to participate in the proceedings of the case, such as, by way of example, being available for the taking of their deposition.  Whatever have been the circumstances leading to this point, the Court's focus in the context of the City's challenge to the standing of the two remaining Plaintiffs must be only upon those two Plaintiffs.

[5]  The Supreme Court has explained that its prior holdings "do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about."

**MEMORANDUM DECISION & ORDER - 5**

(2013) (citations and internal quotation marks omitted).  "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending."  *Id.* at 1147.  An injury-in-fact is sufficiently alleged where there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

Both Martin and Anderson were cited under prior versions of the Ordinances, which have since been revised.[6]  The current ordinances prohibit enforcement when "the individual is on public property and there is no available overnight shelter."[7]  Boise City Code §§ 6-01-05(A); 9-10-02.  Neither Martin nor Anderson has been cited under the revised Ordinances.[8]  Although "past wrongs are evidence bearing on whether there is a

_Clapper v. Amnesty Int'l USA_, 133 S. Ct. 1138, 1150, n.5 (2013).  Rather, in some instances, the Court has "found standing based on a substantial risk that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Id.* (citations and internal quotation marks omitted).

[6]  Plaintiff Anderson was cited in 2007 under the camping ordinance. Jones Declr., Ex. 7 (Dkt. 244–6).  Plaintiff Martin was cited in 2009 under the disorderly conduct and camping ordinances. Jones Declr., Ex. 8 (Dkt. 244–7).  Mr. Martin also received a camping citation in the fall of 2012. Jones Declr., Ex. 2, p. 143 (Dkt. 259–1).  The Ordinances were revised in 2014.

[7]  Both ordinances define the term "available overnight shelter" as "a public or private shelter, with an available overnight space, open to an individual or family unit experiencing homelessness at no charge."  Boise City Code §§ 6-01-05(A); 9-10-02.  But, they go on to state that "[i]f the individual cannot utilize the overnight shelter space due to voluntary actions such as intoxication, drug use, unruly behavior, or violation of shelter rules, the overnight shelter space shall still be considered available."  *Id.*

[8]  Other individuals have received citations since the Ordinances were revised in 2014. *See, e.g.*, Jones Declr., Ex. 71 (Dkt. 246-20).  However, as discussed earlier, the Court here is

real and immediate threat of repeated injury", *Fortyune v. Am. Multi-Cinema, Inc.*, 364

F.3d 1075, 1081 (9th Cir. 2004) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)),

here the Ordinances have materially changed since Plaintiffs were issued citations.

## D.   Robert Martin Does Not Have Standing

Martin resided in Boise when Plaintiffs filed this case in 2009, but he has been living

in Post Falls or Hayden, Idaho, since November 2013.  Jones Declr., Ex. 2, p. 107 (Dkt.

259-1); Martin Aff., ¶ 8 (Dkt. 258–5).  His having moved from Boise does not preclude

the possibility of standing to pursue the lawsuit's remaining claims, because he made

several trips to Boise in 2014 to visit his minor son and he plans to return to Boise in the

future for the same purpose.  Jones Declr., Ex. 2, pp. 111, 114, 181 ("I come down [to

Boise] regularly to be able to see my son and everything, so I know I'll be coming back"

to visit Boise).[9]  *See also* Martin Aff., ¶¶ 3–7 (Dkt. 258–5).  During his prior return trips

to Boise, Martin has stayed at the Budget Inn (with help from his attorneys), Jones Declr.,

Ex. 2, p. 113 (Dkt. 259-1), has also stayed with friends, *id.*, p. 119, and, on the last four or

five trips to Boise, stayed in his car[10], *id.* p. 120, 142.  At no time, however, during the

---

considering the standing of the two remaining Plaintiffs and not other parties who may have claims similar to Plaintiffs' claims.

[9]  Martin says that if his employment and financial situation does not improve he will consider moving back to Boise.  Martin Aff., ¶ 9 (Dkt. 258–5).  However, this is too tenuous a statement to manifest an intention to move to Boise, nor is there any suggestion beyond supposition that he would move to Boise and camp outside even when there is shelter space available.

[10]  Martin no longer has a vehicle.

**MEMORANDUM DECISION & ORDER - 7**

four or five trips he has made to Boise in the last year, has he "camped outside," *id.*, p.

143, and he has no stated plans to do so on future trips to Boise.

Martin says he is concerned that if he comes to Boise and is unable to find shelter at

a friend's home or an emergency shelter, then he may receive a citation for violating the

Ordinances.  Martin Aff., ¶ 10 (Dkt. 258–5).  His concern, however, is entirely

speculative because he is willing (and has in the past) stayed at the homeless shelters.

Martin testified that he would stay at the Sanctuary and would consider staying at the

River of Life,[11] if they would let him stay there.[12]  Hall Declr., pp.160–61 (Dkt. 230-1) (if

River of Life allowed Martin to stay at that shelter, he would "for a day or two, if need

be"); *but see id.* at p. 164 (later stating, without explanation as to why, that he might stay

at the River of Life and "it's possible [he might] not").  The directors of both the River of

Life and Interfaith Sanctuary shelters have said that Martin can stay at their respective

---

[11]  There are three emergency shelters in Boise - Interfaith Sanctuary (or the "Sanctuary"),which houses both men and women, and the two shelters operated by the Boise Rescue Mission – the River of Life shelter for men and the City Lights shelter for women and children.  Pls.' St. Mat'l Facts, ¶ 10.

[12]  Martin also testified that whether he would stay at the Sanctuary would depend on if his ex-wife and her new husband were staying there as well, but there is no indication in the record about how often that circumstance might occur.  Additionally, it would only impact Martin if the other shelter, River of Life, was full.  Hall Declr., pp.160–61 (Dkt. 230-1).  Plaintiffs have argued that the River of Life never reports as full because it does not turn people away.  *See* Jones Declr., Ex. 69 (Boise Rescue Mission Wepage dated 4/17/15) ("Even in our busiest months, it's our policy to never turn down anyone for food or shelter due to lack of space.") (Dkt. 246-18).  However, Martin's decision to not utilize available shelter space due to his personal concerns about being near his ex-wife do not implicate constitutional concerns.  The Court has considered the fact that Martin described that when going through his divorce, he was the subject of a no-contact order requiring that he stay away from his wife.  There is nothing in the record, however, to suggest that there is any current no-contact order, even though Martin may choose on his own to keep his distance from his ex-wife.

**MEMORANDUM DECISION & ORDER - 8**

shelters in the future, if necessary.  Roscoe Aff., ¶ 7 (Dkt. 239) (testimony of the Boise

Rescue Mission's CEO); Sorrels Aff., ¶ 6 (Dkt. 240) (testimony of the Sanctuary's

Executive Director that Martin is not barred from staying there).[13]  And, Martin confirmed

that, in the last four years, he has not been barred from the Sanctuary because of a rule

violation.  Jones Declr., p. 139 (Dkt 259-1).  Thus, Martin can stay at the emergency

shelters.

As previously described, the Ordinances are not to be enforced against a particular

individual when "the individual is on public property and there is no available overnight

shelter."  Boise City Code §§ 6-01-05(A); 9-10-02.  Hence, Martin's concern that he will

be cited under the Ordinances if he is unable to stay with a friend or in a shelter is not

reasonable given that the Ordinances specifically provide that they shall not be enforced

when there is no available overnight shelter.  Moreover, evidence in the record suggests

there is no known citation of a homeless individual under the Ordinances for camping or

sleeping on public property on any night or morning when he or she was unable to secure

shelter due to a lack of shelter capacity.  Allen Aff., ¶ 8 (Dkt. 242); *see also* Bailly Aff.,  ¶

7 (Dkt. 232); Hall Declr., Ex. 7, pp. 74-75; *id.*, Ex. 5, p. 65.  The record also indicates that

there has not been a single night when all three shelters in Boise called in to report they

---

[13]  Martin was not certain that he was placed on a "ban list" at River of Light, but he
thought he had been told sometime prior to 2010 that he should not come back to that facility
because he "had a problem getting up in the morning".  Hall Declr., Ex. 1, pp. 129-30 (Dkt.
230-1).  However, Martin currently is not barred from staying at either shelter.  Dkts. 239, 240
(Sorrels and Roscoe Affidavits).

**MEMORANDUM DECISION & ORDER - 9**

were simultaneously full for men, women or families.  *Id.*; *see also* Allen Supp. Aff., ¶ 4 (Dkt. 257-5).

Martin's counsel argues though that, even if there is room at a shelter, shelter may be nonetheless unavailable to Martin because the Boise Rescue Mission is a religious organization and Martin has religious objections to staying there.  Both Ordinances state that "[i]f the individual cannot utilize the overnight shelter space due to voluntary actions such as intoxication, drug use, unruly behavior, or violation of shelter rules, the overnight shelter space shall still be considered available."  Boise City Code §§ 6-01-05(A); 9-10-02.  They do not address whether the Ordinances will be enforced if individuals have other reasons for not seeking shelter, such as an objection to the religious basis of the Boise Rescue Mission or a mental illness or disability that might cause issues.[14]

Regardless, Martin testified that he finds nothing "objectionable" about the rules at River of Life because the rules are "pretty fair for the most part and everything."  Hall Declr., Ex. 1, pp. 130-31 (Dkt. 230-1).  Instead, his primary complaint with River of Life is the rule that during "chapel" (a religious service which lasts an hour) he is not able to go outside and have a cigarette.  *Id.*  That rule does not, however, require that Martin attend chapel at the River of Life (which he acknowledges) and he did not attend chapel

---

[14] The Boise Police Department's Special Order also prohibits officers from enforcing the Ordinances when a person is on public property and there is no available overnight shelter. The Special Order states that, "to qualify as 'available', the space must take into account sex, marital and familial status, and disabilities."  *Bell v. City of Boise*, 709 F.3d 890, 894–95 (9th Cir. 2013).  "The Special Order further provides that, if an individual cannot use available space because of a disability or a shelter's length-of-stay restrictions, the space should not be considered available."  *Id.*  But, the space will be considered available if the individual cannot use the space "due to voluntary actions such as intoxication, drug use or unruly behavior."  *Id.*

**MEMORANDUM DECISION & ORDER - 10**

at the River of Life when he stayed there previously, even though he had the impression

that "people"[15] wanted him to attend.  Jones Declr., Ex. 5, p. 124 (Dkt. 250-1).  *See also*

Hall Declr., Ex. 1, p. 129 (Dkt. 230-1) (Martin acknowledged that nobody has ever said

he had to go to chapel at River of Life).  Additionally, even though Martin has been

diagnosed with certain mental health disorders, nothing in the record suggests that mental

health issues have prevented him from accessing the shelters.  *See* Pls.' St. Facts,[16] ¶ 3

(Dkt. 248).

    In short, Martin's alleged future injury is too speculative for Article III purposes.  He

has not alleged that a mental disorder or other disability interferes with his ability to

obtain shelter at the Sanctuary or River of Life, or that he will not stay at any of the

shelters even if space is available, or that any "objection" he many have to the religious

mission of the River of Life will certainly cause him not to seek shelter there if needed.

Additionally, although Martin does allege that he may again be homeless on his visits to

Boise, there is no allegation that moves beyond supposition built on speculation that he

will then remain outdoors on public property, in violation of one or more of the

Ordinances, when the shelters are not full.[17]

---

[15]  Mr. Martin did not specify whether these "people" were other individuals seeking shelter or directors or volunteers at the shelter.

[16]  The part of this document referring to Plaintiffs' medical records has been redacted from the public record and, at this time, is filed under seal.  Accordingly, the Court has not stated more specifically what the record reflects.

[17]  "[F]or purposes of assessing the likelihood that state authorities will reinflict a given injury, [the Supreme Court] generally ha[s] been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."

**MEMORANDUM DECISION & ORDER - 11**

To carry standing, Martin must demonstrate "an intention to engage in a course of conduct arguably affected *with a constitutional interest*," but proscribed by a statute. *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasis added).  Here, camping or sleeping at night in a public place is permitted, *not* proscribed, by the Ordinance *if* there is no shelter space available.  Accordingly, the conduct Martin alleges he might have to engage in if he cannot stay at a friend's house or the shelters are full — *i.e.*, camping or sleeping in a public place — is not proscribed by the Ordinance, and there cannot be a credible threat of prosecution under these circumstances.  *See Babbitt*, 442 U.S. at 298. *See also Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (quoting *Babbitt*, 442 U.S. at 298) (internal quotation marks omitted) ("[A] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.")).

Finally, the declaratory relief requested—that the "Ordinances are unconstitutional under the Eighth Amendment to the extent they apply to and are enforced against individuals for whom shelter beds are unavailable whether because (1) there are fewer emergency shelter beds than there are homeless individuals or (2) mental illness or

---

*Honig v. Doe*, 484 U.S. 305, 320 (1988) (alterations added) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105, 106 (1983) (no threat that party seeking injunction barring police use of chokeholds would be stopped again for traffic violation or other offense, or would resist arrest if stopped); *Murphy v. Hunt*, 455 U.S. at 484 (no reason to believe that party challenging denial of pre-trial bail "will once again be in a position to demand bail"); *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (unlikely that parties challenging discriminatory bond-setting, sentencing, and jury-fee practices would again violate valid criminal laws)).

**MEMORANDUM DECISION & ORDER - 12**

physical disability"— does not align with the inchoate alleged injury.  *See* Pls.' Mem.

Mot. Summ. Jdgmt., p. 3 (Dkt. 243-2); but compare declaratory relief requested in Rev.

2d Amd. Compl, pp. 22-23 (Dkt. 172).  First, there is no evidence that shelter beds are

unavailable to Martin because of a mental illness or physical disability, so the declaratory

relief in that regard would not redress his particular alleged injury.  Second, when there

are not enough emergency shelter beds available, regardless of the reason, the Ordinances

by their plain terms may not be enforced.  The City's evidence is that the Ordinances are

not enforced under these circumstances.  Thus, it does not matter (but also does not

condone nor condemn the sad commentary that flows from the difficulties faced by Boise

City, or any community, in sheltering the homeless population) whether there are fewer

beds in shelters than there are homeless individuals for purposes of standing.[18]  If the

Ordinances are not to be enforced when the shelters are full, those Ordinances do not

inflict a constitutional injury upon these particular plaintiffs who are homeless and do not

have a disability or other issue of Constitutional interest that the evidence shows prevents

them from accessing the shelters.

---

[18]  This *is* a permissible consideration in assessing the merits of Plaintiffs' claims.  Part of what the Court may consider if it applies the framework from *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006) *vacated by* 505 F.3d 1006 (9th Cir. 2007), is whether the homeless Plaintiffs have no choice but to be present in the City's public spaces.  *See* Order, p. 8 (Dkt. 115).  Plaintiffs also discuss overcrowding at the shelters and the use of overflow mats, but that evidence and arguments relate to the merits of Plaintiffs' claims and not Plaintiffs' ability to demonstrate that they are threatened with injury from the alleged unconstitutional enforcement of the Ordinances at issue that is fairly traceable to the City's conduct.  To satisfy the causation requirement, plaintiffs "must show that the injury is causally linked or 'fairly traceable'" to the City's Ordinances, "and not the result of independent choices by a party not before the Court." *Nw. Requirements Utilities v. F.E.R.C.*, No. 13-70391, 2015 WL 4716753, at *5 (9th Cir. Aug. 10, 2015).

**MEMORANDUM DECISION & ORDER - 13**

### E.    Robert Anderson Does Not Have Standing

Anderson has not been warned by law enforcement officials regarding conduct that might violate the Ordinances in the four years preceding his most recent deposition.  Hall Declr., Ex. 2, p. 101 (Dkt. 230–2).  At the time of his most recent deposition, Anderson had housing because he lived with his girlfriend.[19]  Hall Declr., Ex. 2, pp. 81, 84–87 (Dkt. 230–2).  His most recent Declaration describes that his girlfriend moved in February of 2015, which led to Anderson living with a friend for several months before obtaining shelter at the River of Life for a night and then at the Sanctuary.[20]  (Dkt. 296–1). Unfortunately, Anderson is again homeless and relies on the shelters to provide him a place to sleep.[21]

However, as is the case with Martin, Anderson also will seek a place at a shelter instead of sleeping outside, and he has successfully done so.[22]  Hall Declr., Ex. 2, p. 103

---

[19]  Mr. Anderson did not pay rent to his girlfriend and his only "income" was food stamps.  He is not eligible for government housing assistance and has been denied a request for social security benefits.  Hall Declr., Ex. 2, pp. 81, 84-87 (Dkt. 230-2).

[20]  This Declaration provides relevant information for the Court to assess Anderson's standing, and standing must exist throughout every stage of litigation, which means the Court must reassess the facts relevant to standing as they change.  Accordingly, the Court has considered the information provided.  Plaintiffs' Motion seeking permission to file the Declaration is granted.

[21]  The City's mootness argument rests on its assertion that Plaintiffs' claims for prospective relief is moot because Plaintiffs are no longer living unsheltered in Boise.  *See* Def.'s Mem., p. 6 (Dkt. 229-2).  Because those circumstances have changed with regard to Anderson, the Court has not considered whether this case is now moot based on Plaintiffs' living situations.

[22]  Anderson reported that he slept on the streets in 2014 for three nights even though he could have accessed a shelter on those nights, because he was ashamed to return to the shelters. Hall Declr., Ex. 2, p. 70 (Dkt. 230-2).  The reason for his reluctance to seek shelter for three nights does not evince an unwillingness to stay at shelters in the future (even if one assumed that

**MEMORANDUM DECISION & ORDER - 14**

(Dkt. 230–2).  There is nothing to prevent Anderson from seeking shelter at the River of Life or the Sanctuary, s*ee* Dkt. 239, ¶ 7; Dkt. 240, ¶ 6, although he does not like the rules at the River of Life that constrain his ability to smoke before he goes to bed, nor does he like the River of Life's "religious policies".  Hall Declr., Ex. 2, p. 73 (Dkt. 230–2).

Anderson was not forced to engage in prayer at the River of Life during his March 2014 stay, but says he was forced to attend chapel services.  Hall Declr., Ex. 2, p. 76 (Dkt. 230–2).  But his statement in that regard was clarified in that he said that to join a particular treatment program that would allow him to stay for an extended period on the upper floors of the River of Life, he was required to attend chapel and other religious services.  However, he decided not to participate in that particular  program.  He was, nonetheless, still permitted to stay overnight on the first floor without joining the program, subject, of course, to the other rules of the shelter.  *Id.*, pp. 72–79, 111.[23]  In other words, he objected to the requirements placed on those who stay longer than 17 days and then choose to enter the program allowing access to treatment program housing in the upstairs portion of the facility.  Regardless, Anderson has stayed at the River of Life recently and has stated he will do so in the future.  *Id.* at p. 110.  Additionally,

---

such an emotion, understandable as it may be, is a cognizable basis for avoiding shelter when shelter was available, under a standing analysis), nor has Anderson made any such assertion. Indeed, Anderson has been residing at the Sanctuary shelter since May of 2015.  Anderson Declr. (Dkt. 296-1).

[23]  Anderson explained that he was required to attend chapel services at a stay in 2007, before the Boise Rescue Mission was "changed . . . over" to River of Life, and before this litigation commenced.  Hall Declr., Ex. 2, p. 74 (Dkt. 230-2).  He has stayed at the facility since that time.

**MEMORANDUM DECISION & ORDER - 15**

although he has been diagnosed with certain mental health disorders, nothing suggests that mental health issues have prevented Anderson from utilizing the shelters.  *See* Pls.' St. Facts,  3 (Dkt. 248).

As with Martin, Anderson is worried he will receive a camping citation if there is no shelter space available and he has to camp or sleep in a public place.  But also as with Martin, the revised Ordinances do not allow Boise City Police Officers to cite Anderson when no shelter space is available.  Anderson is willing to stay at either available shelter, even if he prefers the Sanctuary and dislikes some of the policies at the River of Life.  In such circumstances, Anderson's worry that he might be cited under the Ordinances does not amount to a substantial risk of imminent harm sufficient to demonstrate the injury-in-fact required for Article III standing.

## F.   Conclusion on Standing Issues

That these particular Plaintiffs lack standing does not mean, for all purposes, that other putative plaintiffs also would lack standing to pursue similar claims.  There may, for instance, be an individual with a mental or physical condition that has interfered with her or her ability to seek access to or stay at shelters, with such difficulties likely to continue in the future.[24]  Or, perhaps a homeless individual will refuse to stay at the River of Life

---

[24]  *See, e.g.*, Jones Declr., Ex. 80 (Dkt. 247-4) (police report describing contact with an apparently homeless individual who advised that he has PTSD and cannot stay at a shelter); *id.*, Ex. 77 (Dkt. 247-1) (list of individuals who are barred from the Interfaith Sanctuary and, if coupled with an objection to the religious practices at River of Life, may be able to demonstrate threatened injury); *id.*, Ex. 78 (Police report noting probable cause for camping violation for homeless person who apparently suffers from a mental illness because he "said he had not tried to get into any shelters because they try to get him onto illegal drugs and steal his medicine"); *id.*, Ex. 72 (Dkt. 246-21) (homeless individual cited when the Sanctuary was full because River

and can support a claim that the facility requires participation in religious practices for homeless individuals to stay in temporary housing there.  However, this Court cannot entertain and decide controversies on possibilities, and it is similarly inappropriate for the Court to surmise conclusively whether such circumstances would be sufficient for other persons to establish standing.  The Court will not substitute the possibility that another person might have standing to make the claims raised here as a substitute for the shortcomings of the standing claimed for Martin and Anderson.  Instead, the Court must do exactly what has been done in this decision – consider the evidence and the allegations of future threatened harm to determine whether such a record rises to the level required for these particular plaintiffs to establish standing in the circumstances of this case.  That answer, on this record, is "no."  Because the Plaintiffs lack standing to pursue their claims, the Court lacks jurisdiction to consider the merits of those claims and this case will be DISMISSED.

## G.   Miscellaneous Motions

Before the hearing, Plaintiffs filed a Motion for Leave to File Supplemental Authority related to the standing issue (Dkt. 283).  The City acknowledges that the Court has discretion to consider the three cases Plaintiffs brought to the Court's attention, but asks that the Court decline to do so.  (Dkt. 293).  The Court concludes that it is appropriate to consider the additional case authority, and has done so.  The City is not prejudiced in any substantive manner by the presentation of the supplemental authority,

---

of Light had capacity, but individual was "barred" from the facility).

**MEMORANDUM DECISION & ORDER - 17**

and has had the opportunity to try and distinguish these cases from the facts of the present case.  *See* Dkt. 293.

After the hearing, Plaintiffs filed a Motion for Leave to Identify Record Citations made at the hearing (Dkt. 289), for the stated purpose of assisting the Court in efficiently reviewing the record.  Plaintiffs filed an appendix identifying the pages of the record that support their arguments.  The appendix is a useful tool to compile evidence already in the record, it does not add to the record.  Accordingly, Court will grant the Motion and has considered the appendix.

Plaintiffs also asked that the Court strike the affidavits of Jayne Sorrels and Jacob Lang, filed in support of the City's opposition to Plaintiffs' Motion for Summary Judgment.  *See* Dkts. 257-3; 257-4.  Plaintiffs argue that these affidavits contain (1) expert opinion testimony they are unqualified to provide and (2) statements for which they lack personal knowledge and foundation or constitute hearsay.  (Dkt. 268-1).  However, the Court did not rely on any of this evidence to find that Plaintiffs lack standing in this case, and the challenged affidavits relate primarily to issues going to the merits of this case.[25]  Accordingly, Plaintiffs' Motion to Strike (Dkt. 268) is moot.

Additionally, having considered the evidence relevant to the standing issue and having ruled in the City's favor, the Court further finds that the City's Motions to Strike also are moot.

---

[25]  Although the Court has cited to Sorrels's Affidavit, the citation was not to any evidence objected to as unqualified expert testimony.

**MEMORANDUM DECISION & ORDER - 18**

## III.  Order

For the reasons set forth above, IT IS HEREBY ORDERED:

(1)  Defendant's Motion for Dispositive Relief (Dkt. 229) is GRANTED;

(2)  Plaintiffs' Motion for Summary Judgment (Dkt. 243) is DENIED.

(3)  Defendant's Motions to Strike (Dkts. 254 & 263) are DENIED as MOOT.

(4)  Plaintiffs' Motion to Strike (Dkt. 268) is DENIED as MOOT.

(5)  Plaintiffs Motion for Leave to File Supplemental Authority (Dkt. 283) is GRANTED.

(6)  Plaintiffs' Motion for Leave to Identify Record Citations (Dkt. 289) is GRANTED.

(7)  Plaintiffs' Motion seeking permission to file the Robert Anderson Declaration (Dkt. 296) is GRANTED.

A separate judgment will be filed contemporaneously with this Order.

DATED:  **September 28, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION & ORDER - 19**